1   Eric C. Rassbach – No. 288041
    The Becket Fund for Religious Liberty
2   1200 New Hampshire Ave. NW, Suite 700
    Washington, DC 20036
3   Telephone: (202) 955-0095
    Facsimile: (202) 955-0090
4   erassbach@becketlaw.org

5   *Counsel for Intervenor-Defendant*

6

7

8           **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9

10  THE STATE OF CALIFORNIA; THE
    STATE OF DELAWARE; THE STATE OF          Case No. 4:17-cv-05783-HSG
    MARYLAND; THE STATE OF NEW YORK;
11  THE COMMONWEALTH OF VIRGINIA,

12          *Plaintiffs,*
    v.                                       **INTERVENOR'S NOTICE OF**
                                             **MOTION AND MOTION TO**
13                                           **INTERVENE, WITH**
    ERIC D. HARGAN, in his official capacity as   **MEMORANDUM OF POINTS**
14  Acting Secretary of the U.S. Department of    **AND AUTHORITIES**
    Health and Human Services; U.S.
15  DEPARTMENT OF HEALTH AND
    HUMAN SERVICES; R. ALEXANDER
16  ACOSTA, in his official capacity as       Date: February 22, 2018
    Secretary of U.S. Department of Labor; U.S.  Time: 2:00 p.m.
17  DEPARTMENT OF LABOR; STEVEN           Dept.: Courtroom 2
    MNUCHIN, in his official capacity as     Judge: Hon. Haywood S. Gilliam, Jr.
18  Secretary of the U.S. Department of the
    Treasury; U.S. DEPARTMENT OF THE      Date Filed: November 21, 2017
19  TREASURY; DOES 1-100,

20          *Defendants,*                   Trial Date: Not yet set

21  and,

22  THE LITTLE SISTERS OF THE POOR
    JEANNE JUGAN RESIDENCE,

23          *Defendant-Intervenor.*

1    **TO THE PARTIES, AND THEIR COUNSEL OF RECORD:**

2    **PLEASE TAKE NOTICE** that on February 22, 2018 at 2:00 p.m., in Courtroom 2 of the

3    above-entitled court, located at 1301 Clay Street, Oakland, the Jeanne Jugan Residence

4    of the Little Sisters of the Poor in San Pedro, California (hereinafter the "Little Sisters"),

5    will and hereby do move this Court to permit them to intervene in this action in order to

6    defend their right to practice their faith free from crippling fines, a right guaranteed to

7    them in *Zubik v. Burwell*, 136 S. Ct. 1557 (2016), and extended to them under a

8    regulation challenged in this action.

9    Pursuant to Federal Rule of Civil Procedure 24, proposed Defendant-Intervenor seeks

10   intervention as of right, or in the alternative, permissive intervention.

11   Simultaneously, the Little Sisters are filing a motion to shorten time so that this

12   motion can be argued and heard when this Court hears arguments on Plaintiffs' motion

13   for preliminary injunction on December 12, 2017.

14   Plaintiffs oppose both this motion and the motion to shorten time. Defendants take

15   no position on either motion.

16   The Little Sisters have fought for four years for a religious exemption from the

17   crippling fines imposed by the federal government's contraceptive mandate. That lawsuit

18   is still ongoing. As a direct result of the Little Sisters' lawsuit, the federal government

19   revised its regulations to exempt the Little Sisters and religious employers like them.

20   But now Plaintiff States are seeking a nationwide injunction to take away the Little

21   Sisters' religious exemption. The Little Sisters are entitled to intervention as of right

22   because this motion is timely, they have a significant protectable interest that is at stake

23   in this litigation, the relief that Plaintiff States seek would impede their ability to protect

ii

that interest, and the current parties will not adequately protect their interest. The Little Sisters are also entitled to permissive intervention because they have a claim which shares a common question of law and fact with Plaintiffs' claims, have independent grounds for jurisdiction, and made a timely motion to intervene.

**WHEREFORE**, the Little Sisters pray that this Court grant them intervention in this action. This request is based on this Notice of Motion and Motion, the accompanying supporting Memorandum of Points and Authorities, the supporting declaration of Mother Superior Marguerite Marie McCarthy, as well as the papers, evidence and records on file in this action, and any other written or oral evidence or argument as may be presented at or before the time this motion is heard by the Court. A proposed order is filed herewith.

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO INTERVENE................................................ii

TABLE OF AUTHORITIES..........................................................................................v

INTRODUCTION........................................................................................................1

STATEMENT OF THE ISSUES...................................................................................2

STATEMENT OF FACTS.............................................................................................2

    A.  Proposed Intervenor..................................................................................2

    B.  The Preventive Services Mandate.............................................................3

    C.  The Regulatory Mechanism for Complying with the Mandate.................4

    D.  Intervenor's Lawsuit, Supreme Court Orders,
         and the Interim Final Rule......................................................................6

    E.  This Lawsuit.............................................................................................9

STANDARD OF REVIEW............................................................................................10

ARGUMENT................................................................................................................11

   I.  The Little Sisters are entitled to intervene as of right.....................................11

    A.  The Little Sisters' motion is timely...........................................................11

    B.  The Little Sisters have a protectable interest in not
         being forced to choose between violating their faith
         and paying crippling fines.........................................................................12

    C.  The Little Sisters' ability to protect their interests
         may be impaired by the disposition of this action....................................14

    D.  The Little Sisters' interests are not adequately
         represented by the existing parties to the action......................................15

  II.  Alternatively, the Little Sisters should be permitted
      to intervene under Rule 24(b)........................................................................19

CONCLUSION.............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Gen. Contractors of Am.* v. *Cal. Dep't of Transp.*,
No. 09-01622, 2009 WL 5206722 (E.D. Cal. 2009).................................................... 18

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992)............................................................................ 10, 19

*Bergh v. State of Wash.*,
535 F.2d 505 (9th Cir. 1976)..................................................................................... 15

*Cal. Dump Truck Owners Ass'n* v. *Nichols*,
275 F.R.D. 303 (E.D. Cal. 2011) ............................................................................... 17

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011)............................................................................ *passim*

*County of Fresno v. Andrus*,
622 F.2d 436 (9th Cir. 1980)..................................................................................... 17

*Delano Farms Co.* v. *Cal. Table Grape Comm'n*,
1:07-CV-1610, 2010 WL 2942754 (E.D. Cal. 2010).................................................... 18

*Dilks v. Aloha Airlines, Inc.*,
642 F.2d 1155 (9th Cir. 1981).................................................................................... 14

*Donnelly v. Glickman*,
159 F.3d 405 (9th Cir. 1998)..................................................................................... 12

*Forest Conservation Council* v. *U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995)..................................................................................... 17

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995)............................................................................. 11, 16

*In Def. of Animals* v. *U.S. Dep't of the Interior*,
No. 2:10–cv–01852, 2011 WL 1085991 (E.D. Cal. 2011) .......................................... 15

*Little Sisters of the Poor Home for the Aged v. Burwell*,
794 F.3d 1151 (10th Cir. 2015).......................................................................... 7, 16

*Little Sisters of the Poor Home for the Aged v. Sebelius*,
No. 1:13-cv-02611 (D. Colo. June 17, 2016)............................................................ 16

v

*Little Sisters of the Poor v. Sebelius*,
    134 S. Ct. 1022 (2014) .................................................................. 7

*California ex rel. Lockyer v. United States*,
    450 F.3d 436 (9th Cir. 2006) .................................. 12, 13, 14, 15

*Nat'l Ass'n of Home Builders* v. *San Joaquin Valley*
    *Unified Air Pollution Dist.*,
    1:07-cv-0820, 2007 WL 2757995 (E.D. Cal. 2007) ...................... 16

*Nw. Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) ...................................................... 18

*Peruta v. County of San Diego*,
    824 F.3d 919 (9th Cir. 2016) .................................................... 11

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) .................................................... 12

*Sw. Ctr. for Biological Diversity* v. *Berg*,
    268 F.3d 810 (9th Cir. 2001) .................................. 10, 12, 13, 18

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) .............................................. 17, 19

*Venegas v. Skaggs*,
    867 F.2d 527 (9th Cir. 1989) .................................................... 19

*Zubik v. Burwell*,
    136 S. Ct. 1557 (2016) ........................................................... 7, 8

**Statutes and Rules**

26 U.S.C. § 4980H ...................................................................... 3, 4

26 U.S.C. § 5000A .......................................................................... 3

26 U.S.C. § 6033 ............................................................................ 4

29 U.S.C. § 1185d ........................................................................... 3

42 U.S.C. § 300gg-13 ..................................................................... 3

Religious Freedom Restoration Act, 42 U.S.C. § 2000bb ................ 6

42 U.S.C. § 18011 .......................................................................... 4

Fed. R. Civ. P. 24 .................................................................... 10, 19

**Regulations**

45 C.F.R. § 147.130.................................................................................4

Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017)..............................8

75 Fed. Reg. 34,538 (June 17, 2010) .........................................................4

76 Fed. Reg. 46,621 (Aug. 3, 2011) ..........................................................3

77 Fed. Reg. 8725 (Feb. 15, 2012)..........................................................3-4

78 Fed. Reg. 39,870 (July 2, 2013) ...........................................................5

80 Fed. Reg. 41,318 (July 14, 2015) ..........................................................5

82 Fed. Reg. 47,792 (Oct. 13, 2017) .................................................. *passim*

**Other Authorities**

Committee on Preventive Services for Women, Institute of Medicine,
    *Clinical Preventive Services for Women: Closing the Gap* (2011)................................3

Docket, *Little Sisters of the Poor v. Sebelius*, No. 13-cv-2611 (D. Colo.) ..........................6

Emergency Motion for Injunction Pending Appeal, *Little Sisters of the
    Poor v. Burwell*, No. 13-1540 (10th Cir. Dec. 28, 2013)................................6

Food and Drug Administration, *Birth Control Guide*,
    http://bit.ly/2prP9QN ..........................................................3

Kaiser Family Found. & Health Research & Educ. Trust,
    *Employer Health Benefits 2017 Annual Survey* 204 (2017) ........................................4

Order, *Little Sisters of the Poor v. Burwell*, No. 13-1540
    (10th Cir. Dec. 31, 2013) ..........................................................6

Order, *Little Sisters of the Poor v. Hargan*, No. 13-1540
    (10th Cir. June 27, 2016) ..........................................................8

Order, *Little Sisters of the Poor v. Sebelius*, No. 13A691
    (Sup. Ct. Dec. 31, 2013)..........................................................7

Pet'rs' Br., *Little Sisters of the Poor Home for the Aged, et al. v. Burwell*,
    794 F.3d 1151 (10th Cir. 2015) (No. 15-105)................................6

## INTRODUCTION

For four years, the Little Sisters of the Poor have fought for their right to live out their faith and fulfill their mission of serving the elderly poor without the threat of government fines. The Supreme Court has twice stepped in to protect their rights, most recently directing the Department of Health and Human Services to reconsider its regulations and arrive at a solution that would respect the Little Sisters' religious freedom. Plaintiff States were aware of these ongoing lawsuits, and of the injunctions protecting the Little Sisters, but sat on the sidelines.

As a direct result of the Little Sisters' lawsuit, the federal government revised its regulations to exempt the Little Sisters and religious employers like them. Given those revisions, the Little Sisters had looked forward to putting litigation behind them and focusing on their mission of service. But now Plaintiff States are seeking a nationwide injunction to take away the Little Sisters' religious exemption. In bringing their lawsuit, the States studiously avoided the still-ongoing litigation between the federal government and the religious objectors, not seeking to intervene in the Little Sisters' existing lawsuit, nor in any one of the dozens of other such lawsuits around the country. Nor did the States address themselves to the United States Supreme Court, which has issued an injunction that precludes the nationwide injunction that Plaintiff States seek from this Court. Instead the States engaged in blatant forum shopping, filing their own complaint against the federal government in this Court, apparently afraid to even utter the Little Sisters' name in a lawsuit that is about their rights, not the States'. This is irresponsible political grandstanding of the first order, but comes at the expense of real people—the Little Sisters and the people they serve—who need a real religious exemption.

1

The Little Sisters cannot stand idly by while California and the other States threaten their ministry by trying to snatch away the protections the Sisters have fought so long to keep. This lawsuit seeks to deprive the Little Sisters of the protections provided by the Constitution, federal civil rights laws, and the new regulations, and the Little Sisters are therefore entitled to intervene to defend themselves.

## STATEMENT OF THE ISSUES

Whether the Proposed Defendant-Intervenor should be granted intervention as of right to defend their interests in a lawsuit that threatens legal protections they have won in the U.S. Supreme Court.

Alternatively, whether Proposed Defendant-Intervenor should be granted permissive intervention.

## STATEMENT OF FACTS

### A. Proposed Intervenor

The Jeanne Jugan Residence of the Little Sisters of the Poor in San Pedro, California, is a religious nonprofit corporation operated by an order of Catholic nuns whose faith inspires them to spend their lives serving the sick and elderly poor. Mother Marguerite Decl. ¶¶ 4, 12, 16-17. Each Little Sister takes a vow of obedience to God and of hospitality "to care for the aged as if he or she were Christ himself." *Id.* at ¶ 36. The Little Sisters treat each "individual with the dignity they are due as a person loved and created by God," and they strive to "convey a public witness of respect for life, in the hope that [they] can build a Culture of Life in our society." *Id.* at ¶ 19. The Little Sisters oppose, based on Catholic doctrine, sterilization, contraception, and abortion, and they believe that it is religiously wrong for them to facilitate the provision of those services to their

2

1    employees in connection with their health insurance plans. *Id.* at ¶ 37.

2    **B. The Preventive Services Mandate**

3    This case involves the legality of religious exemptions from a regulation mandating

4    employer-provided health coverage for women's preventive services—*i.e.*, employers with

5    at least 50 full-time employees—must offer a group health plan or group health

6    insurance coverage that provides "minimum essential coverage." 26 U.S.C. § 5000A(f)(2),

7    26 U.S.C. § 4980H(a), (c)(2). That "minimum essential coverage" must include, among

8    other things, coverage for "preventive care and screenings" for women. 42 U.S.C.

9    § 300gg-13(a)(4); 29 U.S.C. § 1185d.

10    Congress did not specify what "preventive care and screenings" means. Instead,

11    Congress delegated that task to the Department of Health and Human Services ("HHS").

12    *Id.* HHS, in turn, asked the Institute of Medicine ("IOM") for recommendations, and the

13    IOM recommended that HHS define "preventive care" to include, among other things,

14    "the full range of Food and Drug Administration-approved contraceptive methods,

15    sterilization procedures, and patient education and counseling for women with

16    reproductive capacity." Committee on Preventive Services for Women, Institute of

17    Medicine, *Clinical Preventive Services for Women: Closing the Gap* 109-10 (2011). The 20

18    FDA-approved contraceptive methods include both drugs and devices that operate to

19    prevent fertilization of an egg, and four drugs and devices—two types of intrauterine

20    devices and the drugs commonly known as Plan B and *ella*—that can prevent

21    implantation of a fertilized egg. Food and Drug Administration, *Birth Control Guide*,

22    http://bit.ly/2prP9QN. Only days after the recommendations were published, HHS

23    adopted them entirely in an interim final rule. 76 Fed. Reg. 46,621 (Aug. 3, 2011); 77 Fed.

3

Reg. 8725 (Feb. 15, 2012); 45 C.F.R. § 147.130(a)(1)(iv). None of the Plaintiff States challenged HHS's authority to adopt the initial preventive services mandate via interim final rule.

However, not all private employers are subject to the contraceptive mandate. First, approximately a quarter of large employers are exempt through the ACA's exception for "grandfathered health plans." *See* 26 U.S.C. § 4980H(c)(2); 42 U.S.C. § 18011; 75 Fed. Reg. 34,538, 34,542 (June 17, 2010); Kaiser Family Found. & Health Research & Educ. Trust, *Employer Health Benefits 2017 Annual Survey* 204 (2017). Second, even prior to the IFR at issue here, "churches, their integrated auxiliaries, and conventions or associations of churches," as well as "the exclusively religious activities of any religious order," 26 U.S.C. § 6033(a)(3)(A)(i), (iii), were exempt from the contraceptive mandate for religious reasons, but other religious employers were not. 82 Fed. Reg. 47,792, 47,795-96 (Oct. 13, 2017).

All told, these statutory and regulatory exemptions relieve the employers of tens of millions of employees of any obligation to do anything to comply with the contraceptive mandate—whether or not they have any religious objections to providing such coverage. If employees of exempt employers want to obtain cost-free contraceptive coverage, they must obtain it through alternative means, including through the use of state-funded health care programs. These exemptions have been in place for more than four years, and they apply to tens of millions more people than the IFR at issue here. Yet none of the Plaintiff States has ever filed suit to challenge these exemptions.

**C.  The Regulatory Mechanism for Complying with the Mandate**

Prior to the IFR, religious employers such as the Little Sisters were not exempt from

4

the contraceptive mandate. They needed to either comply with the mandate or pay large fines. *See* 82 Fed. Reg. at 47,795 (exemption limited to small subset of religious employers). The Little Sisters and other religious employers had sought an exemption, but in 2013 HHS refused to grant it and instead offered them only an alternative regulatory mechanism for compliance. *See* 82 Fed. Reg. at 47,795-96. Under that approach, religious entities like the Little Sisters were required to comply with the mandate by signing a required notice to its insurer, third-party administrator (TPA) or the government. If a religious objector complied in this manner, the government would take steps to use their health plan to distribute contraceptives, including use its "insurance coverage network," its "coverage administration infrastructure," its information to "verify . . . identit[ies]," and its systems to "provide formatted claims data." 80 Fed. Reg. 41,318, 41,328-29 (July 14, 2015). In such circumstances, the religious objector would be "considered to comply" with the mandate, 78 Fed. Reg. 39,870, 39,879 (July 2, 2013).

Unsurprisingly, nonexempt religious employers who hold sincere religious objections to contraception found little solace in this so-called "accommodation" of their religious beliefs. After all, these organizations do not merely object to directing or paying for the inclusion of contraceptive coverage in their plans; they object to being forced to facilitate the provision of contraceptive coverage through their own plan infrastructure as well. Mother Marguerite Decl. ¶ 37. Being forced to comply with the contraceptive mandate via a scheme that requires them to do so is thus no more compatible with their religious beliefs than being forced to comply by writing the coverage into their plans themselves. *Id.* Numerous nonprofit religious employers brought lawsuits challenging application of

5

the contraceptive mandate to them as, among other things, a violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb ("RFRA"). *See* Pet'rs' Br. at iii-iv, *Little Sisters of the Poor Home for the Aged, et al. v. Burwell*, 794 F.3d 1151 (10th Cir. 2015) (No. 15-105). The States in this case filed amicus curiae briefs in some of those cases, but nowhere did they attempt to intervene to protect their purported interests or those of their citizens.

**D. Intervenor's Lawsuit, Supreme Court Orders, and the Interim Final Rule**

One of those lawsuits is a class action on behalf of hundreds of Catholic employers who provide health benefits to their employees through the Christian Brothers church plan, including the Little Sisters. Facing the prospect of large penalties starting on January 1, 2014, the plaintiffs filed suit on September 24, 2013, and filed a motion for preliminary injunction one month later, on October 24. *See* Dkts. 1 & 15, *Little Sisters of the Poor v. Sebelius*, No. 13-cv-2611 (D. Colo.). The district court denied the motion on December 27, just five days before the start of the penalties. *Id.* at Dkt. 52. The Little Sisters filed an emergency appeal to the Tenth Circuit on the same day, and moved for an injunction pending appeal on December 28. *Id.* at Dkt. 53 & Dkt. 54, *see also* Emergency Motion for Injunction Pending Appeal, *Little Sisters of the Poor v. Burwell*, No. 13-1540 (10th Cir. Dec. 28, 2013). The Tenth Circuit denied the motion on December 31, hours before the fines were set to begin. *See* Order, *Little Sisters of the Poor v. Burwell*, No. 13-1540 (10th Cir. Dec. 31, 2013).

That evening, the Little Sisters filed an emergency application for an injunction under the All Writs Act with the Supreme Court. Shortly before midnight, Justice Sotomayor granted a temporary injunction pending the receipt of a response brief from

6

the defendants. Order, *Little Sisters of the Poor v. Sebelius*, No. 13A691 (Sup. Ct. Dec. 31, 2013).

On January 24, 2014, the Supreme Court granted a rare injunction pending appeal, without any noted dissent. *Little Sisters of the Poor v. Sebelius*, 134 S. Ct. 1022 (2014). The Court's order provided that:

> If the employer applicants inform the Secretary of Health and Human Services in writing that they are non-profit organizations that hold themselves out as religious and have religious objections to providing coverage for contraceptive services, the respondents are enjoined from enforcing against the applicants the challenged provisions of the [ACA] and related regulations pending final disposition of the appeal. . . . To meet the condition for injunction pending appeal, applicants need not use the form prescribed by the Government and need not send copies to third-party administrators.

*Id.*

The Tenth Circuit subsequently heard the Little Sisters' appeal and upheld the denial of their injunction. *Little Sisters of the Poor Home for the Aged v. Burwell*, 794 F.3d 1151 (10th Cir. 2015). The Little Sisters immediately petitioned for certiorari, which the Supreme Court granted, consolidating their case with several others. *See Zubik v. Burwell,* 136 S. Ct. 1557 (2016).

A unanimous Supreme Court directed the government to reconsider its regulation and "arrive at an approach going forward that accommodates petitioners' religious exercise while at the same time ensuring that women covered by petitioners' health plans receive full and equal health coverage, including contraceptive coverage." *Id.* at 1560 (citation and internal quote omitted). The Supreme Court ordered that "the Government may not impose taxes or penalties on petitioners for failure to provide the relevant

7

1  notice." *Id.* at 1561. That order is still in place.

2  The Little Sisters' case was remanded to the Tenth Circuit, where litigation was

3  stayed, and has remained so while the government reconsiders the exemptions to the

4  HHS Mandate. *See*, *e.g.*, Order, *Little Sisters of the Poor v. Hargan*, No. 13-1540 (10th

5  Cir. June 27, 2016) (ordering parties to file periodic status reports).

6  On May 4, 2017, President Trump signed an Executive Order related to religious

7  liberty. Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017). The Executive Order

8  instructed HHS to "consider issuing amended regulations, consistent with applicable

9  law, to address conscience-based objections to the preventive-care mandate

10  promulgated under section 300gg-13(a)(4) of title 42, United States Code." *Id.*

11  On October 6, HHS complied with that executive order by issuing the Interim Final

12  Rule ("IFR") at issue in this lawsuit. 82 Fed. Reg. at 47,792. The IFR protects those with

13  religious objections, and expressly refers to the Little Sisters' lawsuit and the Supreme

14  Court decision in their case as the impetus for the regulatory change: "Consistent with

15  the President's Executive Order and the Government's desire to resolve the pending

16  litigation and prevent future litigation from similar plaintiffs, the Departments have

17  concluded that it is appropriate to reexamine the exemption and accommodation scheme

18  currently in place for the Mandate." 82 Fed. Reg. at 47,799; *see also id.* at 47,798

19  (describing Little Sisters' lawsuit and *Zubik* decision). HHS stated that "Good cause

20  exists to issue the expanded exemption in these interim final rules in order to cure such

21  violations (whether among litigants or among similarly situated parties that have not

22  litigated), to help settle or resolve cases, and to ensure, moving forward, that our

23  regulations are consistent with any approach we have taken in resolving certain

8

litigation matters." 82 Fed. Reg. at 47,814.

In addition to the multiple previous rounds of public comment on the contraceptive mandate and its exemptions, the IFR set a sixty-day time period for comments, which "provides the public with an opportunity to comment on whether these regulations expanding the exemption should be made permanent or subject to modification." 82 Fed. Reg. at 47,815. That comment period will end on December 5. In the six weeks since the IFR was issued, the Little Sisters and the government have been in negotiations to resolve the case, but have not yet reached an agreement.

**E. This Lawsuit.**

On the same day that the IFR was issued, California filed this lawsuit, seeking an injunction against the religious exemption granted by the new rule and the reimposition of penalties on the Little Sisters and other religious objectors. Dkt. 1. On November 1, California filed an amended complaint adding the states of Delaware, Maryland, New York and Virginia as co-plaintiffs. To our knowledge, seven other lawsuits have been filed nationwide. In only two of those lawsuits, including this one, have the plaintiffs filed motions for preliminary injunctive relief. Plaintiffs appear to believe that there is a political aspect to this litigation, as they have not sought interim injunctive relief in any cases assigned to Republican-appointed judges.

Although they had failed to intervene in the prior four years of litigation—in which virtually every religious objector had received at least a preliminary injunction protecting them from having to provide contraceptive coverage—the States moved for a preliminary injunction here. The States do not identify even a single actual employer who has been covering contraception and is expected to stop on January 1; nor do the

9

States identify a single actual person who has had such coverage and expects to lose it on January 1. Nevertheless, the States seek an injunction in short order based on claims that the IFR violates the Administrative Procedures Act and that the religious exemptions contained in the IFR violate the Establishment and Equal Protection Clauses of the Constitution. Plaintiffs seek a declaratory judgment that the religious exemptions in the IFR are unlawful, and a nationwide injunction against enforcement of the IFR. If the Plaintiffs are successful, Little Sisters will lose the exemption granted by the IFR, and risk being forced to choose between violating their sincerely held religious beliefs or paying over $3 million in annual fines. Mother Marguerite Decl. ¶ 43.

## STANDARD OF REVIEW

In evaluating a motion to intervene, district courts are "required to accept as true the non-conclusory allegations" made by the proposed intervenor. *Sw. Ctr. for Biological Diversity* v. *Berg,* 268 F.3d 810, 819 (9th Cir. 2001). Decisions on intervention are "guided primarily by practical considerations, not technical distinctions." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (quoting *Berg*, 268 F.3d at 818). Intervention requirements "are broadly interpreted in favor of intervention." *Citizens for Balanced Use*, 647 F.3d at 897. Federal Rule of Civil Procedure 24(b) instructs courts to "permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact," as long as the intervenor has "an independent ground for jurisdiction" and has made a "a timely motion." Fed. R. Civ. P. 24(b); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992).

10

1

**ARGUMENT**

2

**I.  The Little Sisters are entitled to intervene as of right.**

3

The Little Sisters satisfy all the requirements for intervention as of right. Federal

4

Rule of Civil Procedure 24(a)(2) permits intervention as of right if: "(1) the intervention

5

application is timely; (2) the applicant has a significant protectable interest relating to

6

the property or transaction that is the subject of the action; (3) the disposition of the

7

action may, as a practical matter, impair or impede the applicant's ability to protect its

8

interest; and (4) the existing parties may not adequately represent the applicant's

9

interest." *Citizens for Balanced Use*, 647 F.3d at 897 (citation and internal quotation

10

omitted). These requirements "are broadly interpreted in favor of intervention." *Id.* at

11

897. The Little Sisters meet each of the four criteria and should be allowed to intervene

12

as a matter of right.

13

**A.  The Little Sisters' motion is timely.**

14

In determining whether a motion to intervene is timely, the court considers "(1) the

15

stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to

16

other parties; and (3) the reason for and length of the delay." *Peruta v. County of San*

17

*Diego*, 824 F.3d 919, 940 (9th Cir. 2016) (en banc), *cert. denied sub nom. Peruta v.*

18

*California*, 137 S. Ct. 1995 (2017) (citation and internal quotation omitted). For purposes

19

of this timeliness inquiry, four months after the filing of a lawsuit is still considered "a

20

very early stage," *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir.

21

1995), and courts regularly find intervention motions to be timely even when filed well

22

after that. *See, e.g., Peruta*, 824 F.3d at 940 (four years).

23

11

Here, this case was filed only 45 days ago, defendants have not yet filed any answer, and plaintiffs' preliminary injunction motion was filed just 12 days ago. Given the Little Sisters' near-immediate response to defend their interests while this case is still at the earliest possible stage, there can be no prejudice to the existing parties. *See, e.g., Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016) ("the only 'prejudice' that is relevant under this factor is that which flows from [the] prospective intervenor's" delay) (citation omitted). Rule 24(a)(2)'s timeliness requirement is therefore satisfied.

**B. The Little Sisters have a protectable interest in not being forced to choose between violating their faith and paying crippling fines.**

The Little Sisters also have a significant protectable interest in this litigation—in fact, theirs is more significant and concrete than that of the plaintiff States. For purposes of Rule 24(a)(2), an "applicant has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claim." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). The quintessential example of a case meeting this criterion is one in which "the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon [the proposed intervenor's] legally protectable interests." *Berg*, 268 F.3d at 818 (citation omitted).

That is precisely the case here. The federal government candidly admits that the IFR was prompted by the Little Sisters' case and the Supreme Court order they obtained; the IFR is designed to protect them. *See* 82 Fed. Reg. at 47,792-801. The Little Sisters have a direct and immediate interest in the validity of that protection. Yet Plaintiffs' lawsuit

12

seeks to enjoin the IFR. Worse yet, Plaintiffs ask this Court to declare that not only the IFR itself, but any similar exemption arrangement protecting the Little Sisters would violate the Establishment and Equal Protection Clauses. *See* Am. Compl., Dkt. 24 at 30-31 (asking the Court to declare that a full exemption for any groups other than churches is unlawful). This amounts to both an attack on the Supreme Court's *Zubik* decision and a challenge to any exemption scheme that would fully protect the Little Sisters. The Little Sisters have been in court for more than four years fighting to establish their legal right to just such an exemption. A decision foreclosing the IFR and any similar exemption would have "direct, immediate, and harmful effects upon [the Little Sisters'] legally protectable interests." *Berg*, 268 F.3d at 818 (citation omitted).

This analysis is confirmed by the Ninth Circuit's *Lockyer* decision. In *Lockyer*, the State of California sued the federal government, challenging the constitutionality of a federal law that "would arguably make California ineligible for certain federal funds" if California enforced its statute requiring healthcare providers to either provide emergency abortions or risk losing their medical licenses. 450 F.3d at 439-40. The Ninth Circuit held that California healthcare providers who objected on religious grounds to providing emergency abortions were entitled to intervene in the federal law's defense. For the proposed intervenors, the court reasoned, the law "provide[d] an important layer of protection against . . . loss of their medical licenses." *Id.* at 441. Thus, the court concluded, if California were to succeed in its lawsuit, the proposed intervenors would "be more likely to be forced to choose between adhering to their beliefs and losing their professional licenses"—giving them a protectable interest in the lawsuit under Rule 24(a)(2). *Id.*

13

So too here. Like the law at issue in *Lockyer*, both *Zubik* and the IFR "provide[]an important layer of protection against" the Little Sisters' incurring massive fines for adhering to their religious beliefs. *Id.* And as in *Lockyer*, if the States here were to succeed in their lawsuit, the Little Sisters would "be more likely to be forced to choose between adhering to their beliefs and" incurring those penalties. *Id.* Indeed, that appears to be the entire point of Plaintiffs' lawsuit. Thus, the interest the Little Sisters seek to protect "is sufficiently 'direct, non-contingent, and substantial'" for intervention as of right. *Id.* (quoting *Dilks v. Aloha Airlines, Inc.*, 642 F.2d 1155, 1157 (9th Cir. 1981)).

### C. The Little Sisters' ability to protect their interests may be impaired by the disposition of this action.

Once a court determines that a proposed intervenor "ha[s] a significant protectable interest," it should have "little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect" the intervenor. *Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted). "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Id.* (quoting Fed. R. Civ. P. 24 advisory committee note).

Here, if Plaintiffs prevail, the Little Sisters will be affected in the same way as the intervenors would have been affected in *Lockyer*: they will lose "an important layer of protection against" being compelled to violate their faith. *Lockyer*, 450 F.3d at 441. Plaintiffs seek to have the IFR declared unconstitutional and permanently enjoined, and they seek a declaration that all similar exemptions are unlawful. Dkt. 1 at 18-19, Dkt. 24 at 32. That relief would impair the Little Sisters' interests by making it "more likely" that they will "be forced to choose between adhering to their beliefs and" incurring the

massive penalties imposed by the Mandate. *Lockyer*, 450 F.3d at 441. Plaintiffs' requested injunction would also directly contradict the Little Sisters' existing injunctive relief from the Supreme Court. *Cf. Bergh v. State of Wash.*, 535 F.2d 505, 507 (9th Cir. 1976) (Kennedy, J.) ("When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases.").

Just as in *Lockyer*, the Little Sisters have no "adequate alternative forum where they can mount a robust defense of the [IFR]." *Lockyer*, 450 F.3d at 442. Plaintiffs seek a nationwide injunction against the IFR and a ruling that would undermine any similar attempts to protect the Little Sisters' religious exercise. It is necessary for the Little Sisters to intervene here in order to ensure that their previous legal victory is protected.

**D. The Little Sisters' interests are not adequately represented by the existing parties to the action.**

Finally, intervention should be granted because the Government does not adequately represent the Little Sisters' interests. The Little Sisters' "burden of showing inadequacy of representation is minimal and satisfied if the applicant can demonstrate that representation of its interests may be inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (quotation omitted). "Any doubt as to whether the existing parties will adequately represent the intervenor should be resolved in favor of intervention." *In Def. of Animals v. U.S. Dep't of the Interior*, No. 2:10–cv–01852, 2011 WL 1085991 at *3 (E.D. Cal. 2011) (citation omitted).

Indeed, the Defendant federal government agencies and the Little Sisters have long been in conflict over these very issues. For the last four years, the federal government has threatened the Little Sisters with massive fines if they continue to engage in their religious exercise. *Little Sisters of the Poor*, 794 F.3d at 1167, *vacated and remanded sub nom. Zubik*, 136 S. Ct. 1557 (noting that "a single Little Sisters home could incur penalties of up to $2.5 million per year, and allege the Trust could lose up to $130 million in plan contributions"). And to this day, the federal government Defendants and the Little Sisters remain adverse parties in separate litigation over the same issue. *Little Sisters of the Poor Home for the Aged v. Sebelius*, No. 1:13-cv-02611 (D. Colo. June 17, 2016), Dkt. No. 78 (vacating judgment but not entering any other judgment in the case). That is more than enough to show that HHS's "representation may be inadequate." *Citizens for Balanced Use*, 647 F.3d at 898; *Nat'l Ass'n of Home Builders* v. *San Joaquin Valley Unified Air Pollution Dist.*, 1:07-cv-0820, 2007 WL 2757995 at *5 (E.D. Cal. 2007), *aff'd*, 627 F.3d 730, 731 (9th Cir. 2010), *cert. denied* 565 U.S. 930 (2011) (intervention granted where government's interest may be "motivated by cost and political pressures").

The federal government changed its rule because of the Little Sisters' successful litigation. In such circumstances, the Ninth Circuit has repeatedly recognized that the government does not adequately represent the interests of intervenors. *See, e.g.*:

- *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398 (9th Cir. 1995) (agency defending a rule did not adequately represent proponents of the rule when agency had refused to make a decision on the rule until after intervenors filed a lawsuit to compel the decision);

- *Citizens for Balanced Use*, 647 F.3d at 900 (government did not adequately

16

1   represent intervenors because it issued its order "only reluctantly in response to

2   successful litigation by Applicants");

3   • *County of Fresno v. Andrus*, 622 F.2d 436, 439 (9th Cir. 1980) (no adequate

4   representation where "the [government] began its rulemaking only reluctantly

5   after [intervenor] brought a law suit against it").

6   These facts undermine any "presumption of adequate representation" in the

7   government defending its own regulations, which in any case is not "applied to parties

8   who are antagonists." *See United States v. City of Los Angeles*, 288 F.3d 391, 401-02 (9th

9   Cir. 2002) (quotation omitted). The federal government cannot be presumed to represent

10  the interests of the Little Sisters when the government's actions were required by the

11  Little Sisters' Supreme Court victory on this very subject.

12  The "Government's representation of the public interest" is not "identical to the

13  [Little Sisters'] parochial interest." *Citizens for Balanced Use*, 647 F.3d at 899 (quotation

14  omitted). This distinction between the Little Sisters' particular interest and the federal

15  government's broad interest is alone enough to justify intervention. In cases challenging

16  government action, "[i]nadequate representation is most likely to be found when the

17  applicant asserts a personal interest that does not belong to the general public." *Forest

18  Conservation Council* v. *U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated

19  on other grounds by Wilderness Soc'y v. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). This

20  is because the government has the broader responsibility of representing the public

21  interest and the government's policy views in general, which may not align with those of

22  the individual right holder. *See, e.g., Cal. Dump Truck Owners Ass'n* v. *Nichols*, 275

23  F.R.D. 303, 308 (E.D. Cal. 2011) (private applicant not adequately represented by

17

government agency because applicant's interests were more "narrow and parochial" and agency was required to consider "impact its rules will have on the state as a whole"); *Delano Farms Co.* v. *Cal. Table Grape Comm'n*, 1:07-CV-1610, 2010 WL 2942754, at *2 (E.D. Cal. 2010) (no adequacy of representation because "USDA, as an agency of the Executive Branch must balance a number of policy considerations"); *Associated Gen. Contractors of Am.* v. *Cal. Dep't of Transp.*, No. 09-01622, 2009 WL 5206722, at *3 (E.D. Cal. 2009) (representation inadequate where applicant had "a personal stake in the program and in the outcome of this lawsuit" and agency's main charge was promoting the public interest). Thus, applicants are not adequately represented by a government agency if the agency's interest is "not simply to confirm" the applicant's interest, but includes a broader "range of considerations." *Berg*, 268 F.3d at 823.

Here, the federal government's interest is not "simply to confirm" the Little Sisters' interest in avoiding massive fines for their religious exercise. Rather, the federal government is expressly "balanc[ing]" the Little Sisters' interest against "the Government's interest in ensuring coverage for contraceptive and sterilization services." 82 Fed. Reg. at 47,793. The federal government is also considering its broader interests in public health, implementation of the Affordable Care Act, the cost of its regulations, and the potential impact on other federal government programs. *Id.* at 47,803 (considering the impact on other programs), 47,821 (considering the cost of the exemption). Given the federal agency Defendants' other considerations there is no possibility that they "'will undoubtedly make all the intervener's arguments,'" as the standard requires. *Berg*, 268 F.3d at 822 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)).

## II. Alternatively, the Little Sisters should be permitted to intervene under Rule 24(b).

Were the Court to deny intervention as of right, it should nevertheless grant permissive intervention under Rule 24(b). Rule 24(b) authorizes this Court to "permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact," as long as the intervenor has "an independent ground for jurisdiction" and has made a "a timely motion." Fed. R. Civ. P. 24(b); *Beckman Indus., Inc.*, 966 F.2d at 473.

The Little Sisters' interest in protecting the IFR presents common questions of law and fact with those of the existing parties. As noted above, this motion is timely and intervention at this early stage will not prejudice the current parties. The significance of the Little Sisters' interests in the subject matter of this litigation outweighs any marginal additional burden that would be caused by intervention. *See City of Los Angeles*, 288 F.3d at 404 (reversing denial of permissive intervention, noting that "'streamlining' the litigation . . . should not be accomplished at the risk of marginalizing those . . . who have some of the strongest interests in the outcome"). Additionally all the factors discussed above that support intervention as a matter of right also support permissive intervention. *See, e.g.*, *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990). Thus, even if the Court concluded that the Little Sisters cannot intervene as of right, it should nonetheless permit intervention under Fed. R. Civ. P. 24(b).

## CONCLUSION

For the foregoing reasons, the Little Sisters' motion to intervene should be granted.

19

Dated: November 21, 2017                    Respectfully submitted,


                                           /s/ Eric C. Rassbach
                                           Eric C. Rassbach – No. 288041
                                           The Becket Fund for Religious Liberty
                                           1200 New Hampshire Ave. NW
                                           Suite 700
                                           Washington, DC 20036
                                           Telephone: (202) 955-0095
                                           Facsimile: (202) 955-0090

                                           *Counsel for Proposed Defendant-Intervenor*