UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HEALTH AND HUMAN SERVICES, et al., <br><br> Defendants. | Case No.17-cv-05783-HSG <br><br> **ORDER GRANTING DEFENDANT-INTERVENOR'S MOTION TO INTERVENE** <br><br> Re: Dkt. No. 38 |

Pending before the Court is a motion to intervene filed by the Little Sisters of the Poor Jeanne Jugan Residence ("the Little Sisters"). Dkt. No. 38. In this case, the plaintiffs allege that certain federal agencies issued interim final rules ("IFRs") in violation of the Administrative Procedure Act and the United States Constitution. The IFRs, *inter alia*, markedly broadened religious exemptions to the Affordable Care Act's contraceptive mandate, which generally requires employers' health insurance plans to cover all contraceptive methods approved by the Food and Drug Administration ("FDA") without cost sharing on the part of employees. For the reasons set forth below, the Little Sisters' motion is **GRANTED**.

**I.   BACKGROUND**

   **A.   The Little Sisters of the Poor Jeanne Jugan Residence**

The Little Sisters are a Roman Catholic order of nuns that devotes its ministry to serving the elderly poor. Dkt. No. 38-3 (Decl. of Mother Superior Marguerite Marie McCarthy, or "McCarthy Decl.") ¶ 4. They operate more than 25 homes in the United States, *id.* ¶ 8, one of which is the Jeanne Jugan Residence in San Pedro, California, *id.* ¶ 12. The residence is a non-profit, tax-exempt organization. *Id.* It is this organization that brings the instant motion. The Little Sisters "develop all of [their] programs, policies, and procedures in accord with the

teachings of the Catholic Church." *Id.* ¶ 22. The Little Sisters state that these teachings address "abortion, contraception, sterilization, and cooperation with acts that are intrinsically immoral." *Id.* ¶ 23.

## B. The Regulatory Backdrop

The Court briefly recounts the history of the contraceptive mandate as relevant to the IFR at issue in this case.[1] In 2010, Congress enacted the Affordable Care Act ("ACA"). The ACA included a provision that required health plans to cover certain forms of preventive care for women without cost sharing, as specified in guidelines provided by the Health Resources and Services Administration ("HRSA"), an agency of the U.S. Department of Health & Human Services ("HHS"). 42 U.S.C. § 300gg-13(a)(4). In 2011, HRSA issued those guidelines, which defined preventive care coverage to include all FDA-approved contraceptive methods.[2]

In 2012, in response to substantial public input, HHS, the U.S. Department of Labor, and the U.S. Department of the Treasury ("the agencies") promulgated regulations exempting from the ACA's contraceptive mandate certain religious employers who objected to providing contraceptive coverage. 77 Fed. Reg. 8,727. In 2013, the agencies promulgated rules establishing an accommodation, under which eligible organizations with religious objections to providing contraceptive coverage were "not required to contract, arrange, pay, or refer for [it]," but their "plan participants and beneficiaries . . . [would] still benefit from separate payments for contraceptive services without cost sharing or other charge," as required by law. 78 Fed. Reg. 39,874.

In 2014, the Supreme Court issued two opinions that affected the contours of the exemption and accommodation. As a result of *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct.

---

[1] The Court provided a more detailed history of the mandate and challenged IFRs in its Order Granting Plaintiffs' Motion for a Preliminary Injunction. *See* Dkt. No. 105 at 2-11.
[2] *See* HEALTH RES. & SERVS. ADMIN., Women's Preventive Services Guidelines, *available at* https://www.hrsa.gov/womens-guidelines/index.html. On December 20, 2016, HRSA updated the guidelines, clarifying that "[c]ontraceptive care should include contraceptive counseling, initiation of contraceptive use, and follow-up care," as well as "enumerating the full range of contraceptive methods for women" as identified by the FDA. *See* HEALTH RES. & SERVS. ADMIN., Women's Preventive Services Guidelines, *available at* https://www.hrsa.gov/womens-guidelines-2016/index.html.

2751 (2014), the agencies issued rules extending the exemption to closely-held entities with religious objections to providing contraceptive coverage. 80 Fed. Reg. 41,324. And as a result of *Wheaton College v. Burwell*, 134 S. Ct. 2806 (2014), the agencies issued a rule allowing organizations to trigger the accommodation process by providing the government notice of a religious objection using an alternative mechanism. 80 Fed. Reg. 41,323.

### C. The Little Sisters' Litigation

In September 2013, as the contraceptive mandate wound its way through the courts and the agencies, the Little Sisters brought suit in federal court, challenging the contraceptive mandate as violating the Constitution, the Religious Freedom and Restoration Act of 1993 ("RFRA") and the Administrative Procedure Act ("APA"). *See Little Sisters of the Poor Home for the Aged v. Sebelius*, 6 F. Supp. 3d 1225, 1232-33 (D. Colo. 2013). In October 2013, they filed a motion for a preliminary injunction, *id.* at 1233, which the district court denied, *id.* at 1246. In December 2013, the Little Sisters sought an emergency injunction from the Supreme Court, which the Court granted. 134 S. Ct. 893 (2013) (enjoining enforcement of contraceptive coverage requirements pending response by federal government). In January 2014, the Court granted an injunction pending appeal. *See* 134 S. Ct. 1022 (2014). On appeal, the Tenth Circuit upheld the district court's denial of the Little Sisters' injunction, determining that "the ACA and its implementing regulations [did] not substantially burden [the Little Sisters'] religious exercise or violate [their] First Amendment rights . . . ." *Little Sisters of the Poor Home for the Aged, Denver, Colo. v. Burwell*, 794 F.3d 1151, 1205 (10th Cir. 2015). The Supreme Court granted the Little Sisters' subsequent petition for certiorari, 136 S. Ct. 446 (2015), and consolidated their case to be heard in *Zubik v. Burwell*.

### D. The *Zubik* Case and Subsequent Impasse

In May 2016, the Supreme Court issued its opinion in *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (per curiam). The petitioners—the Little Sisters among them—were primarily non-profit organizations, all of which were eligible for the religious accommodation but challenged the requirement that they submit notice to either their insurer or to the federal government as a violation of RFRA. *Zubik*, 136 S. Ct. at 1558. "Following oral argument, the Court requested

supplemental briefing from the parties addressing 'whether contraceptive coverage could be provided to petitioners' employees, through petitioners' insurance companies, without any such notice from petitioners.'" *Id.* at 1558-59. After the parties stated that "such an option [was] feasible," the Court remanded to afford them "an opportunity to arrive at an approach going forward that accommodates petitioners' religious exercise while at the same time ensuring that women covered by petitioners' health plans 'receive full and equal health coverage, including contraceptive coverage.'" *Id.* at 1559. "The Court express[ed] no view on the merits of the cases," and did not decide "whether petitioners' religious exercise [had] been substantially burdened, whether the [g]overnment has a compelling interest, or whether the current regulations are the least restrictive means of serving that interest." *Id.* at 1560. The litigation was then stayed.

In July 2016, the agencies issued a request for information ("RFI") on whether, in light of *Zubik*,

> there are alternative ways (other than those offered in current regulations) for eligible organizations that object to providing coverage for contraceptive services on religious grounds to obtain an accommodation, while still ensuring that women enrolled in the organizations' health plans have access to seamless coverage of the full range of [FDA]-approved contraceptives without cost sharing.

81 Fed. Reg. 47,741. In January 2017, the agencies issued a document titled "FAQs About Affordable Care Act Implementation Part 36" ("FAQs").[3] The FAQs stated that, based on the 54,000 comments received in response to the RFI, there was "no feasible approach . . . at this time that would resolve the concerns of religious objectors, while still ensuring that the affected women receive full and equal health coverage, including contraceptive coverage." FAQs at 4.

### E. The 2017 Interim Final Rules

On May 4, 2017, the President issued Executive Order No. 13,798, directing the agencies to "consider issuing amended regulations, consistent with applicable law, to address conscience-based objections to the preventive care mandate . . . ." 82 Fed. Reg. 21,675. Subsequently, on October 6, 2017, the agencies issued the Religious Exemption IFR and the Moral Exemption IFR

---

[3] DEP'T OF LABOR, FAQs About Affordable Care Act Implementation Part 36, *available at* https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-36.pdf.

4

at issue in this case, both of which were effective immediately.

The Religious Exemption IFR, which is the IFR relevant to this motion, substantially broadened the scope of the religious exemption, extending it "to encompass entities, and individuals, with sincerely held religious beliefs objecting to contraceptive or sterilization coverage," and "making the accommodation process optional for eligible organizations." *Id.* at 47,807-08. Such entities "will not be required to comply with a self-certification process." *Id.* at 47,808. Just as the IFR expanded eligibility for the exemption, it "likewise" expanded eligibility for the optional accommodation. *Id.* at 47,812-13.[4]

### F.  Plaintiffs' Challenge of the Interim Final Rules

Plaintiffs in this case are the states of California, Delaware, Maryland, and New York, and the Commonwealth of Virginia. Defendants are HHS, Secretary of HHS Eric D. Hargan, the U.S. Department of Labor, Secretary of Labor R. Alexander Acosta, the U.S. Department of the Treasury, and Secretary of the Treasury Steven Mnuchin. Plaintiffs challenge the Religious Exemption and Moral Exemption IFRs, asserting that they violate the APA, the Establishment Clause, and the Equal Protection Clause.

On November 1, 2017, Plaintiffs filed the First Amended Complaint. Dkt. No. 24. On November 9, 2017, they moved for a preliminary injunction, seeking to prohibit implementation of the IFRs and require reinstatement of the previous exemption and accommodation regime, pending resolution on the merits. *See* Dkt. No. 28. Meanwhile, the Little Sisters filed this motion to intervene on November 21, 2017. Dkt. No. 38 ("Mot."). Plaintiffs filed their opposition on December 5, 2017, Dkt. No. 64 ("Opp."), and the Little Sisters replied on December 11, 2017, Dkt. No. 93 ("Reply"). On December 12, 2017, the Court heard argument on both the motion for a preliminary injunction and the motion to intervene and took the matters under submission. Dkt. No. 100. On December 21, 2017, the Court granted Plaintiffs' motion and entered a preliminary

---

[4] The Moral Exemption IFR "expand[ed] the exemption[] to include additional entities and persons that object based on sincerely held moral convictions." 82 Fed. Reg. 47,849. Additionally, "consistent with [their] expansion of the exemption, [the agencies] expand[ed] eligibility for the accommodation to include organizations with sincerely held moral convictions concerning contraceptive coverage," while also making the accommodation process optional for those entities. *Id.*

1  injunction. Dkt. No. 105.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) governs intervention as of right. The rule is "broadly interpreted in favor of intervention," and requires a movant to show that

> (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citing *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)). Courts deciding motions to intervene as of right are "guided primarily by practical considerations, not technical distinctions." *See id.* (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001)); *see also U.S. v. City of L.A.*, 288 F.3d 391, 397 (9th Cir. 2002) (stating that "equitable considerations" guide determination of motions to intervene as of right) (citation omitted).

Federal Rule of Civil Procedure 24(b) governs permissive intervention. The Ninth Circuit has interpreted the Rule to allow permissive intervention "where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question or law or a question of fact in common." *City of L.A.*, 288 F.3d at 403 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)). "In exercising its discretion" on this issue, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## III. DISCUSSION

The Little Sisters argue that they are entitled to intervention as of right, or in the alternative, to permissive intervention. At the core of their argument is the claim that this lawsuit "is about their rights, not the States'." Mot. at 1. As such, they seek intervention to defend what they characterize as "their right to live out their faith and fulfill their mission of serving the elderly poor without the threat of government fines." *See id.*

6

### A. The Little Sisters Are Not Entitled to Intervention As of Right.

Although Rule 24(a) is broadly interpreted in favor of the proposed intervenor, the Court finds that the Little Sisters have not shown that they are entitled to intervene as a matter of right. Because Plaintiffs concede that the Little Sisters' motion is timely, *see* Opp. at 2, the Court turns to the remaining factors set forth in *Citizens for Balanced Use*.

#### 1. The Little Sisters have a "significant protectable interest," and resolution of Plaintiffs' claims may "impair or impede" their ability to protect it.

The question of whether a proposed intervenor has a significant protectable interest is a "practical, threshold inquiry," and the party seeking intervention need not establish any "specific legal or equitable interest." *Citizens for Balanced Use*, 647 F.3d at 897 (citation omitted). To meet its burden, a proposed intervenor "must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Id.* The question of whether there is a significant protectable interest does not turn on "technical distinctions." *Cal. ex rel. Lockyer v. U.S.*, 450 F.3d 436, 441 (9th Cir. 2002). Instead, courts "have taken the view that a party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *See id.* Once a significant protectable interest is established, courts look to whether the proposed intervenor's ability to protect that interest would be "impair[ed] or impede[ed]" by "the disposition of the action." *Citizens for Balanced Use*, 647 F.3d at 897 (citation omitted). "If an absentee would be substantially affected in a practical sense by the determination made in an action, [it] should, as a general rule, be entitled to intervene . . . ." *Id.* at 898 (quoting Fed R. Civ. P. 24 advisory committee's note).

The Little Sisters assert that they "have a direct and immediate interest in the validity of [the Religious Exemption IFR's] protection." Mot. at 12. The Court agrees. Their interest in being exempt from the ACA's contraceptive mandate based on their religious objections is "protectable under some law"—in this case, the Religious Exemption IFR, which Defendants state was issued in part "to provide conscience protections for individuals and entities with sincerely held religious beliefs in certain health care contexts . . . ." *See* 82 Fed. Reg. 47,793. Moreover,

7

the result of this case could impair or impede their ability to protect this asserted interest: if the Court ultimately agrees with Plaintiffs that the Religious Exemption IFR violates the APA or the Constitution and invalidates the IFR, the Little Sisters may once again be required to comply with the prior accommodation process to which they have objected for years.[5]

Plaintiffs counter that the Little Sisters "do[] not need to rely on the IFRs at issue in this lawsuit to accommodate [their] religious beliefs." Opp. at 4. They support that assertion by explaining that the Little Sisters use the Christian Brothers Employee Benefit Trust, a self-insured church health insurance plan. *Id.* at 3 (citation omitted). Such self-insured church plans are "generally exempt from regulation under ERISA," and Plaintiffs posit that because "the government's authority to require a third party administrator (TPA) to provide coverage under the accommodation . . . derives from ERISA," the government effectively "lacks the legal authority to require [the Little Sisters to provide] separate contraceptive coverage for [their] employees." *Id.* at 3-4 (citing authorities). However, as the Tenth Circuit explained in its opinion regarding the Little Sisters' challenge to the pre-October 2017 regime, under that system they were "subject to the Mandate unless they [took] advantage of the accommodation scheme by delivering the [EBSA Form 700] to the Christian Brothers, their TPA, or notifying HHS of their religious objection."

---

[5] This, of course, also depends on how the cases remanded by *Zubik* are resolved. Prior to *Zubik*, the Little Sisters unsuccessfully sought an injunction precluding the enforcement of the contraceptive mandate as to them. *See Little Sisters of the Poor Home for the Aged v. Sebelius*, 6 F. Supp. 3d 1225, 1246 (D. Colo. 2013) (denying preliminary injunction), *aff'd sub nom. Little Sisters of the Poor Home for the Aged, Denver, Colo. v. Burwell*, 794 F.3d 1151, 1205 (10th Cir. 2015). In *Zubik*, before remanding the Little Sisters' case to the Tenth Circuit, the Court observed that throughout the litigation, the petitioners had made the government aware of their view that they met the requirements for "exemption from the contraceptive coverage requirement on religious grounds." 136 S. Ct. at 1561 (citation omitted). The Court determined that the government could rely on this notice "to facilitate the provision of full contraceptive coverage" under the accommodation, and stated that in the interim, "the Government may not impose taxes or penalties on petitioners for failure to provide the relevant notice." *See id.* This Court does not read the Supreme Court's language as granting an injunction on the underlying merits, but simply as an acknowledgment that the government has sufficient notice of the Little Sisters' position to take the steps required under the accommodation. In any event, because the Tenth Circuit on remand could reverse the denial of the preliminary injunction, it is uncertain whether the Little Sisters would be required to comply with the prior accommodation process if this Court ultimately invalidates the Religious Exemption IFR. For purposes of this motion, the fact that the Little Sisters *may* be required to comply with that process is sufficient to establish their significant, protectable interest. *See Citizens for Balanced Use*, 647 F.3d at 897 (establishing that a party seeking intervention need not establish any "specific legal or equitable interest").

*Little Sisters of the Poor*, 794 F.3d at 1167. While the Tenth Circuit addressed the arguments made by parties with self-insured church plans at length, *id.* at 1188-90, it did not suggest that the form of the plan was in itself dispositive of those arguments. Accordingly, the Court finds that a "technical distinction" regarding the form of the Little Sisters' insurance plan is not a basis for finding that this factor is not satisfied. *See Lockyer*, 450 F.3d at 441. It suffices here that the Little Sisters have identified a "practical impairment of [their] interests" that could result from the pending litigation. *See id.*

### 2. The Little Sisters cannot overcome the presumption that the government will adequately represent their interests.

Generally, "[t]he burden of showing inadequacy of representation is 'minimal' and satisfied if the [party seeking intervention] can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898. In making this determination, courts examine three factors:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Id.* (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). "The 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.'" *Id.* (citation omitted). Proposed intervenors with the same ultimate objective as an existing party but different litigation strategies are normally not entitled to intervention. *Arakaki*, 324 F.3d at 1086 (citation omitted). Moreover, where a proposed intervenor and an existing party "share the same ultimate objective, a presumption of adequacy of representation arises." *Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted). There is also a presumption "when the government is acting on behalf of a constituency that it represents because it is presumed that the government adequately represents its citizens when the [party seeking intervention] shares the same interest." *Sierra Club v. U.S. Envtl. Prot. Agency*, No. 13-cv-2809-YGR, 2013 WL 5568253, at *4 (N.D. Cal. Oct. 9, 2013) (citing *Arakaki*, 324 F.3d at 1086; *City of L.A.*, 288 F.3d at 401; and *Gonzalez v. Ariz.*, 485 F.3d 1041, 1052 (9th Cir. 2007)). A presumption

of adequacy "must be rebutted with a compelling showing." *Citizens for Balanced Use,* 647 F.3d at 898 (citation omitted).

Here, the Little Sisters must overcome a substantial presumption of adequacy: not only do they share the same ultimate objective with Defendants, but Defendants are agencies and officials of the federal government. *See Sierra Club*, 2013 WL 5568253, at *4. And, like Defendants, they urge the Court to reject Plaintiffs' argument that the IFRs are unlawful and must be vacated. *See* Dkt. No. 38-2 at 23-24 (Little Sisters' assertion in proposed answer that Plaintiffs' request for relief must be denied). Accordingly, to demonstrate they are entitled to intervention as of right, the Little Sisters must make a "compelling showing" to rebut the presumption that Defendants' representation of their interests will be adequate. None of the arguments they advance amounts to such a showing.

### a. Conflict with the previous Administration over the contraceptive mandate is not a basis for finding inadequate Defendants' representation of the Little Sisters' interests.

First, the Little Sisters argue that they and Defendants "have long been in conflict" over the proper balance to be struck between religious liberty and access to contraceptive coverage without cost sharing. *See* Mot. at 16. But, while the Little Sisters suggest that their relationship with Defendants is antagonistic, *see id.* at 17, they also note in the declaration accompanying their motion that the President invited several of their members to the White House for the signing of the executive order that prompted the issuance of the Religious Exemption IFR:

> At the signing ceremony, the President made clear that the [contraceptive] Mandate's application to the Little Sisters had been inappropriate and illegal. The President described the Mandate as an "attack[] against the Little Sisters of the Poor" that had put them through "a long, hard ordeal," and he listed it as an example of past "abuses" of religious liberty.

McCarthy Decl. ¶¶ 58-59 (citation omitted). Moreover, the Little Sisters largely fail to contend with Plaintiffs' persuasive argument that "past conflicts with a previous administration in other lawsuits are not a basis for concluding that these federal defendants cannot adequately represent [the Little Sisters'] interests in *this* lawsuit." Opp. at 6 (original emphasis). It is true that "Defendants and the Little Sisters remain adverse parties in separate litigation over the same issue" in the District of Colorado. *See* Mot. at 16. That formal vestige of past adversity

10

notwithstanding, however, it is clear that Defendants now are fully advocating for the Little Sisters' position. Furthermore, as explained below, the Little Sisters fail to identify support in the record for their assertion that this past adversity is presently likely to result in any inadequate representation of their interests. They thus fail to make a compelling showing on this point.

### b. The Little Sisters fail to show that their previous litigation caused the issuance of the Religious Exemption IFR.

Second, the Little Sisters contend that "the federal government changed its rule because of the Little Sisters' successful litigation," which they argue supports a showing of inadequacy under Ninth Circuit case law. Mot. at 16. But the record does not support this characterization. The Supreme Court in *Zubik* plainly "express[ed] no view on the merits of the cases," and merely

> afforded [the parties] an opportunity to arrive at an approach going forward that accommodates petitioners' religious exercise while at the same time ensuring that women covered by petitioners' health plans "receive full and equal health coverage, including contraceptive coverage.

136 S. Ct. at 1560 (citation omitted). Nor did Defendants describe the Little Sisters' litigation as a cause for the issuance of the Religious Exemption IFR. Rather, they characterized the ongoing litigation as one consideration among many that prompted reexamination of the previous regime, which ultimately led to the issuance of the IFRs. *See* 82 Fed. Reg. 47,799; *id.* at 47,807-08. The Court thus finds that the Little Sisters' role in prompting the issuance of the IFR is insufficient to warrant a finding of inadequacy under Ninth Circuit precedent.

For example, in *Idaho Farm Bureau Federation v. Babbitt*, the court found that the U.S. Fish and Wildlife Service ("FWS") would not have adequately represented the intervenors' interests because the FWS "took action only after [the intervenors] filed suit to compel FWS to make a decision," and "largely to fulfill the settlement agreement in the suit [the intervenors] filed." 58 F.3d 1392, 1398 (9th Cir. 1995). In contrast, although the litigation leading up to *Zubik* was a consideration, Defendants here do not contend that they were compelled by the Little Sisters to take action, nor was there a settlement agreement. Next, in *Citizens for Balanced Use*, the court found that the U.S. Forest Service would not have adequately represented the intervenors because they took action "only reluctantly in response to successful litigation by" the intervenors.

11

647 F.3d at 900. But as explained above, neither the Supreme Court nor the Tenth Circuit determined that the Little Sisters were successful on the merits in their litigation, and Defendants have not claimed that anything about the Little Sisters' litigation required them to issue the Religious Exemption IFR. And in *County of Fresno v. Andrus*, the court held that the Department of the Interior would not have adequately represented the intervenor in part because the Department took action "only reluctantly after [the intervenor] brought a law suit against it." 622 F.2d 436, 439 (9th Cir. 1980). The Little Sisters cite no support for the proposition that Defendants "reluctantly" undertook to promulgate the Religious Exemption IFR, relying only on conclusory assertions to that effect.

Accordingly, the Little Sisters' argument that the government's actions were *required* by their purported court victory on this subject fails. *See* Mot. at 17. In their reply, the Little Sisters attempt to reframe the inquiry:

> [T]he relevant question for evaluating whether the federal government's representation of the Little Sisters' interests is likely to be adequate is not whether *Zubik* dictated the precise terms of the [Religious Exemption] IFR but whether, until being persuaded otherwise in the course of litigation filed by the intervenor, the government had disputed the very legal propositions that it is now obligated to defend.

Reply at 6. But however the issue is put, the Little Sisters' assertion that their litigation persuaded Defendants to accept the rationale underlying the Religious Exemption IFR, does not, without more, amount to a compelling showing of inadequacy.

     **c.** **The Little Sisters' assertion that Defendants' interests are broader than theirs does not mandate intervention, and the contention that Defendants will fail to advance key arguments is unsupported.**

Last, the Little Sisters assert that the "'Government's representation of the public interest' is not 'identical to the [Little Sisters'] parochial interest.'" Mot. at 17 (quoting *Citizens for Balanced Use*, 647 F.3d at 899) (original brackets). Specifically, they contend that Defendants are balancing many interests, including "broader interests in public health, implementation of the Affordable Care Act, the cost of its regulations, and the potential impact on other federal government programs," while the Little Sisters have a singular interest "in avoiding massive fines

12

for their religious exercise." *See id.* at 18. For this reason, the Little Sisters argue, "there is no possibility that [Defendants] will undoubtedly make all the intervener's arguments, as the standard requires." *Id.* (citation and internal quotation marks omitted). But the standard is not so stringent. Whether an existing party will make all of a proposed intervenor's arguments is a *factor* the court examines in determining the adequacy of representation, but intervention is not automatically required every time this factor is not present. *See Citizens for Balanced Use*, 647 F.3d at 898 (describing the inquiry as an examination of three factors, not a test involving three prerequisites).

Moreover, even if the Little Sisters' characterization of the intervention standard was accurate, conclusory allegations that an existing party will not make certain arguments are insufficient to show inadequacy. In *Freedom from Religion Foundation, Inc. v. Geithner*, for example, the plaintiff sued the federal government, alleging that a certain tax exemption violated the Establishment Clause. 644 F.3d 836, 840 (9th Cir. 2011) ("*FFRF*"). The court denied a motion to intervene by a pastor who used the exemption, finding that he had failed to overcome the presumption of adequacy that applies when a proposed intervenor shares the same ultimate objective with a government party defending a challenged law. *See id.* at 841-42. As relevant here, the court found that despite the pastor's fear that "the federal defendants might . . . urge the court to construe the statutes in a narrow way that would reduce the value of the exemption," the pastor had presented no evidence that the defendants had actually urged such an interpretation. *Id.* at 842. The court further held that "just because the government theoretically may offer a limiting construction of a statute that is narrower than that of a party proposing intervention does not mean that the party has overcome the presumption of adequacy of representation." *Id.* (quoting *Lockyer*, 450 F.3d at 444).

The same is true in this case. The Little Sisters point to nothing in the record supporting their contentions that Defendants will not make all of the arguments they would make, *see* Mot. at 18, or that Defendants' "natural inclination . . . will be toward a narrow reading of [the *Zubik*] injunction," *see* Reply at 2. Rather, their argument is akin to that of the proposed intervenor in *FFRF*: theoretically, Defendants may argue for interpretations of the relevant authorities that, in the Little Sisters' view, limit the scope and decrease the value of the exemption. As in *FFRF*, this

13

mere possibility is insufficient to warrant a finding of inadequate representation.

Accordingly, the Little Sisters are not entitled to intervention as of right.

### B. Permissive Intervention Is Appropriate Under These Circumstances.

While the Little Sisters are not entitled to intervention as of right, permissive intervention is appropriate under these circumstances. The Little Sisters' claim that the Religious Exemption IFR ought to be preserved presents the same question of law at issue in the Plaintiffs' challenge to the IFR's legality. *See City of L.A.*, 288 F.3d at 403 (citation omitted). Moreover, intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." *See Lucent*, 642 F.3d at 741. Plaintiffs concede that the Little Sisters' motion is timely, Opp. at 2, and make no real argument that permissive intervention would be prejudicial.[6] Instead, they state in passing that the Little Sisters' intervention is "wholly unnecessary for the full and fair presentation of the legal issues involved in this lawsuit." *See id.* at 10. But "the idea of 'streamlining' the litigation . . . should not be accomplished at the risk of marginalizing those . . . who have some of the strongest interests in the outcome." *City of L.A.*, 288 F.3d at 404.

The Court finds that the Little Sisters have such an interest. They believe that the health plans they offer to their employees "should be consistent with Catholic teaching," McCarthy Decl. ¶ 34, and that the Religious Exemption IFR is necessary to enable them to fulfill this obligation. On its face, the Religious Exemption IFR references the arguments raised by religious objectors in the litigation leading up to the *Zubik* decision. *See* 82 Fed. Reg. 47,798. Whether or not the Court ultimately finds the IFR to be lawful, therefore, the Little Sisters have a legitimate basis to intervene and present their position in this lawsuit.

Finally, Plaintiffs contend that if the Court does grant intervention, (1) "the issues before the Court should not be broadened or enlarged," (2) "there should be no delay in . . . resolving the merits of the case," and (3) "there should be no duplicative discovery." Opp. at 10. The Court agrees. "Particularly in a complex case . . . a district judge's decision on how best to balance the rights of the parties against the need to keep the litigation from becoming unmanageable is entitled

---

[6] Plaintiffs do not argue that jurisdiction is lacking and the Court is satisfied that it has jurisdiction over the Little Sisters' claims under 28 U.S.C. § 1331.

to great deference." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 380 (1987) (citing Fed. R. Civ. P. 24(b)(2)). In keeping with Rule 24's mandate to consider whether intervention will "unduly delay or prejudice the adjudication of the original parties' rights," the Court finds it appropriate to exercise its discretion to impose the following limitations. First, the issues in this case shall be limited to those raised by the original parties. Second, the Court will proceed with the currently-set case management conference on January 9, 2018 at 10:00 a.m. At the case management conference, the parties should be prepared to discuss how discovery can be coordinated to avoid duplication and encourage efficiency.

**IV. CONCLUSION**

For the foregoing reasons, permissive intervention (but not intervention as of right) is warranted under the circumstances. Accordingly, the Little Sisters' motion to intervene is **GRANTED**.

**IT IS SO ORDERED.**

Dated: 12/29/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge