UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, et al., <br> Plaintiffs, <br> v. <br> HEALTH AND HUMAN SERVICES, et al., <br> Defendants. | Case No. 17-cv-05783-HSG <br><br> **ORDER GRANTING DEFENDANT-INTERVENOR'S MOTION TO INTERVENE** <br><br> Re: Dkt. No. 87 |

Pending before the Court is a motion to intervene filed by March for Life Education and Defense Fund ("March for Life"). Dkt. No. 87. In this case, the plaintiffs allege that certain federal agencies issued interim final rules ("IFRs") in violation of the Administrative Procedure Act ("APA") and the United States Constitution. The IFRs, *inter alia*, created a moral exemption to the Affordable Care Act's contraceptive mandate, which generally requires employers' health insurance plans to cover all contraceptive methods approved by the Food and Drug Administration ("FDA") without cost sharing on the part of employees. For the reasons set forth below, March for Life's motion is **GRANTED**.

**I.   BACKGROUND**

**A.   March for Life Education and Defense Fund**

March for Life is a pro-life, non-religious organization located in Washington, D.C. Dkt. No. 87-1 (Decl. of Jeanne F. Mancini, or "Mancini Decl.") ¶ 2. Founded in 1973 following the Supreme Court's decision in *Roe v. Wade*, March for Life exists to "oppose abortion in all its forms" and "help all like-minded Americans to protect and advocate for the lives of unborn children." *See id.* ¶¶ 3, 4, 5. The organization is non-profit and tax-exempt. *Id.* ¶ 2. It is this organization that brings the instant motion. March for Life represents that in accordance with its

underlying principles, it opposes the "destruction of human life at any stage before birth, including by abortifacient methods that may act after the union of a sperm and ovum." *See id.* ¶¶ 11-12. As a matter of policy, March for Life only hires employees who are pro-life and share the organization's basic moral convictions. *See id.* ¶ 8.

### B. The Regulatory Backdrop

The Court briefly recounts the history of the contraceptive mandate as relevant to the IFR at issue in this case.[1] In 2010, Congress enacted the Affordable Care Act ("ACA"). The ACA included a provision that required health plans to cover certain forms of preventive care for women without cost sharing, as specified in guidelines provided by the Health Resources and Services Administration ("HRSA"), an agency of the U.S. Department of Health and Human Services ("HHS"). 42 U.S.C. § 300gg-13(a)(4). In 2011, HRSA issued those guidelines, which defined preventive care coverage to include all FDA-approved contraceptive methods.[2]

In 2012, in response to substantial public input, HHS, the U.S. Department of Labor, and the U.S. Department of the Treasury ("the agencies") promulgated regulations exempting from the ACA's contraceptive mandate certain religious employers who objected to providing contraceptive coverage. 77 Fed. Reg. 8,727. In 2013, the agencies promulgated rules establishing an accommodation, under which eligible organizations with religious objections to providing contraceptive coverage were "not required to contract, arrange, pay, or refer for [it]," but their "plan participants and beneficiaries . . . [would] still benefit from separate payments for contraceptive services without cost sharing or other charge," as required by law. 78 Fed. Reg. 39,874.

In 2014, the Supreme Court issued two opinions that affected the contours of the

---

[1] The Court provided a more detailed history of the mandate and challenged IFRs in its Order Granting Plaintiffs' Motion for a Preliminary Injunction. *See* Dkt. No. 105 at 2-11.
[2] *See* HEALTH RES. & SERVS. ADMIN., Women's Preventive Services Guidelines, *available at* https://www.hrsa.gov/womens-guidelines/index.html. On December 20, 2016, HRSA updated the guidelines, clarifying that "[c]ontraceptive care should include contraceptive counseling, initiation of contraceptive use, and follow-up care," as well as "enumerating the full range of contraceptive methods for women" as identified by the FDA. *See* HEALTH RES. & SERVS. ADMIN., Women's Preventive Services Guidelines, *available at* https://www.hrsa.gov/womens-guidelines-2016/index.html.

2

exemption and accommodation. As a result of *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), the agencies issued rules extending the exemption to closely-held entities with religious objections to providing contraceptive coverage. 80 Fed. Reg. 41,324. And as a result of *Wheaton College v. Burwell*, 134 S. Ct. 2806 (2014), the agencies issued a rule allowing organizations to trigger the accommodation process by providing the government notice of a religious objection using an alternative mechanism. 80 Fed. Reg. 41,323.

### C. March for Life's Litigation

In July 2014, March for Life (along with two of its employees) brought suit against the government in federal court, challenging the contraceptive mandate as violating the Constitution, the Religious Freedom and Restoration Act of 1993 ("RFRA"), and the Administrative Procedure Act ("APA"). *See March for Life v. Burwell*, 128 F. Supp. 3d 116, 123 (D.D.C. 2015). In September 2014, the plaintiffs moved for, *inter alia*, preliminary and permanent injunctive relief, which the district court consolidated and construed as a motion for summary judgment. *Id.* at 120. In August 2015, the court permanently enjoined the government from enforcing the contraceptive mandate against March for Life, on the grounds that enforcement of that provision would violate the Equal Protection Clause of the Fifth Amendment, RFRA, and the APA. *Id.* at 134. In October 2015, the federal government filed its notice of appeal, and the D.C. Circuit ordered the case be held in abeyance pending its decision in a similar case following the Supreme Court's remand in *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (per curiam). Dkt. No. 87 at 11-12. March for Life's case currently remains in abeyance pending further order by the D.C. Circuit. *Id.* at 12.

### D. The *Zubik* Case and Subsequent Impasse

In May 2016, the Supreme Court issued its opinion in *Zubik*. The petitioners were primarily non-profit organizations, all of which were eligible for the religious accommodation but challenged the requirement that they submit notice to either their insurer or to the federal government as a violation of RFRA. *Zubik*, 136 S. Ct. at 1558. "Following oral argument, the Court requested supplemental briefing from the parties addressing 'whether contraceptive coverage could be provided to petitioners' employees, through petitioners' insurance companies, without any such notice from petitioners.'" *Id.* at 1558-59. After the parties stated that "such an

option [was] feasible," the Court remanded to afford them "an opportunity to arrive at an approach going forward that accommodates petitioners' religious exercise while at the same time ensuring that women covered by petitioners' health plans 'receive full and equal health coverage, including contraceptive coverage.'" *Id.* at 1559. "The Court express[ed] no view on the merits of the cases," and did not decide "whether petitioners' religious exercise [had] been substantially burdened, whether the [g]overnment has a compelling interest, or whether the current regulations are the least restrictive means of serving that interest." *Id.* at 1560. The litigation was then stayed.

In July 2016, the agencies issued a request for information ("RFI") on whether, in light of *Zubik*,

> there are alternative ways (other than those offered in current regulations) for eligible organizations that object to providing coverage for contraceptive services on religious grounds to obtain an accommodation, while still ensuring that women enrolled in the organizations' health plans have access to seamless coverage of the full range of [FDA]-approved contraceptives without cost sharing.

81 Fed. Reg. 47,741. In January 2017, the agencies issued a document titled "FAQs About Affordable Care Act Implementation Part 36" ("FAQs").[3] The FAQs stated that, based on the 54,000 comments received in response to the RFI, there was "no feasible approach . . . at this time that would resolve the concerns of religious objectors, while still ensuring that the affected women receive full and equal health coverage, including contraceptive coverage." FAQs at 4.

### E. The 2017 Interim Final Rules

On May 4, 2017, the President issued Executive Order No. 13,798, directing the agencies to "consider issuing amended regulations, consistent with applicable law, to address conscience-based objections to the preventive care mandate . . . ." 82 Fed. Reg. 21,675. Subsequently, on October 6, 2017, the agencies issued the Religious Exemption IFR and the Moral Exemption IFR at issue in this case, both of which were effective immediately. 82 Fed. Reg. 47,792.

The Moral Exemption IFR, which is the IFR relevant to this motion, extended the

---

[3] DEP'T OF LABOR, FAQs About Affordable Care Act Implementation Part 36, *available at* https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-36.pdf.

4

protections afforded under the Religious Exemption[4] "to include additional entities and persons that object based on sincerely held moral convictions." 82 Fed. Reg. 47,849. Additionally, "consistent with [their] expansion of the exemption, [the agencies] expand[ed] eligibility for the accommodation to include organizations with sincerely held moral convictions concerning contraceptive coverage," while also making the accommodation process optional for those entities. *Id.*

### F. Plaintiffs' Challenge of the Interim Final Rules

Plaintiffs in this case are the states of California, Delaware, Maryland, and New York, and the Commonwealth of Virginia. Defendants are HHS, Secretary of HHS Eric D. Hargan, the U.S. Department of Labor, Secretary of Labor R. Alexander Acosta, the U.S. Department of the Treasury, and Secretary of the Treasury Steven Mnuchin. Plaintiffs challenge the Religious Exemption and Moral Exemption IFRs, asserting that they violate the APA, the Establishment Clause, and the Equal Protection Clause.

On November 1, 2017, Plaintiffs filed the First Amended Complaint. Dkt. No. 24. On November 9, 2017, they moved for a preliminary injunction, seeking to prohibit implementation of the IFRs and require reinstatement of the previous exemption and accommodation regime, pending resolution on the merits. *See* Dkt. No. 28. The Court granted Plaintiffs' motion for a preliminary injunction on December 21, 2017. Dkt. No. 105.

On November 21, 2017, the Little Sisters of the Poor Jeanne Jugan Residence ("the Little Sisters") filed a motion to intervene. *See* Dkt. No. 38. The Court granted this motion on December 29, 2017. *See* Dkt. No. 115.

Meanwhile, March for Life filed this motion to intervene on December 8, 2017. Dkt. No. 87 ("Mot."). Plaintiffs filed their opposition on December 22, 2017, Dkt. No. 107, and March for Life replied on December 29, 2017, Dkt. No. 113. On January 17, 2018, March for Life requested

---

[4] The Religious Exemption IFR substantially broadened the scope of the religious exemption, extending it "to encompass entities, and individuals, with sincerely held religious beliefs objecting to contraceptive or sterilization coverage," and "making the accommodation process optional for eligible organizations." 82 Fed. Reg. 47,807-08. Such entities "will not be required to comply with a self-certification process." *Id.* at 47,808. Just as the IFR expanded eligibility for the exemption, it "likewise" expanded eligibility for the optional accommodation. *Id.* at 47,812-13.

that its motion to intervene be decided without a hearing. Dkt. No. 132.[5]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) governs intervention as of right. The rule is "broadly interpreted in favor of intervention," and requires a movant to show that

> (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citing *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)). Courts deciding motions to intervene as of right are "guided primarily by practical considerations, not technical distinctions." *See id.* (quoting *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001)); *see also U.S. v. City of L.A.*, 288 F.3d 391, 397 (9th Cir. 2002) (stating that "equitable considerations" guide determination of motions to intervene as of right) (citation omitted).

Federal Rule of Civil Procedure 24(b) governs permissive intervention. The Ninth Circuit has interpreted the rule to allow permissive intervention "where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *City of L.A.*, 288 F.3d at 403 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)). "In exercising its discretion" on this issue, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## III. DISCUSSION

March for Life argues that it is entitled to intervention as of right, or in the alternative, to permissive intervention. At the core of its argument is the claim that this lawsuit "threatens to undo the protections contained" in the Moral Exemption IFR and "produce a ruling that

---

[5] The Court agrees that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

6

contradicts the injunctive relief" March for Life has "already secured." Mot. at 1-2. As such, it seeks intervention to defend what it characterizes as "its right to operate its organization in a manner consistent with its moral convictions and its reason for being, free from the imposition of potentially crippling fines." *See id.* at 1.

While March for Life's basis for seeking intervention is different from the Little Sisters', the controlling legal analysis is identical. Accordingly, the Court incorporates by reference the analysis in its order granting the Little Sisters' motion to intervene, and finds that March for Life is not entitled to intervention as of right because it cannot overcome the presumption that the government will adequately represent its interest with regard to the Moral Exemption IFR. *See* Dkt. No. 115 at 7-14. As with the Little Sisters, however, permissive intervention is appropriate under these circumstances. *See* Dkt. No. 115 at 14-15.

## IV. CONCLUSION

For the foregoing reasons, permissive intervention (but not intervention as of right) is warranted. March for Life's motion to intervene is therefore **GRANTED**. This terminates Docket Number 132 as moot.

**IT IS SO ORDERED.**

Dated: 1/26/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

7