ELLEN ROSENBLUM
Attorney General
NICOLE DEFEVER, State Bar No.191525
Senior Assistant Attorney General
Oregon Department of Justice
 100 Market Street
 Portland, OR 942401
 Telephone: (971)673-1880
 Fax:  (971) 673-5000
 E-mail:  Nicole.DeFever@doj.state.or.us
*Attorneys for Proposed Plaintiff-Intervenor State of Oregon*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE STATE OF CALIFORNIA; THE STATE OF CONNECTICUT; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF HAWAII; THE STATE OF ILLINOIS; THE STATE OF MARYLAND; THE STATE OF MINNESOTA, BY AND THROUGH ITS DEPARTMENT OF HUMAN SERVICES; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF RHODE ISLAND; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; THE STATE OF WASHINGTON,** | 4:17-cv-05783-HSG<br><br>**STATE OF OREGON'S MOTION TO INTERVENE** |
| Plaintiffs, | |
| **v.** | |
| **ALEX M. AZAR, II, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; R. ALEXANDER ACOSTA, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF LABOR; U.S. DEPARTMENT OF LABOR; STEVEN MNUCHIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF THE TREASURY; U.S. DEPARTMENT OF THE TREASURY; DOES 1-100,** | |

1

1

2

Defendants,

and,

3 **THE LITTLE SISTERS OF THE POOR,
JEANNE JUGAN RESIDENCE; MARCH
FOR LIFE EDUCATION AND DEFENSE
FUND,**

4

5

6 Defendant-Intervenors.

**STATE OF OREGON**,

7

Intervenor-Plaintiff,

8 v.

9 **ALEX M. AZAR, II, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF THE U.S.
DEPARTMENT OF HEALTH & HUMAN
SERVICES; U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES; R.
ALEXANDER ACOSTA, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF THE U.S.
DEPARTMENT OF LABOR; U.S.
DEPARTMENT OF LABOR; STEVEN
MNUCHIN, IN HIS OFFICIAL CAPACITY AS
SECRETARY OF THE U.S. DEPARTMENT OF
THE TREASURY; U.S. DEPARTMENT OF
THE TREASURY; DOES 1-100,**

10

11

12

13

14

15

16 Intervenor-Defendants.

17

18 ## I.  MOTION

19 Pursuant to Fed. R. Civ. P. 24, the State of Oregon moves to intervene in this action as of

20 right. Fed. R. Civ. P. 24(a)(2). In the alternative, the State of Oregon moves for permissive

21 intervention. Fed. R. Civ. P. 24(b)(1)(B). This motion is based on the accompanying Declaration

22 of Helene Rimberg ("Rimberg Decl."), the pleadings and papers on file herein, and the

23 accompanying points and authorities. The State of Oregon's proposed Complaint-in-Intervention

24 is attached hereto as Exhibit 1.  Oregon's proposed Joinder in States' Motion for a Preliminary

25 Injunction is attached hereto as Exhibit 2.

## II.  INTRODUCTION

26 As detailed in the Plaintiff States' Second Amended Complaint and Motion for a

27 Preliminary Injunction, the Patient Protection and Affordable Care Act ("ACA") requires certain

28

2

group insurance plans to cover all FDA-approved contraceptive methods and counseling without cost-sharing for beneficiaries.  The Defendant agencies promulgated final rules on November 15, 2018, that would have the effect of gutting that requirement ("Contraception Exemption Rules"). The rules would allow employers and insurance companies with religious and "moral" objections to opt-out of the contraceptive coverage requirement.  Because the rules provide no way for the federal government to evaluate the legitimacy of the "moral" objections and no way for the state to police abuses of opt-out decisions, entities would have the practically unfettered ability to deprive their employees and insureds of contraceptive coverage for any and all reasons whatsoever, even discriminatory or purely economic reasons.

Oregon is harmed by the rules and no other party is able to protect its interests in this litigation. Oregon will be required to shoulder the additional costs when women who would have been covered by their employer's insurance seek coverage in Oregon under state-funded programs.  Oregon will also experience additional costs for those Oregon patients who forego contraceptive care when unintended pregnancies result.  The rules are also contrary to Oregon's legislatively codified public policy to increase access to contraception for Oregon women while reducing their cost and inconvenience.  In order to vindicate its rights and to protect its interests, and because no party would be prejudiced by Oregon's participation in this matter, Oregon now seeks to intervene.

### III.  STATEMENT OF FACTS

The facts underlying this litigation are familiar to this Court and were recently set forth at length by published order of the Ninth Circuit Court of Appeals and an Amended Complaint recently filed in this matter by California and more than dozen other states and the District of Columbia. *See California v. Azar*, __ F.3d __, 2018 WL 6566752 at *1-3 (9th Cir. 2018)("*Azar*") (recounting facts in the record); Second Amended Complaint for Declaratory and Injunctive Relief, Doc. 170.  In the interests of judicial efficiency and economy, Oregon does not recount that history in detail here.  Any additional facts relevant to Oregon's claims are set forth below, as appropriate.

# IV.  ARGUMENT

"Intervention is governed by Fed. R. Civ. Proc. 24(a) and (b)." *In re Estate of Ferdinand E. Marcos Hum. Rts. Litig.*, 536 F.3d 980, 984 (9th Cir. 2008).  Here, Oregon is entitled to intervene as of right under Rule 24(a)(2). In the alternative, this court should permit Oregon to intervene under Rule 24(b)(1)(b).

## A.    Oregon has a Right to Intervene Under Federal Rule of Civil Procedure 24(a)(2).

Oregon has a right to intervene under Fed. R. Civ. P. 24(a)(2). That rule provides, in pertinent part:

> On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

This Court examines four factors to determine whether an applicant should be permitted to intervene as a matter of right under Rule 24(a)(2): (1) the motion must be timely; (2) the applicant must have a "significantly protectable interest" relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.  *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citation omitted).  Oregon satisfies each of these factors.

### 1.    Oregon's motion is timely.

Oregon plainly meets the timeliness factor.  To determine whether a motion to intervene is timely, this Court considers (1) "the stage of the proceeding at which an applicant seeks to intervene;" (2) "the prejudice to other parties;" and (3) "the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F3d 915, 921 (9th Cir. 2004).  California and the other original state plaintiffs joined with a number of new state plaintiffs to file a second amended complaint on December 18 and a preliminary injunction on December 19, just two weeks ago.  Defendants have not yet answered or otherwise responded to the complaint.  Defendants filed their response to the motion for preliminary injunction on January 3, 2019.  This case is

4

1  procedurally at an early stage.  In light of this history, defendants cannot plausibly claim that

2  intervention would result in any form of prejudice.  Moreover, any delay in intervention has been

3  short and reasonably attributable to the need to gather evidence.  *Cf. Day v. Apoliona*, 505 F.3d

4  963, 965–66 (9th Cir. 2007) (finding motion timely when made two years after case was filed);

5  *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (finding motion timely

6  when made twenty years after case was filed).  Accordingly, Oregon's motion is timely.

7        **2.**      **Oregon has a "significantly protectable interest" related to this case.**

8        Oregon also meets the second factor, because it has a "significantly protectable interest"

9  related to this case.  *See Arakaki*, 324 F.3d at 1083 (stating requirement).  A significantly

10  protectable interest exists where "the interest is protectable under some law, and . . . there is a

11  relationship between the legally protected interest and the claims at issue." *Id.* at 1084 (quotation

12  marks and citation omitted).  The "relationship" requirement is generally met where the

13  "resolution of the plaintiff's claims actually will affect the applicant." *Id.* (quotation marks and

14  citation omitted).  Here, Oregon holds a number of legally protected interests that actually will be

15  affected by the resolution of this litigation.[1]

16        **a.**      **Effect on Oregon's Finances**

17        First, Oregon will suffer fiscally if the unlawful Contraception Exemption Rules go into

18  effect.  The Oregon Health Authority runs a program that provides publicly-funded family

19  planning services, including contraception, to those in need.  *See* Rimberg Dec., ¶¶ 3, 7.  The state

20  funds some of those services.  Oregon Contraceptive Care ("CCare") is Oregon's family-planning

21  Medicaid waiver; it covers contraceptive services for individuals below 250% of the federal

22  poverty line.  Rimberg Dec., ¶ 3. It requires a state-funded match.  *Id.* Oregon's Reproductive

23

24        [1] "In general, an applicant for intervention need not establish Article III standing to intervene." *Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011) (*per curiam*); *but see Laroe Estates, Inc. v. Town of Chester*, 828 F.3d 60, 65 (2d Cir. 2016), *cert. granted sub nom.*

25  *Town of Chester, N.Y. v. Laroe Estates, Inc.*, No. 16-605, 2017 WL 125674 (U.S. Jan. 13, 2017) (noting that "there is a circuit split on this issue").  To the extent that Oregon is required to

26  demonstrate Article III standing in order to intervene, it has standing for the same reasons that the Ninth Circuit concluded that California, Delaware, Virginia, Maryland, and New York have

27  standing. *See Azar*, 2018 WL 6566752 at *5-8 (concluding that the States had standing to challenge the interim rules based on demonstrated economic harm).

28

1  Health Equity Act also provides state funding for reproductive health services for certain women

2  who because of immigration status are not eligible for other public assistance.  *Id.*

3      The Contraception Exemption rules will cause Oregon to incur increased costs to provide

4  contraception coverage through CCare and the Reproductive Health Equity Act to those whose

5  employers or insurers opt out of the coverage requirement.  Rimberg Dec., ¶ 7.  Enforcement of

6  the rules may also cause some patients to forego contraception, or highly-effective forms of

7  contraception, which will risk unintended pregnancies.  Rimberg Dec., ¶¶ 7-9.  Unintended

8  pregnancies will lead to increased health care costs to the state of approximately $16,000 for each

9  live birth and the first year of infant health care costs.  Rimberg Dec., ¶ 8.  The fiscal impact on

10 Oregon, depending upon how many employers and insurers opt out, could be very significant.

11 Rimberg Dec., ¶ 9.

12                    **b.**      **Impact on Oregon's Public Health**

13      Second, the Contraception Exemption Rules would negatively impact public health if

14 implemented in Oregon.  Women's access to reproductive health care services as needed is an

15 important public health issue.  The Contraception Exemption Rules would curtail women's access

16 to contraceptive coverage.  The rules would require women who lose coverage to take additional

17 steps to seek coverage from different health care providers under a publicly-funded program.

18 This will cause delays, at a minimum, in securing contraceptive care, which can lead to negative

19 health impacts if unintended pregnancies result.  Rimberg Decl., ¶ 6.

20                    **c.**      **Impact on Oregon's Sovereign Interests**

21      Third, the Contraceptive Exemption Rules harm Oregon's sovereign and quasi-sovereign

22 interests in enforcing its own laws and policies favoring increased and low cost access to

23 contraception in order to improve the public health and women's social and economic progress.

24 Rimberg Decl., ¶¶ 3-5.  The Rules, which would create barriers and delay access to contraception,

25 would frustrate these policies.

26      In short, because the executive order harms Oregon's finances, public health interests, and

27 sovereign interests, Oregon has a significantly protectable interest related to this case.

28

6

1

2

### 3.      The disposition of this action may impair Oregon's ability to protect its interests.

3      Oregon also meets the third requirement, because the disposition of the action "may as a

4   practical matter" impair or impede Oregon's ability to safeguard its protectable interests.  *See*

5   *Smith*, 830 F.3d at 862; *Arakaki*, 324 F.3d at 1083.  If Defendants prevail in this action, Oregon

6   would suffer the harms set forth above.  As important, under *Azar*, unless Oregon is permitted to

7   join this case, even if the Plaintiff States prevail in obtaining injunctive relief, this relief could

8   very well not inure to Oregon's benefit.  In *Azar*, the Ninth Circuit limited the scope of

9   preliminary injunctive relief to the Plaintiff States.  2018 WL 6566752 at *16 ("[t]he scope of the

10   remedy must be no broader and no narrower than necessary to redress the injury to the plaintiff

11   states.")  Thus, in order for any preliminary or permanent injunctive relief ordered by the Court to

12   be effective in Oregon, Oregon must be joined as a plaintiff.[2]  Otherwise the Conscience

13   Exemption Rules could go into effect in Oregon regardless of the Court's ruling.  Therefore,

14   Oregon meets the third Rule 24(a)(2) factor.

15      ### 4.      Oregon's interests are inadequately represented by the parties to the action.

16      Finally, Oregon's interests are inadequately represented by the parties to this action.  The

17   burden on a proposed intervenor to demonstrate inadequate representation is "minimal," and is

18   satisfied by a showing that representation of its interests "*may be*" inadequate.  *Arakaki*, 324 F.3d

19   at 1086 (quotation marks and citation omitted; emphasis added).  Three factors are relevant to that

20   inquiry: "(1) whether the interest of a present party is such that it will undoubtedly make all of a

21   proposed intervenor's arguments; (2) whether the present party is capable and willing to make

22   such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the

23   proceeding that other parties would neglect." *Id*. (citation omitted).  Those factors weigh in favor

24   of intervention here.  Again, under *Azar*, the Plaintiff States are limited to seeking a remedy for

25   their own harms, rather than Oregon's.  2018 WL 6566752 at *16.  Thus, no other party can

26   adequately represent Oregon's interest.

27   ───────────

   [2] Oregon's proposed Joinder to States' Motion for a Preliminary Injunction is attached
28   hereto as Exhibit 2.

1

2

**B.     Should the Court determine that Oregon does not have a right to intervene, it should grant permissive intervention under Rule 24(b).**

3    In the alternative, this Court should exercise its discretion to grant Oregon permission to

4    intervene under Rule 24(b).  That rule provides in pertinent part that, "On timely motion, the

5    court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the

6    main action a common question of law or fact." *Blum v. Merrill Lynch Pierce Fenner & Smith*

7    *Inc.*, 712 F3d 1349, 1353 (9th Cir 2013) (quoting Fed. R. Civ. P. 24(b)(1)).  Generally,

8    permissive intervention requires "(1) an independent ground for jurisdiction; (2) a timely motion;

9    and (3) a common question of law and fact between the movant's claim or defense and the main

10    action." *Blum*, 712 F3d at 1353 (quotation marks and citation omitted).  In determining whether

11    to exercise its discretion to grant permissive intervention, the Court considers "whether the

12    intervention will unduly delay or prejudice the adjudication of the original parties' rights."

13    Fed. R. Civ. P. 24(b)(3).  Oregon meets the requirements for permissive intervention here.

14    First, jurisdiction is easily established, because this is a federal-question case.  *See*

15    *Freedom from Religion Found., Inc. v. Geithner*, 644 F3d 836, 844 (9th Cir 2011) (explaining

16    that jurisdictional requirement of permissive intervention satisfied where case presented federal

17    question).  *See also* 28 U.S.C. §1331 ("The district courts shall have original jurisdiction of all

18    civil actions arising under the Constitution, laws, or treaties of the United States.").  Second,

19    Oregon's motion is timely, as explained above.  Third, also for the reasons described above, this

20    case squarely presents a common question of law and fact between Oregon's claims and the main

21    action.  Finally, defendants will suffer no conceivable prejudice, at this very early stage in the

22    proceedings, due to intervention by Oregon.  For all of those reasons, this Court should, in the

23    alternative, exercise its discretion to allow Oregon to intervene.

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.   CONCLUSION

Oregon's motion should be granted and it should be given leave to file its Complaint-in-Intervention, attached hereto as Exhibit 1, and it Joinder to States Motion for Preliminary Injunction, attached hereto as Exhibit 2.

DATED January __7__, 2019.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


___*s/ J. Nicole DeFever*___
J. NICOLE DEFEVER SBN #191525
Senior Assistant Attorney General
Oregon Department of Justice
Trial Attorney
Tel (971) 673-1880
Fax (971) 673-5000
Nicole.DeFever@doj.state.or.us
Of Attorneys for State of Oregon

9

# EXHIBIT A

ELLEN ROSENBLUM
Attorney General
J. NICOLE DEFEVER, State Bar No.191525
Senior Assistant Attorney General
Oregon Department of Justice
  100 Market Street
  Portland, OR 942401
  Telephone: (971)673-1880
  Fax:  (971) 673-5000
  E-mail:  Nicole.DeFever@doj.state.or.us
*Attorneys for Proposed Plaintiff-Intervenor State of Oregon*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE STATE OF CALIFORNIA; THE STATE OF CONNECTICUT; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF HAWAII; THE STATE OF ILLINOIS; THE STATE OF MARYLAND; THE STATE OF MINNESOTA, BY AND THROUGH ITS DEPARTMENT OF HUMAN SERVICES; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF RHODE ISLAND; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; THE STATE OF WASHINGTON,**<br><br>                              Plaintiffs,<br><br>                    v.<br><br>**ALEX M. AZAR, II, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; R. ALEXANDER ACOSTA, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF LABOR; U.S. DEPARTMENT OF LABOR; STEVEN MNUCHIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF THE TREASURY; U.S. DEPARTMENT OF THE TREASURY; DOES 1-100,**<br><br>                              Defendants, | 4:17-cv-05783-HSG<br><br>**STATE OF OREGON'S [PROPOSED] COMPLAINT-IN-INTERVENTION** |

1

and,

**THE LITTLE SISTERS OF THE POOR, JEANNE JUGAN RESIDENCE; MARCH FOR LIFE EDUCATION AND DEFENSE FUND,**

Defendant-Intervenors.

**STATE OF OREGON**,

Intervenor-Plaintiff,

v.

**ALEX M. AZAR, II, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; R. ALEXANDER ACOSTA, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF LABOR; U.S. DEPARTMENT OF LABOR; STEVEN MNUCHIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF THE TREASURY; U.S. DEPARTMENT OF THE TREASURY; DOES 1-100,**

Intervenor-Defendants.

## INTRODUCTION

1.      The State of Oregon ("Oregon") joins this action to protect Oregonians' access to contraception, which is a key element in safeguarding women's overall health and well-being, plays a key role in women's socioeconomic advancement, and benefits society as a whole. Contraceptives are among the most widely-used medical services in the United States and are much less costly than maternal deliveries for women, insurers, employers, and the State.

2.      Starting in 2012, as part of the Patient Protection and Affordable Care Act (ACA), certain group health insurance plans were required to cover all FDA-approved contraceptive methods and contraceptive counseling (collectively known as "contraceptive services") without cost-sharing (e.g. individual out of pocket health expenses on copays, deductibles, or coinsurance) for beneficiaries. 45 C.F.R. § 147.130(a)(1)(iv); 29 C.F.R. § 2590.715-

2

2713(a)(1)(iv); 26 C.F.R. § 54.9815-2713(a)(1)(iv). However, on November 7, 2018, the Defendants issued their final rules which were published on November 15, 2018 (the Exemption Rules), 2018-24512 and 2018-24514. The Exemption Rules will become effective on January 14, 2019. The Exemption Rules expand the scope of the religious exemption to allow employers and insurance companies with religious or "moral" objections to opt out of the contraceptive-coverage requirement, with no way for the federal government to evaluate the legitimacy of an employer or insurance company's use of the exemption and no way for states to police the abuse of the exemption. Thus, under the Exemption Rules, for-profit corporations would have the virtually unfettered ability to deprive their employees and insureds of coverage for contraception, whether to discriminate against women, discourage women's employment or simply to boost corporate profits.

3. The Rules would also leave Oregon to shoulder the additional fiscal and administrative costs as women seek access for this coverage through state-funded programs. The rules will further lead to public health consequences due to patients being unable to gain seamless access to critical and time-sensitive contraceptive care, including unplanned pregnancies.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1361 (action to compel officer or agency to perform duty owed to Plaintiff), and 5 U.S.C. §§ 701-706 (Administrative Procedure Act). An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201¬2202 and 5 U.S.C. §§ 705-706.

5. The publication of the Exemption Rules on November 15, 2018 constitutes final agency action that is judicially reviewable within the meaning of the Administrative Procedure Act. 5 U.S.C. §§ 704, 706.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because, without limitation, a state plaintiff (California) with multiple federal judicial districts resides in any of

those districts and this action seeks relief against federal agencies and officials acting in their official capacities.

<div align="center">**INTRADISTRICT ASSIGNMENT**</div>

7.      Pursuant to Civil Local Rules 3-5(b) and 3-2(c), there is no basis for assignment of this action to any particular location or division of this Court.

<div align="center">**PARTIES**</div>

8.      Plaintiff-intervenor is the State of Oregon, acting by and through the Governor of Oregon and the Oregon Attorney General.

9.      The Governor of Oregon is the chief executive officer of the State of Oregon. The Governor is responsible for overseeing the operations of the State of Oregon and ensuring that its laws are faithfully executed.

10.      The Oregon Attorney General is the chief legal adviser to the State of Oregon. The Attorney General's powers and duties include acting in federal court on matters of public concern.

11.      Defendant Alex M. Azar, II, is Secretary of HHS and is sued in his official capacity. Secretary Azar has responsibility for implementing and fulfilling HHS's duties under the Constitution, the ACA, and the APA.

12.      Defendant HHS is an agency of the United States government and bears responsibility, in whole or in part, for the acts complained of in this Complaint. The Centers for Medicare and Medicaid Services is an agency within the HHS.

13.      Defendant R. Alexander Acosta is Secretary of the U.S. Department of Labor and is sued in his official capacity. Secretary Acosta has responsibility for implementing and fulfilling the U.S. Department of Labor's duties under the Constitution, the ACA, and the APA.

14.      Defendant U.S. Department of Labor is an agency of the United States government and bears responsibility, in whole or in part, for the acts complained of in this Complaint. The Employee Benefits Security Administration is an entity within the U.S. Department of Labor.

15.      Defendant Steven Mnuchin is Secretary of the U.S. Department of the Treasury and is sued in his official capacity. Secretary Mnuchin has responsibility for implementing and

<div align="center">4</div>

1    fulfilling the U.S. Department of the Treasury's duties under the Constitution, the ACA, and the

2    APA.

3         16.    Defendant U.S. Department of the Treasury is an agency of the United States

4    government and bears responsibility, in whole or in part, for the acts complained of in this

5    Complaint. The Internal Revenue Service (IRS) is an entity within the U.S. Department of the

6    Treasury.

7                              **OREGON'S INTERESTS**

8         17.    Oregon has an interest in ensuring that women's healthcare is available, accessible,

9    and affordable, especially women's reproductive healthcare.  Oregon will suffer concrete and

10   substantial harm because the Exemption Rules frustrate the State's public health interests by

11   curtailing women's access to contraceptive care through employer-sponsored health insurance.[1]

12   Additionally, the federal regulation inhibits state agencies from carrying out their statutorily

13   required functions, including Oregon's antidiscrimination laws.

14        18.    Oregon has a strong interest in making sure that its residents have safe and

15   available contraception.  For example, Oregon's family planning Medicaid waiver program

16   ContraceptiveCare ("CCare") covers services related to preventing pregnancy (i.e. contraceptive

17   management) for individuals at or below 250 percent of the Federal Poverty Line who are U.S.

18   citizens or have an eligible immigration status.  Oregon's House Bill 3391 (2017), also known as

19   the Reproductive Health Equity Act ("RHEA"), provides state funding for certain women who

20   because of immigration status are not eligible for other public assistance.  RHEA covers a broad

21   range of reproductive health services, including abortion and 60-days of postpartum care for

22   individuals who can become pregnant and who are ineligible for Medicaid due to immigration

23   status.  Oregon is also a grantee under the federal Title X grant program.  Additional Oregon laws

24   protecting reproductive health that go beyond the federal guarantee include  (a) providing

25   pharmacists the authority to prescribe and dispense hormonal contraceptives (ORS 689.683), and

26

27   _____

     [1] Though this complaint focuses on how the Exemption Rules target women, the
28   Exemption Rules also may affect people who do not identify as women, including some gender
     non-conforming people and some transgender men.

(b) requiring insurance plans to allow dispensing of a 12 month supply of contraceptives (ORS 743A.066)  rather than a typical one- or three-month supply.

19.     Oregon will be injured because the limitations on women's ability under the Exemption Rules to obtain contraception will cause increased costs to Oregon under CCare and RHEA, as well as increasing costs associated with resulting unintended pregnancies and the related attendant harms.  Indeed, Defendants have already conceded that states have standing because the Rules instruct women to seek out healthcare from state-funded clinics. 82 Fed. Reg. at 47792, 47807 (Oct. 13, 2017) (instructing that women obtain contraceptives through "various governmental programs," including "State sources"); 82 Fed. Reg. at 47803 (noting that various "State programs" provide contraceptive coverage). In fact, the Ninth Circuit also concluded that the States have standing. *California v. Azar*, --F.3d -- , 2018 WL 6566752, at *5-8 (9th Cir. Dec. 13, 2018) (states have demonstrated that women in plaintiff states will lose some or all employer-sponsored contraceptive coverage and that the loss of coverage will inflict economic harm to the states).

20.     In 2014, Oregon's rate of unintended pregnancy was approximately 49 percent.

21.     In 2017 in Oregon, approximately 67.7 percent of women in Oregon at risk of unintended pregnancy were using the most or moderately effective methods of birth control. According to U.S. Census bureau information, there were approximately 912,000 women in Oregon aged 15-49, women of child-bearing age.

22.     Individuals who lose contraception coverage because of the Conscience Exemption Rules at issue in this case can, if they meet the eligible criteria (immigration status and income less than 250 percent of the federal poverty line), seek coverage either through CCare or RHEA, which will result in increased enrollment in these programs and additional costs to Oregon.  Alternatively, individuals may forgo coverage and risk an unintended pregnancy, also leading to increased State health care costs.

23.     A conservative estimate of cost for an average delivery and the first year of infant health care under Oregon's Medicaid program is $16,000. Thus the cost to Oregon if any

significant number of the 912,000 women at risk for unintended pregnancy lose their coverage due to the Exemption Rules would be in the millions of dollars.

24.     For example, one employer, Hobby Lobby Stores, Inc., has five stores in Oregon and is expected to use the expanded exemptions under its self-insured plan.[2]

25.     Oregon is also aggrieved by Defendants' failure to comply with the notice and comment procedures required by the APA. Oregon has been denied the opportunity to participate in a full, fair, and impartial administrative process by being denied the opportunity to comment on the Exemption Rules.

## THE EXEMPTION RULES

26.     On November 15, 2018, despite the pending litigation regarding Interim Final Rules to the same effect as the Exemption Rules pending before the Ninth Circuit Court of Appeals, the Defendants published the Exemption Rules.

27.     The Exemption Rules vastly expand the scope of entities that may exempt themselves from the contraceptive-coverage requirement. Once effective, virtually any employer or individual or insurer, regardless of corporate structure or religious affiliation, can exempt themselves from the requirement.  Further, once effective, virtually any employer, individual, or insurer can exempt themselves not only because of a religious objection, but also because of a "moral" objection—a newly created category.  Potentially exempt entities now not only include church-affiliated organizations, but also for-profit corporations whether or not publically traded and even insurance companies with claimed religious or moral objections to the extent they provide coverage to a plan sponsor or individual that is also exempt.

28.     The Exemption Rules thus expand the Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751 (2014), to nearly any business, nonprofit or for-profit, with claimed religious or moral objection to providing women access to contraceptive coverage, further frustrating the scheme and purpose of the ACA. However, Defendants admit, they are not

---

[2] Hobby Lobby disclosed during litigation with the Defendants that it self-funds its health coverage. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1124 (10th Cir. 2013).

7

aware of any publicly traded entities that have objected to providing contraceptive coverage on the basis of a religious or moral belief.  Nevertheless, the Exemption Rules now make it easy for such entities to obtain an exemption for any reason, including economic, because there is no notice required and no oversight by the Defendants.

29.     Additionally, under the Exemption Rules, employers exempting themselves from having to provide contraceptive coverage do not need to certify their objection to the coverage requirement.  Rather, the employer can simply inform their employees they will no longer cover contraceptive benefits and counseling as part of their employer healthcare coverage. This is a significant change. By contrast, the prior federal regulations provided a notification process so that women would be informed of their employers' decision to opt out and that they would receive contraceptive coverage through the religious accommodation process. This process ensured that employers who had a religious objection to providing this coverage did not have to facilitate the provision of contraceptives, but that women would receive the required coverage. The government thereby ensured that there was a balance between the compelling interest that women have access to their federally entitled benefit under the ACA, while also accommodating those employers who sought not to provide this coverage for religious reasons. The Exemption Rules no longer require the accommodation, thereby eliminating the federally entitled benefit for women whose employers deem themselves exempt.

30.     The Exemption Rules also create an entirely new "moral exemption," which was not previously contemplated by the federal government or the public. The moral exemption is overly broad and includes few boundaries or clear definitions. Moral convictions are defined as convictions (1) that a person "deeply and sincerely holds;" (2) "that are purely ethical or moral in source and content;" (3) "but that nevertheless impose ... a duty;" (4) and that "certainly occupy ... a place parallel to that filled by ... God in traditionally religious persons," such that one could say the "beliefs function as a religion." Employers can now simply make use of the new vague moral exemption, without informing the federal government. Thus, a whole new universe of employers can avail themselves of this moral exemption without an accommodation to employees to ensure the seamless contraceptive coverage envisioned by the ACA, thereby vastly expanding the

8

number of women who will lose access to care through their employer-sponsored coverage. Oregon will be forced to fill this gap.

31.     The Exemption Rules suggest that women seek out contraceptive coverage through federal Title X family planning clinics; however, the Title X program simply cannot replicate or replace the seamless contraceptive-coverage requirement because it lacks the capacity. The Title X program is a safety-net program designed for low-income populations and is subject to discretionary funding by Congress. Indeed, from 2010-2014, even as the number of women in need of publicly funded contraceptive care grew by 5 percent representing an additional 1 million women in need, Congress cut funding for Title X by 10 percent.   And a 2017 White House memorandum suggested cutting funding by 50 percent. Currently, the Title X program only serves 20 percent of the nationwide need for publicly funded contraceptive care.

32.     The federal government also recently promulgated a proposed rule that, if finalized, would severely undermine the Title X family planning program, restricting access to affordable, life-saving reproductive healthcare. See 83 Fed. Reg. 25502 (June 1, 2018) (Proposed Rule). The Proposed Rule seeks to create barriers to access to women's healthcare. Among other things, it eliminates nondirective options counseling and gags all Title X providers by requiring that they steer all pregnant women towards prenatal care and social services, regardless of a patient's choice. This undermines the provider-patient relationship trust. The Proposed Rule also undermines the standard of care by allowing Title X providers to refuse to provide medically approved contraceptive methods, in favor of less effective methods such as abstinence only and eliminates the "evidence-based" requirement that had previously been in effect.[3]

33.     In short, under the Contraception Exemption Rules, entities exempting themselves do not need to certify to the federal government any objection to the contraceptive-coverage requirement, which all but ensures that women across United States will go without coverage for birth control access in contravention of the ACA. It further ensures that the federal government will not review the legitimacy of the religious or moral exemption, thereby inviting abuse. It

---

[3] *See* Comment Letter of California, et al., available at https://www.regulations.gov/document?D=HHS-OS-2018-0008-161828.

appears inevitable that employers will simply opt out without consequence, including in Oregon to the detriment of Oregon's sovereign, quasi-sovereign and proprietary interests.

**FIRST CAUSE OF ACTION**

**(Violation of APA; 5 U.S.C. § 553)**

34.     Oregon realleges and reincorporates paragraphs 1 through 33.

35.     The final Exemption Rules do not comply with the APA's notice-and-comment requirement. 5 U.S.C. § 553(b) because Defendants failed to provide the opportunity for Oregon and others to comment.

36.     Because Defendants failed to follow section 553's notice and comment procedures, the final rules are invalid.

**SECOND CAUSE OF ACTION**

**(Violation of APA; 5 U.S.C. § 706)**

37.     Oregon realleges and reincorporates paragraphs 1 through 33.

38.     The APA requires courts to "hold unlawful and set aside" agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706 (2).

39.     By promulgating the Exemption Rules, without proper factual or legal basis, Defendants have acted arbitrarily and capriciously, have abused their discretion, have acted otherwise not in accordance with law, have taken unconstitutional and unlawful action in violation of the APA, and have acted in excess of statutory jurisdiction and authority. Defendants' violation causes ongoing harm to the States and their residents.

**THIRD CAUSE OF ACTION**

**(Violation of the Establishment Clause)**

40.     Oregon realleges and reincorporates paragraphs 1 through 33.

41.     The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I. "The clearest command of the Establishment Clause is that one religious denomination cannot be

10

officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982); see also

*McCreary County, Kentucky v. ACLU*, 545 U.S. 844, 875 (2005) ("the government may not favor

one religion over another, or religion over irreligion").

42.    The Contraception Exemption Rules privilege religious beliefs over secular beliefs

as a basis for obtaining exemptions under the ACA.

43.    In contrast, the prior regulations only allowed an exemption for churches and an

accommodation for nonprofits and closely held for-profit companies with religious objections.

This was narrowly tailored to accommodate religious beliefs and still provide essential women's

healthcare services.

44.    By promulgating the Exemption Rules, Defendants have violated the

Establishment Clause because the Exemption Rules do not have a secular legislative purpose, the

primary effect advances religion, especially in that they place an undue burden on third parties –

the women who seek birth control, and the Exemption Rules foster excessive government

entanglement with religion.

45.    The Exemption Rules also ignore the compelling interest of seamless access to

cost-free birth control. This crosses the line from acceptable accommodation to religious

endorsement. Further, the Exemption Rules essentially coerce employees to participate in or

support the religion of their employer.

46.    Defendants' violation causes ongoing harm to the Oregon and its residents.

**FOURTH CAUSE OF ACTION**

**(Violation of the Equal Protection Clause)**

47.    Oregon realleges and reincorporates paragraphs 1 through 33.

48.    The Equal Protection Clause of the Fifth Amendment prohibits the federal

government from denying equal protection of the laws.

49.    The Exemption Rules specifically target and harm women. The ACA

contemplated disparities in healthcare costs between women and men, and some of these

disparities were rectified by the cost-free preventive services provided to women. The expansive

1    exemptions created by the Exemption Rules undermine this action and adversely target and are

2    discriminatory to women.

3           50.     The Exemption Rules, together with statements made by Defendants concerning

4    their intent and application, target individuals for discriminatory treatment based on their gender,

5    without lawful justification.

6           51.     By promulgating the Exemption Rules, Defendants have violated the equal

7    protection guarantee of the Fifth Amendment of the U.S. Constitution.

8           52.     Defendants' violation causes ongoing harm to Oregon and its residents.

9                              **PRAYER FOR RELIEF**

10   WHEREFORE, Oregon respectfully request that this Court:

11          1.     Issue a declaratory judgment that the Exemption Rules were not promulgated in

12   accordance with the Administrative Procedure Act;

13          2.     Issue a declaratory judgment that the Exemption Rules are arbitrary and

14   capricious, not in accordance with law, and Defendants acted in excess of statutory authority in

15   promulgating them;

16          3.     Issue a declaratory judgment that the Exemption Rules violate the Establishment

17   Clause;

18          4.     Issue a declaratory judgment that the Exemption Rules violate the Equal Protection

19   Clause;

20          5.     Issue a preliminary injunction prohibiting the implementation of the Exemption

21   Rules;

22          6.     Issue a mandatory injunction prohibiting the implementation of the Exemption

23   Rules;

24

25

26

27

28

1    7.    Award Oregon's costs, expenses, and reasonable attorneys' fees; and,

2    8.    Award such other relief as the Court deems just and proper.

3
     DATED January __7__, 2019.

4
                                         Respectfully submitted,

5
                                         ELLEN F. ROSENBLUM

6                                        Attorney General

7

8                                        ____s/ J. Nicole DeFever_____
                                         J. NICOLE DEFEVER SBN #191525
9                                        Senior Assistant Attorney General
                                         Oregon Department of Justice
10                                       Trial Attorney
                                         Tel (971) 673-1880
11                                       Fax (971) 673-5000
                                         Nicole.DeFever@doj.state.or.us
12                                       Of Attorneys for State of Oregon

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

ELLEN ROSENBLUM
Attorney General
NICOLE DEFEVER, State Bar No.191525
Senior Assistant Attorney General
Oregon Department of Justice
 100 Market Street
 Portland, OR 942401
 Telephone: (971)673-1880
 Fax:  (971) 673-5000
 E-mail:  Nicole.DeFever@doj.state.or.us
*Attorneys for Proposed Plaintiff-Intervenor State of Oregon*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE STATE OF CALIFORNIA; THE STATE OF CONNECTICUT; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF HAWAII; THE STATE OF ILLINOIS; THE STATE OF MARYLAND; THE STATE OF MINNESOTA, BY AND THROUGH ITS DEPARTMENT OF HUMAN SERVICES; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF RHODE ISLAND; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; THE STATE OF WASHINGTON,**<br><br>                              Plaintiffs,<br><br>     **v.**<br><br>**ALEX M. AZAR, II, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; R. ALEXANDER ACOSTA, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF LABOR; U.S. DEPARTMENT OF LABOR; STEVEN MNUCHIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF THE TREASURY; U.S. DEPARTMENT OF THE TREASURY; DOES 1-100,** | 4:17-cv-05783-HSG<br><br>**STATE OF OREGON'S [PROPOSED] JOINDER IN STATES' MOTION FOR PRELIMINARY INJUNCTION** |

1

State of Oregon's [Proposed] Joinder in States' Motion for Preliminary Injunction (4:17-CV-05783-HSG)

<div style="border: solid;">

                                              Defendants,

and,

**THE LITTLE SISTERS OF THE POOR, JEANNE JUGAN RESIDENCE; MARCH FOR LIFE EDUCATION AND DEFENSE FUND,**

                              Defendant-Intervenors.

</div>

<div style="border: solid;">

**STATE OF OREGON,**

                              Intervenor-Plaintiff,

        v.

**ALEX M. AZAR, II, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; R. ALEXANDER ACOSTA, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF LABOR; U.S. DEPARTMENT OF LABOR; STEVEN MNUCHIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF THE TREASURY; U.S. DEPARTMENT OF THE TREASURY; DOES 1-100,**

                              Intervenor-Defendants.

</div>

For the reasons set forth in the State of Oregon's Motion to Intervene and supporting papers, the Intervenor-Plaintiff State of Oregon hereby joins the plaintiff States' Motion for Preliminary Injunction.

      DATED January __7__, 2019.

                                    Respectfully submitted,

                                    ELLEN F. ROSENBLUM
                                    Attorney General

                                   *s/ J. Nicole DeFever*
                                    J. NICOLE DEFEVER SBN #191525
                                    Senior Assistant Attorney General
                                    Oregon Department of Justice
                                    Tel (971) 673-1880
                                    Fax (971) 673-5000
                                    Nicole.DeFever@doj.state.or.us
                                    Of Attorneys for State of Oregon

2