ELLEN ROSENBLUM
Attorney General
J. NICOLE DEFEVER, State Bar No.191525
Senior Assistant Attorney General
Oregon Department of Justice
  100 Market Street
  Portland, OR 942401
  Telephone: (971)673-1880
  Fax:  (971) 673-5000
  E-mail:  Nicole.DeFever@doj.state.or.us
*Attorneys for Plaintiff-Intervenor State of Oregon*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE STATE OF CALIFORNIA; THE STATE OF CONNECTICUT; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF HAWAII; THE STATE OF ILLINOIS; THE STATE OF MARYLAND; THE STATE OF MINNESOTA, BY AND THROUGH ITS DEPARTMENT OF HUMAN SERVICES; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF OREGON; THE STATE OF RHODE ISLAND; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; THE STATE OF WASHINGTON,**<br><br>                                Plaintiffs,<br><br>          v.<br><br>**ALEX M. AZAR, II, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; R. ALEXANDER ACOSTA, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF LABOR; U.S. DEPARTMENT OF LABOR; STEVEN MNUCHIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF THE TREASURY; U.S. DEPARTMENT OF THE TREASURY; DOES 1-100,** | 4:17-cv-05783-HSG<br><br>**STATE OF OREGON'S COMPLAINT-IN-INTERVENTION** |

|  |  |
|---|---|
| | Defendants, |
| and, | |
| **THE LITTLE SISTERS OF THE POOR, JEANNE JUGAN RESIDENCE; MARCH FOR LIFE EDUCATION AND DEFENSE FUND,** | |
| | Defendant-Intervenors. |
| **STATE OF OREGON**, | |
| | Intervenor-Plaintiff, |
| v. | |
| **ALEX M. AZAR, II, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; R. ALEXANDER ACOSTA, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF LABOR; U.S. DEPARTMENT OF LABOR; STEVEN MNUCHIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF THE TREASURY; U.S. DEPARTMENT OF THE TREASURY; DOES 1-100,** | |
| | Intervenor-Defendants. |

## INTRODUCTION

1.      The State of Oregon ("Oregon") joins this action to protect Oregonians' access to contraception, which is a key element in safeguarding women's overall health and well-being, plays a key role in women's socioeconomic advancement, and benefits society as a whole. Contraceptives are among the most widely-used medical services in the United States and are much less costly than maternal deliveries for women, insurers, employers, and the State.

2.      Starting in 2012, as part of the Patient Protection and Affordable Care Act (ACA), certain group health insurance plans were required to cover all FDA-approved contraceptive methods and contraceptive counseling (collectively known as "contraceptive services") without cost-sharing (e.g. individual out of pocket health expenses on copays, deductibles, or

coinsurance) for beneficiaries. 45 C.F.R. § 147.130(a)(1)(iv); 29 C.F.R. § 2590.715-2713(a)(1)(iv); 26 C.F.R. § 54.9815-2713(a)(1)(iv). However, on November 7, 2018, the Defendants issued their final rules which were published on November 15, 2018 (the Exemption Rules), 2018-24512 and 2018-24514. The Exemption Rules will become effective on January 14, 2019.  The Exemption Rules expand the scope of the religious exemption to allow employers and insurance companies with religious or "moral" objections to opt out of the contraceptive-coverage requirement, with no way for the federal government to evaluate the legitimacy of an employer or insurance company's use of the exemption and no way for states to police the abuse of the exemption. Thus, under the Exemption Rules, for-profit corporations would have the virtually unfettered ability to deprive their employees and insureds of coverage for contraception, whether to discriminate against women, discourage women's employment or simply to boost corporate profits.

3. The Rules would also leave Oregon to shoulder the additional fiscal and administrative costs as women seek access for this coverage through state-funded programs. The rules will further lead to public health consequences due to patients being unable to gain seamless access to critical and time-sensitive contraceptive care, including unplanned pregnancies.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1361 (action to compel officer or agency to perform duty owed to Plaintiff), and 5 U.S.C. §§ 701-706 (Administrative Procedure Act). An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201¬2202 and 5 U.S.C. §§ 705-706.

5. The publication of the Exemption Rules on November 15, 2018 constitutes final agency action that is judicially reviewable within the meaning of the Administrative Procedure Act. 5 U.S.C. §§ 704, 706.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because, without limitation, a state plaintiff (California) with multiple federal judicial districts resides in any of those districts and this action seeks relief against federal agencies and officials acting in their official capacities.

## INTRADISTRICT ASSIGNMENT

7. Pursuant to Civil Local Rules 3-5(b) and 3-2(c), there is no basis for assignment of this action to any particular location or division of this Court.

## PARTIES

8. Plaintiff-intervenor is the State of Oregon, acting by and through the Governor of Oregon and the Oregon Attorney General.

9. The Governor of Oregon is the chief executive officer of the State of Oregon. The Governor is responsible for overseeing the operations of the State of Oregon and ensuring that its laws are faithfully executed.

10. The Oregon Attorney General is the chief legal adviser to the State of Oregon. The Attorney General's powers and duties include acting in federal court on matters of public concern.

11. Defendant Alex M. Azar, II, is Secretary of HHS and is sued in his official capacity. Secretary Azar has responsibility for implementing and fulfilling HHS's duties under the Constitution, the ACA, and the APA.

12. Defendant HHS is an agency of the United States government and bears responsibility, in whole or in part, for the acts complained of in this Complaint. The Centers for Medicare and Medicaid Services is an agency within the HHS.

13. Defendant R. Alexander Acosta is Secretary of the U.S. Department of Labor and is sued in his official capacity. Secretary Acosta has responsibility for implementing and fulfilling the U.S. Department of Labor's duties under the Constitution, the ACA, and the APA.

14. Defendant U.S. Department of Labor is an agency of the United States government and bears responsibility, in whole or in part, for the acts complained of in this Complaint. The Employee Benefits Security Administration is an entity within the U.S. Department of Labor.

15. Defendant Steven Mnuchin is Secretary of the U.S. Department of the Treasury and is sued in his official capacity. Secretary Mnuchin has responsibility for implementing and fulfilling the U.S. Department of the Treasury's duties under the Constitution, the ACA, and the APA.

16. Defendant U.S. Department of the Treasury is an agency of the United States government and bears responsibility, in whole or in part, for the acts complained of in this Complaint. The Internal Revenue Service (IRS) is an entity within the U.S. Department of the Treasury.

**OREGON'S INTERESTS**

17. Oregon has an interest in ensuring that women's healthcare is available, accessible, and affordable, especially women's reproductive healthcare. Oregon will suffer concrete and substantial harm because the Exemption Rules frustrate the State's public health interests by curtailing women's access to contraceptive care through employer-sponsored health insurance.[1] Additionally, the federal regulation inhibits state agencies from carrying out their statutorily required functions, including Oregon's antidiscrimination laws.

18. Oregon has a strong interest in making sure that its residents have safe and available contraception. For example, Oregon's family planning Medicaid waiver program ContraceptiveCare ("CCare") covers services related to preventing pregnancy (i.e. contraceptive management) for individuals at or below 250 percent of the Federal Poverty Line who are U.S. citizens or have an eligible immigration status. Oregon's House Bill 3391 (2017), also known as the Reproductive Health Equity Act ("RHEA"), provides state funding for certain women who because of immigration status are not eligible for other public assistance. RHEA covers a broad range of reproductive health services, including abortion and 60-days of postpartum care for individuals who can become pregnant and who are ineligible for Medicaid due to immigration status. Oregon is also a grantee under the federal Title X grant program. Additional Oregon laws

---

[1] Though this complaint focuses on how the Exemption Rules target women, the Exemption Rules also may affect people who do not identify as women, including some gender non-conforming people and some transgender men.

protecting reproductive health that go beyond the federal guarantee include  (a) providing pharmacists the authority to prescribe and dispense hormonal contraceptives (ORS 689.683), and (b) requiring insurance plans to allow dispensing of a 12 month supply of contraceptives (ORS 743A.066)  rather than a typical one- or three-month supply.

19. Oregon will be injured because the limitations on women's ability under the Exemption Rules to obtain contraception will cause increased costs to Oregon under CCare and RHEA, as well as increasing costs associated with resulting unintended pregnancies and the related attendant harms.  Indeed, Defendants have already conceded that states have standing because the Rules instruct women to seek out healthcare from state-funded clinics. 82 Fed. Reg. at 47792, 47807 (Oct. 13, 2017) (instructing that women obtain contraceptives through "various governmental programs," including "State sources"); 82 Fed. Reg. at 47803 (noting that various "State programs" provide contraceptive coverage). In fact, the Ninth Circuit also concluded that the States have standing. *California v. Azar*, --F.3d -- , 2018 WL 6566752, at *5-8 (9th Cir. Dec. 13, 2018) (states have demonstrated that women in plaintiff states will lose some or all employer-sponsored contraceptive coverage and that the loss of coverage will inflict economic harm to the states).

20. In 2014, Oregon's rate of unintended pregnancy was approximately 49 percent.

21. In 2017 in Oregon, approximately 67.7 percent of women in Oregon at risk of unintended pregnancy were using the most or moderately effective methods of birth control. According to U.S. Census bureau information, there were approximately 912,000 women in Oregon aged 15-49, women of child-bearing age.

22. Individuals who lose contraception coverage because of the Conscience Exemption Rules at issue in this case can, if they meet the eligible criteria (immigration status and income less than 250 percent of the federal poverty line), seek coverage either through CCare or RHEA, which will result in increased enrollment in these programs and additional costs to Oregon.  Alternatively, individuals may forgo coverage and risk an unintended pregnancy, also leading to increased State health care costs.

23. A conservative estimate of cost for an average delivery and the first year of infant health care under Oregon's Medicaid program is $16,000. Thus the cost to Oregon if any significant number of the 912,000 women at risk for unintended pregnancy lose their coverage due to the Exemption Rules would be in the millions of dollars.

24. For example, one employer, Hobby Lobby Stores, Inc., has five stores in Oregon and is expected to use the expanded exemptions under its self-insured plan.[2]

25. Oregon is also aggrieved by Defendants' failure to comply with the notice and comment procedures required by the APA. Oregon has been denied the opportunity to participate in a full, fair, and impartial administrative process by being denied the opportunity to comment on the Exemption Rules.

## THE EXEMPTION RULES

26. On November 15, 2018, despite the pending litigation regarding Interim Final Rules to the same effect as the Exemption Rules pending before the Ninth Circuit Court of Appeals, the Defendants published the Exemption Rules.

27. The Exemption Rules vastly expand the scope of entities that may exempt themselves from the contraceptive-coverage requirement. Once effective, virtually any employer or individual or insurer, regardless of corporate structure or religious affiliation, can exempt themselves from the requirement.  Further, once effective, virtually any employer, individual, or insurer can exempt themselves not only because of a religious objection, but also because of a "moral" objection—a newly created category.  Potentially exempt entities now not only include church-affiliated organizations, but also for-profit corporations whether or not publically traded and even insurance companies with claimed religious or moral objections to the extent they provide coverage to a plan sponsor or individual that is also exempt.

28. The Exemption Rules thus expand the Supreme Court's decision in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct. 2751 (2014), to nearly any business, nonprofit or for-profit,

---

[2] Hobby Lobby disclosed during litigation with the Defendants that it self-funds its health coverage. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1124 (10th Cir. 2013).

with claimed religious or moral objection to providing women access to contraceptive coverage, further frustrating the scheme and purpose of the ACA. However, Defendants admit, they are not aware of any publicly traded entities that have objected to providing contraceptive coverage on the basis of a religious or moral belief. Nevertheless, the Exemption Rules now make it easy for such entities to obtain an exemption for any reason, including economic, because there is no notice required and no oversight by the Defendants.

29. Additionally, under the Exemption Rules, employers exempting themselves from having to provide contraceptive coverage do not need to certify their objection to the coverage requirement. Rather, the employer can simply inform their employees they will no longer cover contraceptive benefits and counseling as part of their employer healthcare coverage. This is a significant change. By contrast, the prior federal regulations provided a notification process so that women would be informed of their employers' decision to opt out and that they would receive contraceptive coverage through the religious accommodation process. This process ensured that employers who had a religious objection to providing this coverage did not have to facilitate the provision of contraceptives, but that women would receive the required coverage. The government thereby ensured that there was a balance between the compelling interest that women have access to their federally entitled benefit under the ACA, while also accommodating those employers who sought not to provide this coverage for religious reasons. The Exemption Rules no longer require the accommodation, thereby eliminating the federally entitled benefit for women whose employers deem themselves exempt.

30. The Exemption Rules also create an entirely new "moral exemption," which was not previously contemplated by the federal government or the public. The moral exemption is overly broad and includes few boundaries or clear definitions. Moral convictions are defined as convictions (1) that a person "deeply and sincerely holds;" (2) "that are purely ethical or moral in source and content;" (3) "but that nevertheless impose ... a duty;" (4) and that "certainly occupy ... a place parallel to that filled by ... God in traditionally religious persons," such that one could say the "beliefs function as a religion." Employers can now simply make use of the new vague moral exemption, without informing the federal government. Thus, a whole new universe of employers

8

can avail themselves of this moral exemption without an accommodation to employees to ensure the seamless contraceptive coverage envisioned by the ACA, thereby vastly expanding the number of women who will lose access to care through their employer-sponsored coverage. Oregon will be forced to fill this gap.

31. The Exemption Rules suggest that women seek out contraceptive coverage through federal Title X family planning clinics; however, the Title X program simply cannot replicate or replace the seamless contraceptive-coverage requirement because it lacks the capacity. The Title X program is a safety-net program designed for low-income populations and is subject to discretionary funding by Congress. Indeed, from 2010-2014, even as the number of women in need of publicly funded contraceptive care grew by 5 percent representing an additional 1 million women in need, Congress cut funding for Title X by 10 percent.   And a 2017 White House memorandum suggested cutting funding by 50 percent. Currently, the Title X program only serves 20 percent of the nationwide need for publicly funded contraceptive care.

32. The federal government also recently promulgated a proposed rule that, if finalized, would severely undermine the Title X family planning program, restricting access to affordable, life-saving reproductive healthcare. See 83 Fed. Reg. 25502 (June 1, 2018) (Proposed Rule). The Proposed Rule seeks to create barriers to access to women's healthcare. Among other things, it eliminates nondirective options counseling and gags all Title X providers by requiring that they steer all pregnant women towards prenatal care and social services, regardless of a patient's choice. This undermines the provider-patient relationship trust. The Proposed Rule also undermines the standard of care by allowing Title X providers to refuse to provide medically approved contraceptive methods, in favor of less effective methods such as abstinence only and eliminates the "evidence-based" requirement that had previously been in effect.[3]

33. In short, under the Contraception Exemption Rules, entities exempting themselves do not need to certify to the federal government any objection to the contraceptive-coverage requirement, which all but ensures that women across United States will go without coverage for

---

[3] *See* Comment Letter of California, et al., available at https://www.regulations.gov/document?D=HHS-OS-2018-0008-161828.

birth control access in contravention of the ACA. It further ensures that the federal government will not review the legitimacy of the religious or moral exemption, thereby inviting abuse. It appears inevitable that employers will simply opt out without consequence, including in Oregon to the detriment of Oregon's sovereign, quasi-sovereign and proprietary interests.

**FIRST CAUSE OF ACTION**

**(Violation of APA; 5 U.S.C. § 553)**

34. Oregon realleges and reincorporates paragraphs 1 through 33.

35. The final Exemption Rules do not comply with the APA's notice-and-comment requirement. 5 U.S.C. § 553(b) because Defendants failed to provide the opportunity for Oregon and others to comment.

36. Because Defendants failed to follow section 553's notice and comment procedures, the final rules are invalid.

**SECOND CAUSE OF ACTION**

**(Violation of APA; 5 U.S.C. § 706)**

37. Oregon realleges and reincorporates paragraphs 1 through 33.

38. The APA requires courts to "hold unlawful and set aside" agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706 (2).

39. By promulgating the Exemption Rules, without proper factual or legal basis, Defendants have acted arbitrarily and capriciously, have abused their discretion, have acted otherwise not in accordance with law, have taken unconstitutional and unlawful action in violation of the APA, and have acted in excess of statutory jurisdiction and authority. Defendants' violation causes ongoing harm to the States and their residents.

**THIRD CAUSE OF ACTION**

**(Violation of the Establishment Clause)**

40. Oregon realleges and reincorporates paragraphs 1 through 33.

41. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982); see also *McCreary County, Kentucky v. ACLU*, 545 U.S. 844, 875 (2005) ("the government may not favor one religion over another, or religion over irreligion").

42. The Contraception Exemption Rules privilege religious beliefs over secular beliefs as a basis for obtaining exemptions under the ACA.

43. In contrast, the prior regulations only allowed an exemption for churches and an accommodation for nonprofits and closely held for-profit companies with religious objections. This was narrowly tailored to accommodate religious beliefs and still provide essential women's healthcare services.

44. By promulgating the Exemption Rules, Defendants have violated the Establishment Clause because the Exemption Rules do not have a secular legislative purpose, the primary effect advances religion, especially in that they place an undue burden on third parties – the women who seek birth control, and the Exemption Rules foster excessive government entanglement with religion.

45. The Exemption Rules also ignore the compelling interest of seamless access to cost-free birth control. This crosses the line from acceptable accommodation to religious endorsement. Further, the Exemption Rules essentially coerce employees to participate in or support the religion of their employer.

46. Defendants' violation causes ongoing harm to the Oregon and its residents.

### FOURTH CAUSE OF ACTION

**(Violation of the Equal Protection Clause)**

47. Oregon realleges and reincorporates paragraphs 1 through 33.

48. The Equal Protection Clause of the Fifth Amendment prohibits the federal government from denying equal protection of the laws.

49. The Exemption Rules specifically target and harm women. The ACA contemplated disparities in healthcare costs between women and men, and some of these disparities were rectified by the cost-free preventive services provided to women. The expansive exemptions created by the Exemption Rules undermine this action and adversely target and are discriminatory to women.

50. The Exemption Rules, together with statements made by Defendants concerning their intent and application, target individuals for discriminatory treatment based on their gender, without lawful justification.

51. By promulgating the Exemption Rules, Defendants have violated the equal protection guarantee of the Fifth Amendment of the U.S. Constitution.

52. Defendants' violation causes ongoing harm to Oregon and its residents.

**PRAYER FOR RELIEF**

WHEREFORE, Oregon respectfully request that this Court:

1. Issue a declaratory judgment that the Exemption Rules were not promulgated in accordance with the Administrative Procedure Act;

2. Issue a declaratory judgment that the Exemption Rules are arbitrary and capricious, not in accordance with law, and Defendants acted in excess of statutory authority in promulgating them;

3. Issue a declaratory judgment that the Exemption Rules violate the Establishment Clause;

4. Issue a declaratory judgment that the Exemption Rules violate the Equal Protection Clause;

5. Issue a preliminary injunction prohibiting the implementation of the Exemption Rules;

6. Issue a mandatory injunction prohibiting the implementation of the Exemption Rules;

<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>
<mark>
</mark>

7.     Award Oregon's costs, expenses, and reasonable attorneys' fees; and,

8.     Award such other relief as the Court deems just and proper.

DATED February __21__ , 2019.

                                    Respectfully submitted,

                                    ELLEN F. ROSENBLUM
                                  Attorney General

                                  *s/ J. Nicole DeFever*
                                  J. NICOLE DEFEVER SBN #191525
                                  Senior Assistant Attorney General
                                  Oregon Department of Justice
                                  Trial Attorney
                                  Tel (971) 673-1880
                                  Fax (971) 673-5000
                                  Nicole.DeFever@doj.state.or.us
                                  Of Attorneys for State of Oregon