PHILIP J. WEISER
Attorney General of Colorado
ERIC R. OLSON (admitted *pro hac vice*)
Solicitor General
JENNIFER WEAVER
First Assistant Attorney General
ERIC KUHN
Senior Assistant Attorney General
 1300 Broadway, 10th Floor
 Denver, CO 80203
 Telephone: (720) 508-6548
 Fax: (720) 508-6030
 E-mail: eric.olson@coag.gov
*Attorneys for Proposed Intervenor State of Colorado*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH AND HUMAN SERVICES, et al.<br><br>Defendants. | Case No. 17-cv-05783-HSG<br><br>**MOTION TO INTERVENE BY THE STATES OF COLORADO, MICHIGAN, AND NEVADA**<br><br>Date: June 6, 2019<br>Time: 2:00 pm |

1

**INTRODUCTION**

Please take notice on June 6, 2019 at 2 pm, the hearing for the Motion to Intervene by the States of Colorado, Michigan, and Nevada ("Intervening States") will occur at Courtroom 2 of the United States Courthouse, 1301 Clay Street, Oakland, California.

Intervening States move for permissive intervention as plaintiffs under Federal Rule of Civil Procedure 24(b). Like the current Plaintiffs, the Intervening States face significant harm from the Final Rules.[1] Intervening States will incur additional costs when women who would have been covered by their employers' insurance instead use state-funded programs and when women who no longer have access to contraceptive care have unintended pregnancies.

Plaintiffs do not oppose this motion. Defendants and Defendant Intervenors oppose this motion.

Permissive intervention is appropriate under both Rule 24(b)(1) and (b)(2). Under Rule 24(b)(1), the Intervening States have claims that share common questions of law and fact with the claims asserted by Plaintiffs. Rule 24(b)(2) recognizes the need of states and agencies to intervene to address disputes concerning statutes and regulations they administer. Here, numerous agencies in the Intervening States are affected by the Final Rules and the attorneys general sue on their behalf.

This motion to intervene is timely because the Intervening States move to intervene before the Final Rules become effective against them—the Eastern District of Pennsylvania enjoined the Final Rules nationwide on January 14, 2019. That injunction is currently on appeal and will be argued in late May. In this case, no significant substantive developments have occurred since the entry of the injunction on January 13, 2019.

Because the Intervening States will work with Plaintiffs and will seek no extra time or separate briefing (other than on extending the current preliminary injunction to apply to them as well), no prejudice or delay will result from this intervention. Attached as Exhibit 1 is the

---

[1] Defined terms are the same as used in the Court's January 13 Order Granting Plaintiffs' Motion for a Preliminary Injunction, Dkt. No. 174. ("Final Rules Injunction Order")

1   pleading—the Complaint by the States of Colorado, Michigan, and Nevada—that Rule 24(c)

2   requires.

3                               **STATEMENT OF FACTS**

4        The Court set forth the facts related to the history of the case and the issues in dispute in

5   its Final Rules Injunction Order and Intervening States do not repeat them here. Dkt. No. 234, pp.

6   2–15.

7        Intervening States face real and specific harm from the Final Rules. Intervening States

8   summarize the harms below and do not provide declarations at this stage. *Southwest Ctr. for*

9   *Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001) (holding "Courts are to take all

10  well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint . . . as

11  true absent sham, frivolity or other objections"). Intervening States will provide declarations to

12  support the harms created by the Final Rules if they are permitted to intervene when they move to

13  extend the preliminary injunction to cover Intervening States as well.

14       **Colorado.** Colorado expects that the Final Rules, if implemented, will cause substantial

15  harm because thousands of men and women will be left without access to healthcare and

16  Colorado will see an increase in unintended pregnancies, an increase in STD infections and an

17  increase in terminations and many other detrimental effects to the health of our state. Colorado's

18  recent experience shows that when full family planning services are provided, the number of

19  unintended pregnancies among young women dropped by over half. The abortion rate among

20  women ages 15 to 19 fell by 60% and among women aged 20 to 24 fell by 41%.

21       Colorado estimates that in 2017, 533,100 women received employer insurance coverage

22  who would be eligible for publicly funded family planning. Based on Colorado's experience, its

23  public health experts believe that a large portion of these insured women will turn to Title X for

24  these family planning services, which would increase costs in an already underfunded program. In

25  addition, individuals may forgo coverage and risk an unintended pregnancy, also leading to

26  increased State health care costs and an increase in abortions.

27       **Michigan.** As of February 2019, Michigan serves 686,000 beneficiaries under the Healthy

28  Michigan Plan, Michigan's Medicaid Section 1115 Demonstration waiver program. 48% of these

3

beneficiaries are women, and 31% are women of reproductive age. Michigan expects that additional women will come into this program if they lose access to full family planning services due to the Final Rules. These additional beneficiaries will cost Michigan money. Finally, additional unintended pregnancies will occur if employers do not provide full family planning services, including contraception. Some of these additional unintended pregnancies will occur in Medicaid eligible families, either because of job transition or loss of benefits. The average Michigan Medicaid covered birth costs $16,608, including child birth, related prenatal and postpartum care, and costs for a Medicaid-covered child for the first year of life.

**Nevada.** Nevada will likely be injured because the Contraception Exemption Rules will likely result in increased costs and burdens on Nevada, along with reproductive health access challenges for Nevada residents.

In 2012, as part of the Patient Protection and Affordable Care Act, certain group health insurance plans were required to cover all FDA-approved contraceptive methods and contraceptive counseling at no charge to the patient.  In the following years, from 2012 to 2017, Nevada's abortion rate among women aged 15 to 19 decreased by 35%, and among women aged 20 to 24 decreased by 10%.

Nevada estimates that more than 379,000 women of child bearing age (aged 15–44) receive private insurance coverage and could be affected by the Exemption Rules.  On information and belief, these individuals could lose current access to contraception, leading them to turn to Title X for family planning services. Some of these individuals could forego coverage, potentially leading to an increase in abortions or risking an unplanned pregnancy.

According to the Centers for Disease Control and Prevention, or CDC, unintended pregnancy is associated with an increased risk of problems for the mother and baby, which increase overall healthcare costs.  Also according to the CDC, women with unintended pregnancies may delay prenatal care.  Early and adequate prenatal care is imperative to positive birth outcomes.

# ARGUMENT

## I.   Intervention is Timely

The timeliness of a motion to intervene is determined by "the totality of the circumstances facing would-be intervenors, with a focus on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (quotation omitted).

Here Intervening States seek to intervene at the early stage in this case. Only a preliminary injunction has been decided and the summary judgment briefs are not due until April 30, 2019. Dkt. No. 275.

Both avenues for permissive intervention require the court to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). No such delay or prejudice will arise from this intervention. Intervening States, like recent Intervenor Oregon, will join in the briefing of Plaintiffs and will not file separate briefs. As this Court recognized in permitting Oregon to intervene, intervention "will promote judicial economy and spare the parties from needing to litigate a similar case in another district." Order Granting M. to Intervene 7, Dkt. No. 274 (citations omitted).

Finally, the reason for and length of the delay supports intervention here. For the Final Rules, Plaintiffs sought a preliminary injunction with nationwide scope on December 19, 2018, addressing the factors discussed in *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018). M. for Prelim. Inj. at 25, Dkt. No. 174.  On January 13, 2019, this Court limited the injunction to the parties in the case. Final Rules Injunction Order at 42–44, Dkt. No. 234. The date of this order is "[t]he crucial date for assessing the timeliness of a motion to intervene" because this Court's injunction limited to the parties "is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). In addition, new attorney generals took office in the Intervening States in January and have been reassessing their states' litigation. These states, after a quick investigation into the appropriate facts, decided to join promptly.

Because of the nationwide injunction issued by the Eastern District of Pennsylvania on January 14, 2019, the Final Rules have not yet been enforced against the Intervening States. *Pennsylvania v. Trump*, 351 F. Supp. 3d 791, 834–35 (E.D. Penn. 2019). Under the argument schedule established by the Third Circuit, that appeal will not be addressed until late May at the earliest. Letter in *Pennsylvania v. Trump*, Case No. 19-1129 (3d Cir. Mar. 6, 2019) (explaining that the case as "been tentatively listed on the merits on Tuesday, May 21, 2019"). Like Oregon, the Intervening States' motion is filed before major substantive issues have been addressed and will create no prejudice to other parties. The Intervening States filed the motion shortly after the Court did not grant the nationwide injunction sought by Plaintiffs. The motion is therefore timely.

## II.   The Intervening States Satisfy Rule 24(b)(1)'s Requirements

Rule 24(b)(1) permits intervention when "anyone … has a claim … that shares with the main action a common question of law." Here, like Plaintiffs, the Intervening States claim that the Final Rules violate the Administrative Procedure Act and the Establishment Clause and Equal Protection Clause of the U.S. Constitution. *Compare* 2d Am. Compl. ¶¶ 235–260, Dkt. No. 170, *with* Intervening States Compl. ¶¶ 47–65, attached as Ex. 1.

Intervening States bring the same legal claims against the same defendants and thus satisfy Rule 24(b)(1)'s requirements.

## III.   The Intervening States Satisfy Rule 24(b)(2)'s Requirements

Rule 24(b)(2)  permits a court to allow a "state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute … administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute." Here, the Intervening States have agencies that administer the Final Rules.

The attorneys general, all of whom seek to intervene on behalf of their states, including their state agencies, have specific state statutory authority to appear and represent the state and its agencies in these suits. In Colorado, COLO. REV. STAT. § 24-31-101(1)(a) states that "the attorney general … shall prosecute and defend for the state all actions and proceedings, civil and criminal, in which the state is a party or is interested."

In Michigan, the attorney general is the chief law enforcement officer of the State, *Fieger v. Cox,* 734 N.W.2d 602, 604 (Mich. Ct. App. 2007), and the attorney general has the authority to intervene in any action in which the attorney general believes the interests of the People of the State of Michigan are implicated, MICH. COMP. LAWS § 14.28. In Nevada, "when, in the opinion of the Attorney General, to protect and secure the interest of the State it is necessary that a suit be commenced or defended in any federal or state court, the Attorney General shall commence the action or make the defense." NEV. REV. STAT. § 228.170.  Likewise, under federal law, the state attorney general represents the legal position for the State.  *Cf.* 28 U.S.C. § 2403(b); Fed. R. Civ. P. 5.1(a)(2).

Given this specific rules permitting government entities to intervene where they administer the statute, courts routinely permit such intervention. *See Appleton v. C.I.R.*, 430 Fed. Appx. 135, 136 (3d. Cir 2011) (reversing to permit intervention under Rule 24(b)(2) because "Rule 24(b)(2) specifically provides for governments to protect their interests in matters in litigation"); *Coffey v. C.I.R.*, 663 F.3d 947, 951 (8th Cir. 2011) (relying on *Appleton* to reverse denial of permissive intervention under Rule 24(b)(2)); *Miami Health Studios, Inc. v. City of Miami Beach*, 491 F.2d 98, 100 (5th Cir. 1974) (holding that "[t]he Attorney General of Florida should have been permitted to intervene" under Rule 24(b)(2)). Indeed, the leading treatise, Federal Practice and Procedure, recognizes that "the whole thrust of [adding Rule 24(b)(2)] is in the direction of allowing intervention liberally to governmental agencies and officers seeking to speak for the public interest" 7C Charles Alan Wright et al., FED. PRAC. & PROC. CIV. § 1912 (3d ed. 1998).

Because the Intervening States administer the challenged regulations, they satisfy Rule 24(b)(2)'s requirements for intervention.

## CONCLUSION

Because the Intervening States satisfy both standards for permissive intervention and intervention creates no prejudice, the Intervening States respectfully request that this Court permit them to intervene.

1    Dated: March 14, 2019                        Respectfully submitted,

2    PHILIP J. WEISER                             AARON D. FORD
     Attorney General of Colorado                 Attorney General of Nevada
3

4    */s/ Eric R. Olson*_____                */s/ Heidi Parry Stern*_____
     ERIC R. OLSON (admitted *pro hac vice*)      HEIDI PARRY STERN
5    Solicitor General                            Solicitor General
     JENNIFER L. WEAVER                           555 E. Washington Ave., Suite 3900
6    First Assistant Attorney General             Las Vegas, Nevada 89101
     W. ERIC KUHN                                 (702) 486-3420
7    Senior Assistant Attorney General            hstern@ag.nv.gov
8    1300 Broadway, 10th Floor
     Denver, Colorado 80203                       Attorneys for the State of Nevada
9    (720) 508-6548
     Eric.Olson@coag.gov
10

11   Attorneys for the State of Colorado

12   DANA NESSEL
     Attorney General of Michigan
13

14   */s/ Fadwa A. Hammoud*_____
     FADWA A. HAMMOUD
15   Solicitor General
     P.O. Box 30212
16   Lansing, MI 48909
     (517) 373-1124
17   HammoudF1@michigan.gov
18
     Attorneys for the State of Michigan
19

20

21

22

23

24

25

26

27

28