Brian R. Chavez-Ochoa
Chavez-Ochoa Law Offices, Inc.
4 Jean Street, Suite 4
Valley Springs, CA 95252
(209) 772-3013
(209) 772-3090 Fax
chavezochoa@yahoo.com

David A. Cortman, AZ Bar No. 029490**
Kevin H. Theriot, AZ Bar No. 030446**
Kenneth J. Connelly, AZ Bar No. 025420**
Alliance Defending Freedom
15100 North 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
dcortman@ADFlegal.org
ktheriot@ADFlegal.org
kconnelly@ADFlegal.org

*Counsel for Intervenor-Defendant*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE STATE OF CALIFORNIA, et al., <br> *Plaintiffs,* <br> v. <br> ALEX M. AZAR II, in his official capacity as Secretary of the U.S. Department of Health and Human Services, et al., <br> *Defendants,* <br> and, <br> THE LITTLE SISTERS OF THE POOR JEANNE JUGAN RESIDENCE, <br> *Intervenor-Defendant,* <br> and, <br> MARCH FOR LIFE EDUCATION AND DEFENSE FUND, <br> *Intervenor-Defendant.* | Case No. 4:17-cv-05783-HSG <br><br> **SUPPLEMENTAL BRIEF OF INTERVENOR-DEFENDANT MARCH FOR LIFE EDUCATION AND DEFENSE FUND** |

# TABLE OF CONTENTS

Introduction ........................................................................................................................... 1

I.     The Final Rules are neither arbitrary nor capricious. ............................... 3

     A.     The Final Rules are a proper fit for the problem recognized by the Departments. ............................................................... 3

     B.     The Departments considered and accounted for all potential effects of the Final Rules before promulgating them. ....................................................................................................... 7

     C.     The Departments gave a reasoned explanation for the Final Rules. ........................................................................................ 8

     D.     The Departments meaningfully replied to comments. .................. 11

     E.     The Moral Exemption is permissible. ..................................................... 11

II.    The Final Rules do not violate Section 1554 by creating unreasonable barriers to care. ........................................................................... 13

III.   The Final Rules do not violate Section 1557 by discriminating against women. ..................................................................................................... 14

Conclusion ........................................................................................................................... 15

**Table of Authorities**

<u>**Cases**</u>

*Associated Dog Clubs of New York State, Inc. v. Vilsack*,
    75 F. Supp. 3d 83 (D.D.C. 2014) ....................................................................................... 4

*Bostock v. Clayton County*,
    140 S. Ct. 1731 (2020) ..................................................................................................... 14

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*,
    419 U.S. 281 (1974) .................................................................................................... 9, 10

*California v. Health & Human Services*,
    351 F. Supp. 3d 1267 (N.D. Cal. 2019) ............................................................................. 9

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) .......................................................................................................... 9

*Department of Health & Human Services v. California*,
    No. 19-1038, 2020 WL 3865243 (U.S. July 9, 2020) ....................................................... 1

*Doe v. Bolton*,
    410 U.S. 179 (1973) .......................................................................................................... 6

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    140 S. Ct. 2367 (2020) ............................................................................................. passim

*Little Sisters of the Poor v. California*,
    No. 19-1053, 2020 WL 3865245 (U.S. July 9, 2020) ....................................................... 1

*March for Life Education & Defense Fund v. California*,
    No. 19-1040, 2020 WL 3865244 (U.S. July 9, 2020) ....................................................... 1

*Motor Vehicle Manufacturers Association of United States, Inc. v. State Farm*
    *Mutual Automobile Insurance Co.*,
    463 U.S. 29 (1983) ...................................................................................................... 8, 12

*National Shooting Sports Foundation, Inc. v. Jones*,
    716 F.3d 200 (D.C. Cir. 2013) .......................................................................................... 4

*Pennsylvania v. Trump*,
    351 F. Supp. 3d 791 (E.D. Pa. 2019) ............................................................................... 11

*Roe v. Wade*,
    410 U.S. 113 (1973) .......................................................................................................... 6

*Stewart v. Spencer*,
    344 F. Supp. 3d 147 (D.D.C. 2018) ................................................................................ 12

*United States v. Seeger*,
    380 U.S. 163 (1965) ........................................................................................................ 6

*Welsh v. United States*,
    398 U.S. 333 (1970) ........................................................................................................ 6

**Statutes**

42 U.S.C. § 18114 ............................................................................................................... 13

**Regulations**

83 Fed. Reg. 57,536 (Nov. 15, 2018) ............................................................... 4, 7, 8, 14

83 Fed. Reg. 57,592 (Nov. 15, 2018) ................................................................... passim

**Introduction**

In *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020), the Supreme Court rejected the core basis upon which this Court granted Plaintiffs a preliminary injunction and the Ninth Circuit affirmed—that the federal agencies tasked with administering the ACA lacked the authority to issue the religious and moral exemptions to the contraceptive requirement that the Health Resources and Services Administration created.[1] In fact, the Supreme Court held that quite the opposite is true—"the plain language of the [ACA] clearly allows the Departments to create the preventive care standards as well as the religious and moral exemptions." *Little Sisters*, 140 S. Ct. at 2382. *Little Sisters* also rejected the arguments that (1) the Final Rules were procedurally defective, and (2) the Departments were not allowed to consider RFRA in deciding whether to exempt religious objectors. *Id.* at 2382-86.

More specifically, in upholding the Departments' statutory authority to issue the religious and moral exemptions, the Supreme Court concluded that "HRSA has virtually unbridled discretion to decide what counts as preventive care and

---

[1] The *Little Sisters* opinion was handed down on July 8, 2020. The next day the Court granted the petitions for certiorari filed by the federal defendants and intervenors in this case and reversed and remanded to the Ninth Court "for further consideration in light of" that opinion. *Dep't of HHS v. California*, No. 19-1038, 2020 WL 3865243 (U.S. July 9, 2020); *March for Life Educ. & Defense Fund v. California*, No. 19-1040, 2020 WL 3865244 (U.S. July 9, 2020); *Little Sisters of the Poor v. California*, No. 19-1053, 2020 WL 3865245 (U.S. July 9, 2020). The Ninth Circuit then requested supplemental briefs from the parties addressing the effect of *Little Sisters* on this case. *State of California, et al. v. The Little Sisters of the Poor, et al.*, 19-15072, Dkt. No. 193 (Aug. 13, 2020). On October 8, 2020, the Ninth Circuit vacated this Court's preliminary injunction and remanded to this Court for further proceedings consistent with *Little Sisters*. *State of California, et al. v. The Little Sisters of the Poor, et al.*, 19-15072, Dkt. No. 206 (Oct. 8, 2020). On October 20, 2020 this Court ordered the supplemental briefing requested by the parties to address "the import of the Supreme Court's [*Little Sisters*] decision and its impact on Plaintiffs' claims and the pending dispositive motions before th[e] Court." Dkt. No. 431.

screenings," and further concluded that "the same capacious grant of authority that empowers HRSA to make these determinations leaves its discretion equally unchecked in other areas, including the ability to identify and create exemptions from its own Guidelines." *Little Sisters*, 140 S. Ct. at 2380. Rejected too were Plaintiffs' arguments sounding in any asserted procedural infirmity in the Departments' promulgation of the Final Rules. *Little Sisters* resolved this issue by concluding that the Final Rules are procedurally valid. More specifically, the Court held that the "rules contained all of the elements of a notice of proposed rulemaking as required by the APA," were "free from procedural defects," and gave the Plaintiffs precisely what the APA requires, "fair notice." *Id.* at 2384-86 (internal quotation marks and citation omitted). The religious and moral exemptions' procedural validity are now also beyond dispute.

Faced with these unequivocal holdings from the Supreme Court as to the breadth of the Departments' discretion to craft the Final Rules, and the lack of any procedural improprieties in the Departments' promulgation of them, the Plaintiff States continue to press their arguments that, notwithstanding *Little Sisters*, the Final Rules must be set aside because they are arbitrary and capricious and because they are contrary to law. But the Plaintiff States were mistaken as to these arguments even before *Little Sisters*, and its broad holding only further solidifies the conclusion that the Departments' actions did not violate the APA or any other law. Indeed, as already made plain in March for Life's previous briefing, in promulgating the Final Rules the Departments accounted for and considered the totality of real world consequences implicated by the religious and moral exemptions, comprehensively responded to comments on both sides of the issue, and gave reasoned explanations and advanced plausible justifications for their change

in position.[2] Given the deference due the Departments by this Court under controlling law, the indication provided by *Little Sisters* that the Departments' exercise of their discretion was not only reasonable under the circumstances but actually required, and the Plaintiff States' continued inability to locate even one woman harmed by the Final Rules (now in effect), this Court should reject the Plaintiff States' arbitrary and capricious challenge, as well as their contrary to law arguments, and dismiss the case in its entirety.

### I. The Final Rules are neither arbitrary nor capricious.

The Plaintiff States argue that the Final Rules are arbitrary and capricious. More specifically, they argue that the Final Rules must be set aside because the Departments "(1) crafted Exemptions which are significantly broader in scope than the problem they purport to solve; (2) failed to give adequate weight to the imperative of the Mandate and the serious reliance interests of the intended beneficiaries of the Women's Health Amendment; (3) failed to provide a reasoned explanation for their policy reversal; (4) failed to meaningfully respond to comments; and (5) impermissibly weighed nonstatutory factors in promulgating the Moral Exemption Rule." States' Suppl. Br. 3, Dkt. No. 433. None of these claims is sustainable, especially in light of *Little Sisters*, which confirms that the Final Rules comfortably comport with the APA.

### A. The Final Rules are a proper fit for the problem recognized by the Departments.

The Departments have clearly indicated—and common sense would otherwise suggest as much—that the moral exemption was promulgated in order to prevent moral objectors from having to comply with a contraceptive requirement which violated their moral principles. *See* 83 Fed. Reg. 57,592, 57,593 (Nov. 15,

---

[2] *See* MFL's Mot. to Dismiss/Mot. for Summ. J. 37-40, Dkt. No. 368 ("Mot. to Dismiss").

2018) ("The rules are necessary to protect sincerely held moral objections of certain entities and individuals. The rules, thus, minimize the burdens imposed on their moral beliefs, with regard to the discretionary requirement that health plans cover certain contraceptive services with no cost-sharing . . ."). Notwithstanding this clarity of purpose, the Plaintiff States seek to invalidate the Final Rules by summarily claiming that they represent a "vast[] expan[sion]" of the "prior exemption" and accordingly must be set aside. The Plaintiff States are wrong as to both law and logic.

As to the law, the Plaintiff States' objection to the lines drawn by the Departments is foreclosed by *Little Sisters*, which established that they have "virtually unbridled discretion" and "capacious . . . authority . . . to identify and create exemptions." 140 S. Ct. at 2380. Additionally, it is axiomatic that the "APA does not . . . require agencies to tailor their regulations as narrowly as possible to the specific concerns that generated them," *Associated Dog Clubs of New York State, Inc. v. Vilsack*, 75 F. Supp. 3d 83, 92 (D.D.C. 2014), and it also does not require them to "identify the optimal threshold with pinpoint precision." *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 214 (D.C. Cir. 2013). They are rather "only required to identify the standard and explain its relationship to the underlying regulatory concerns." *Id.* So long as their determination is "within a zone of reasonableness" it must be sustained. *Id.*

The Departments have discharged that obligation here, where they recognized after years of litigation that employers with religious and moral objections to providing abortifacient contraception existed, and further recognized that certain religious employers could not abide by the accommodation previously provided. *See* 83 Fed. Reg. 57,536, 57,540-543 (Nov. 15, 2018) (discussing reasons for religious exemption and litigation preceding it, and stating that "[t]he expanded exemptions . . . are generally consistent with the scope of exemptions that Congress has established in similar contexts"). The Departments further found that the same

holds true for moral objectors. *See* 83 Fed. Reg. at 57,596, 57,602-604 (discussing reasons for moral exemption and the litigation preceding it, and stating that the moral exemption is "generally consistent with the scope of exemptions that Congress has established in similar contexts"). In making these determinations the Departments fully considered and addressed the concerns of commenters as to the scope of the employers covered, and that determination is due deference by this Court. *Id.*

As to logic, the Plaintiff States entirely ignore the fact that before the moral exemption was solidified in the Final Rules, moral objectors had no recourse to protect their conscience rights except to file suit, as March for Life ended up having to do. The new remedy provided by the Departments fixed a glaring omission that was made patent from years of litigation surrounding the contraceptive coverage requirement. The Plaintiff States' only argument against the moral exemption appears to be that it is too expansive because it permits "nearly any employer [to] stop covering contraceptive services for their employees if they have a 'moral' objection." States' Suppl. Br. 4. That is not a valid objection, but rather a precise description of what the moral objection does and was specifically designed to do. Moreover, the Plaintiff States ignore the fact that the Departments expressly recognized that at the time they considered the moral exemption they knew of only three "small nonprofit organizations" in need of the moral exemption. 83 Fed. Reg. at 57,626-27. Thus any argument or implication by the Plaintiff States that the moral exemption or its impact is so vast and ill-fitting as to be arbitrary and capricious must fail. Indeed, the Departments created the moral exemption "to relieve burdens that some entities and individuals experience from being forced to choose between" their conscience and the contraceptive coverage requirement, and it does just that, at the same time its potential impact on women is projected to be

so small as to be negligible.[3] 83 Fed. Reg. at 57,593. That fact suggests a tight fit between means and ends, not the "significant mismatch" suggested by the Plaintiff States. States' Suppl. Br. 5.

Additionally, to the extent that the Plaintiff States again (*see* States' Mot. for Summ. J. 55 n.49, Dkt. No. 311) attempt to turn the argument around to claim that the moral exemption must be set aside because it was unnecessary (and therefore arbitrary and capricious) to promulgate it in the absence of more verified moral objectors, that argument too must fail. First, *Little Sisters* recognizes that the Departments had "virtually unbridled discretion" to craft exemptions, and the moral exemption is a valid and predictable exercise of that discretion under the facts. 140 S. Ct. at 2380. Second, the Plaintiff States can cite to no authority to suggest that the Departments were required to make moral objectors like March for Life engage in piecemeal litigation to protect their rights until a threshold corpus of other moral objectors appeared to justify the exemption. In fact, quite the opposite is true. For instance, the legislative history surrounding the Church Amendments does not reveal that Congress waited to see whether a certain number of pro-life objectors to abortion would materialize before passing those protections into law. Likewise, neither the *Roe* nor *Doe* courts indicated that the validity of the right to conscience depends upon how many verified individuals or organizations are eager to exercise it. *See Roe v. Wade*, 410 U.S. 113, 143 n.38 (1973); *Doe v. Bolton*, 410 U.S. 179, 198 (1973). And conscientious objection to war is protected based upon the individual's sincerity of conviction, no matter how many make use of the protections. *See United States v. Seeger*, 380 U.S. 163, 184-187 (1965); *Welsh v. United States*, 398 U.S. 333, 339-44 (1970).

---

[3] *See* MFL's Mot. to Dismiss 52 (showing that the estimated impact of the moral exemption is miniscule, and nowhere near the "millions" cited by the Plaintiff States).

6
Supplemental Brief of Intervenor-Defendant (4:17-cv-05783-HSG)

### B. The Departments considered and accounted for all potential effects of the Final Rules before promulgating them.

The Plaintiff States allege that the Final Rules promise harm to women, and further allege that the Departments ignored the prospect of that harm. States' Suppl. Br. 7-13. But the record tells a different story, and the Plaintiff States' attempt to transform a policy disagreement into a disqualifying APA violation must be rejected. Contrary to the story told by the Plaintiff States, the Departments fully addressed the scientific implications of the exemption and the reliance interests of women, and carefully balanced those interests against the propriety of compelling religious and moral objectors to provide abortifacient contraceptives as part of their health care plans.

The Departments, for instance, reviewed a host of scientific studies and comments on both sides regarding the efficacy and health benefits of contraceptives, and concluded from that review that there existed "significantly more uncertainty and ambiguity . . . on these issues than [they] previously acknowledged when [they] declined to extend the exemption to certain objecting organizations and individuals." 83 Fed. Reg. at 57,555. The Departments further concluded, after revisiting the issue, that the case for the religious and moral exemptions was stronger and more substantial than they had acknowledged in the past. *See* 83 Fed. Reg. at 57,542-48 (religious exemption); 83 Fed. Reg. 57,596-602 (moral exemption). These conclusions led the Departments to finalize the exemptions, because they determined that "it [was] not clear that merely expanding exemptions [would] have a significant effect on contraceptive use," given that "[t]here is conflicting evidence regarding whether the [m]andate alone, as distinct from birth control access more generally, has caused increased contraceptive use, reduced unintended pregnancies, or eliminated workplace disparities, where all other women's preventive services were covered without cost sharing." 83 Fed. Reg. at 57,556.

That the Departments' determination to promulgate the Final Rules conflicted with the policy preferences of the Plaintiff States does not render that

7

1 determination arbitrary or capricious. Here, because the Department's action was
2 "rational, based on consideration of the relevant factors[,] and within the scope of
3 the authority delegated . . . by the statute," it passes APA muster, notwithstanding
4 the reliance issues raised by the Plaintiff States. *Motor Vehicle Mfrs. Ass'n of U.S.,*
5 *Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983). This conclusion is all
6 the more appropriate given the fact that *Little Sisters* expressly noted that Congress
7 itself had chosen not to mandate contraceptive coverage, and further found that the
8 "policy concern" centered around women's interest in receiving contraceptive
9 coverage "cannot justify supplanting the text's plain meaning," especially when that
10 text permitted the Departments near plenary discretion to craft exemptions. *Little*
11 *Sisters*, 140 S. Ct. at 2381-82.

**C.  The Departments gave a reasoned explanation for the Final Rules.**

13 Even before *Little Sisters*, it was clear that the Departments had comfortably
14 satisfied this requirement.[4] Indeed, the Departments considered a host of important
15 factors and considerations before promulgating the moral exemption, including
16 "Congress's history of providing protections for moral convictions regarding certain
17 health services (including contraception, sterilization, and items or services believed
18 to involve abortion); the text, context, and intent of section 2713(a)(4) and the ACA;
19 Executive Order 13798, "Promoting Free Speech and Religious Liberty" (May 4,
20 2017); previously submitted public comments; and the extensive litigation over the
21 contraceptive Mandate." 83 Fed. Reg. at 57,596; *see also* 83 Fed. Reg. at 57,539-40
22 (consulting similar issues for religious exemption). Based on these considerations
23 the Departments then concluded that it was appropriate to make the exemptions
24 final, "consistent with [the congressional] history" of providing religious and moral
25 exemptions, and the "discretion Congress vested in the Departments for
26 implementing the ACA." 83 Fed. Reg. at 57,555; 83 Fed. Reg. at 57,611. This

---

[4] *See also* MFL's Mot. to Dismiss 37-39.

8
Supplemental Brief of Intervenor-Defendant (4:17-cv-05783-HSG)

1  explanation is not "inadequate" as the Plaintiff States allege, States' Suppl. Br. 15,
2  but rather more than sufficient under controlling law, which prohibits a court from
3  "substitut[ing] its judgment for that of the agency," *Citizens to Pres. Overton Park,*
4  *Inc. v. Volpe*, 401 U.S. 402, 416 (1971), when "the agency's path may reasonably be
5  discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281,
6  286 (1974). Here the Departments' path is clear for all to see and thus permissible.

7  Nevertheless, the Plaintiff States make much of the fact that in its previous
8  order this Court expressed misgivings about the Departments' explanation, hoping
9  to maintain some avenue to invalidate the Final Rules despite *Little Sisters*. It is to
10 no avail. It is true that in its January 13, 2019 Order this Court stated that the
11 Plaintiffs were "likely to prevail on their claim that the agencies failed to provide a
12 reasoned explanation" for the religious and moral exemptions, because "the Rules
13 provide no new facts and no meaningful discussion that would discredit [the
14 Departments'] prior factual findings." *California v. Health & Human Servs.*, 351 F.
15 Supp. 3d 1267, 1296 (N.D. Cal. 2019). At the same time, however, this Court
16 recognized that its conclusion was necessarily tentative, given that the case was in
17 a stage of relative infancy, cautioning that "the parties' positions on the [reasonable
18 explanation] issue[ ] . . . will need to be laid out in substantially greater detail for
19 the Court to sufficiently address the merits of this claim on a full record in the next
20 stages of the case." *Id.* That has now been done, and more importantly, the Supreme
21 Court has intervened to render the Court's conclusion no longer tenable.

22 First, *Little Sisters* held that the Departments not only had "unbridled
23 discretion to decide what counts as preventive care and screenings," but "equally
24 unchecked" discretion "to identify and create exemptions from its own Guidelines."
25 140 S. Ct. at 2380. The religious and moral exemptions represent a legitimate
26 exercise of the Departments' broad discretion.

27 Second, *Little Sisters* concluded that the "Departments issued an IFR that
28 explained its position in fulsome detail," and further noted that, as to the Final

1 Rules, the Departments gave a concise statement of their basis and purpose," "explain[ed] that the rules were necessary to protect sincerely held moral and religious objections," and "summariz[ed] the legal analysis supporting the exemptions." *Id.* at 2385–86 (internal quotations and citation omitted). It cannot be that the Departments failed to provide a meaningful discussion when *Little Sisters* established that they provided "fulsome detail."

Third, *Little Sisters* took no issue with the fact that the Departments "reached a different conclusion" than they had before, *id.* at 2384 n.12. The Court pointed out that with respect to the religious exemption, the Departments provided "a lengthy analysis of the Departments' changed position" to justify why "an expanded exemption[,] rather than the existing accommodation[,] [was] the most appropriate administrative response to the substantial burden identified by the Supreme Court in *Hobby Lobby*." *Id.* at 2378. And with respect to the moral exemption, the Court pointed out that the Departments grounded it on "congressional enactments, precedents from [the Supreme Court], agency practice, and state laws that provided for conscience protections." *Id.* at 2378. The Supreme Court thus found that the Departments had more than adequately discussed the factual record, did provide a meaningful discussion as to why they changed course, and also laid out the legal justifications for the Final Rules.

Conspicuously absent from the Plaintiff States' argument on this score is any reference to *Little Sisters*, and that absence is damning. *Little Sisters* rejects the conclusion that the Departments failed to proffer a reasoned explanation for the Final Rules, and thus establishes that they complied with their substantive obligations under the APA. This is especially true when one remembers that the "arbitrary and capricious" inquiry "is a narrow one," and a "court is not empowered to substitute its judgment for that of the agency." *Bowman Transp., Inc.*, 419 U.S. at 285.

**D. The Departments meaningfully replied to comments.**

The Plaintiff States' argument on this score ignores *Little Sisters* and pretends that the Preamble to the Final Rules doesn't exist.

In *Little Sisters* the Court expressly recognized that although the Departments left the "exemptions largely intact" in the Final Rules, they did in fact "respond[ ] to post-promulgation comments, explaining their reasons for neither narrowing nor expanding the exemptions beyond what was provided for in the IFRs. *See* 83 Fed. Reg. 57542–57545, 83 Fed. Reg. 57598–57603." 140 S. Ct. at 2378. This recognition negates the Plaintiff States' argument.

And that is as it should be. Even before *Little Sisters* it was clear from the Final Rules' Preamble that the Departments had assiduously addressed commenters on both sides of various issues, outlined the competing positions, and ultimately explained how and why they came to conclude that the Final Rules were the appropriate course of action under the circumstances. *See, e.g.*, 83 Fed. Reg. at 57,603-613; *Pennsylvania v. Trump*, 351 F. Supp. 3d 791, 812 (E.D. Pa. 2019) (rejecting similar argument made by other states in nearly identical litigation, stating that "a review of the Final Rules demonstrates that the Agencies acknowledged the comments and provided an explanation as to why the Agencies did (or did not) amend the Final Rules based on the comment"). This argument thus provides no reason to set the Final Rules aside.[5]

**E. The Moral Exemption is permissible.**

The Plaintiff States argue that in promulgating the moral exemption the Departments "impermissib[ly] consider[ed] . . . non-religious 'moral' objections to contraceptive coverage without any evidence that Congress intended [them] to consider such objections." States' Suppl. Br. 16. They are mistaken.

---

[5] *See* MFL's Mot. to Dismiss 39-40.

11
Supplemental Brief of Intervenor-Defendant (4:17-cv-05783-HSG)

First, and most important, *Little Sisters* establishes that Congress did not prevent the Departments from creating a moral exemption. Quite to the contrary, *Little Sisters* held that "[u]nder a plain reading of the statute . . . the ACA gives HRSA broad discretion to define preventive care and screenings and to create the religious *and moral exemptions*." 140 S. Ct. at 2381 (emphasis added). That pronouncement is controlling here and altogether dispenses with the Plaintiff States' argument that the Departments could not consider the conscience objections of moral entities faced with having to provide contraceptive drugs. No further analysis is required to reject Plaintiffs' contention.

Second, even aside from *Little Sisters*, the Plaintiff States cite to no congressional prohibition on the Departments' ability to consider moral objections in exercising their discretion to administer the ACA. That is not surprising, because there was and is none.[6] Contrary to the argument proffered by the Plaintiff States, this is not a situation in which the Departments relied on factors Congress "has not intended it to consider." States' Suppl. Br. 16 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43).

Third, as March for Life has already established, in considering the propriety and necessity of the moral exemption it was eminently reasonable for the Departments to account for our founding principles and practices, congressional enactments, federal regulations, judicial precedents, and state laws and regulations regarding the primacy of the right to conscience and our nation's consistent protection of it.[7] These are factors "that would logically inform a decision maker," so the suggestion that the Departments' consideration of them was either arbitrary or capricious must fail. *Stewart v. Spencer*, 344 F. Supp. 3d 147, 157 (D.D.C. 2018).

---

[6] To the extent that the Plaintiff States seek here to resurrect Congress's failure to pass a conscience amendment as a predicate for setting aside the moral exemption, that route too has been foreclosed by *Little Sisters*. 140 S. Ct. at 2381 (finding that HRSA had "broad discretion to . . . create the . . . moral exemption[]").

[7] *See* MFL's Mot. to Dismiss 24-33.

This conclusion is all the more appropriate in light of *Little Sisters*, which rejected the argument that the Departments "could not even consider RFRA as they formulated the religious exemption," and held not only that the Departments *could* consider RFRA but further suggested that failing to do so would open them up to a charge that they had acted in an arbitrary and capricious fashion by "failing to consider an important aspect of the problem." 140 S. Ct. at 2382-83, 2384. This logic applies with equal force to the moral exemption, where the Departments considered these historical factors along with equal-protection principles. *See* MFL's Mot. to Dismiss 33-34. Indeed, had the Departments not considered the dictates of equal protection, traditional Congressional solicitude for protecting conscience rights, a federal court's permanent injunction in a federal case filed by March for Life, and the continuing litigation threat posed by the contraceptive mandate, they would have "fail[ed] to consider an important aspect of the problem." 140 S. Ct. at 2384.

## II. The Final Rules do not violate Section 1554 by creating unreasonable barriers to care.

The Plaintiff States' Section 1554 challenge fails. Congress itself chose not to require contraceptive coverage and chose to exempt tens of millions of people from the preventive care mandate. *See* MFL's Mot. to Dismiss 4-6, 35-36. The moral and religious exemptions cannot constitute "unreasonable barriers," nor can they be seen as "imped[ing] timely access to health care services," 42 U.S.C. § 18114, when Congress itself provided for carve-outs that dwarf those two exemptions.[8] The Supreme Court's imprimatur in *Little Sisters* as to the Departments' expansive discretion to create exemptions from the contraceptive coverage requirement HRSA created only bolsters the conclusion that the Departments did not create unreasonable barriers to care in promulgating the Final Rules. Finally, the Departments' considered conclusion that the effect of the moral exemption on

---

[8] Tellingly, the Plaintiff States have never challenged these vastly larger carve-outs.

insurance coverage would be "small," 83 Fed. Reg. at 57,626—a finding the Plaintiff States can proffer no evidence to refute—dispels this argument.[9]

### III. The Final Rules do not violate Section 1557 by discriminating against women.

The Plaintiff States claim that the Final Rules must be set aside as contrary to law because they discriminate against women. States' Suppl. Br. 19-20. They are mistaken.[10]

The contraceptive coverage requirement confers a unique benefit only upon women, 83 Fed. Reg. at 57,607, so if anything the Departments have uniquely discriminated *in their favor*. The Plaintiff States ignore this fact and curiously cite to the irrelevant *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), claiming that because of the Final Rules "[w]omen are forced . . . to accept incomplete health coverage unequal to that received by male colleagues," or to take alternative measures when faced with that prospect. States' Suppl. Br. 20.[11] That claim does not comport with reality—a slight adjustment to a regulatory regime which already benefits women more than men, and still does so after the adjustments are accounted for, cannot constitute discrimination against women.[12] Indeed, the fact that the circumscribed modifications to the contraceptive coverage requirement, in the form of the moral and religious exemptions, affect only women is not a sign of

---

[9] The Departments also estimated a similar lack of negative effect with respect to the religious exemption. *See* 83 Fed. Reg. at 57,556.
[10] *See* MFL's Mot. to Dismiss 36-37.
[11] This argument is not only ill-founded, but was anticipated and rejected by the Departments. *See* 83 Fed. Reg. at 57,607 ("women's preventive services in general, and female contraceptives specifically, [are treated more favorably than] male preventive services or contraceptives").
[12] In fact, if the logic of the Plaintiff States were taken to its natural termination point, the contraceptive coverage requirement itself would have to be deemed a violation of Section 1557, because it actually "den[ies] []men full and equal healthcare benefits." States' Suppl. Br. 19-20. The Plaintiff States, of course, cannot acknowledge this because such an admission would doom their entire enterprise by rendering the contraceptive coverage requirement itself *ultra vires*.

sex discrimination but rather the natural consequence of the discretion granted the Departments by Congress. *Little Sisters,* 140 S. Ct. at 2380. The Departments had broad discretion to create the requirement from whole cloth to benefit women, and they have the same broad discretion to create exemptions to it to protect religious and moral objectors. *Id.* If this were not the case, the discretion recognized by the Supreme Court in *Little Sisters* would have to be deemed sex discrimination each time the Departments chose to exercise it in a manner that even tangentially affected women more than men, or vice versa. This is refuted by the logic animating *Little Sisters*.

## Conclusion

For the reasons discussed here, and those reasons already discussed in March for Life's Motion to Dismiss/Motion for Summary Judgment filings, this Court should deny the Plaintiff States' Motion for Summary Judgment, grant March for Life's Motion to Dismiss/Motion for Summary Judgment, and dismiss the case in its entirety with prejudice.

Respectfully submitted this 25th day of November, 2020.

By: s/Kenneth J. Connelly
　　Kenneth J. Connelly, AZ Bar No. 025420**
　　Alliance Defending Freedom
　　15100 North 90th Street
　　Scottsdale, AZ 85260
　　(480) 444-0020
　　(480) 444-0028 Fax
　　kconnelly@ADFlegal.org

　　Brian R. Chavez-Ochoa
　　Chavez-Ochoa Law Offices, Inc.
　　4 Jean Street, Suite 4
　　Valley Springs, CA 95252
　　(209) 772-3013
　　(209) 772-3090 Fax
　　chavezochoa@yahoo.com

*Counsel for Intervenor-Defendant March for Life*

** *Pro hac vice granted*