1  XAVIER BECERRA, State Bar No. 118517
   Attorney General of California
2  KATHLEEN BOERGERS, State Bar No. 213530
   KARLI EISENBERG, State Bar No. 281923
3  Supervising Deputy Attorneys General
   KETAKEE R. KANE, State Bar No. 291828
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone:  (916) 210-7913
6    Fax:  (916) 324-5567
     E-mail:  Karli.Eisenberg@doj.ca.gov
7  *Attorneys for State of California*
   *[Additional counsel listed on signature page]*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE STATE OF CALIFORNIA; THE STATE OF CONNECTICUT; THE STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; THE STATE OF HAWAII; THE STATE OF ILLINOIS; THE STATE OF MARYLAND; THE STATE OF MINNESOTA, BY AND THROUGH ITS DEPARTMENT OF HUMAN SERVICES; THE STATE OF NEW YORK; THE STATE OF NORTH CAROLINA; THE STATE OF RHODE ISLAND; THE STATE OF VERMONT; THE COMMONWEALTH OF VIRGINIA; THE STATE OF WASHINGTON,**<br><br>                              Plaintiffs,<br><br>**THE STATE OF OREGON,**<br><br>                              Plaintiff-Intervenor,<br><br>**THE STATE OF COLORADO; THE STATE OF MICHIGAN; THE STATE OF NEVADA,**<br><br>                              Proposed-Plaintiffs-Intervenors,<br><br>         v.<br><br>**ALEX M. AZAR II, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES;** | 4:17-cv-05783-HSG<br><br>**STATES' REPLY BRIEF IN SUPPORT OF SUPPLEMENTAL BRIEF**<br><br>Date:            December 16, 2020<br>Time:           2:00 p.m.<br>Dept:           2, 4th floor<br>Judge:         The Honorable Haywood S. Gilliam, Jr.<br>Action Filed: October 6, 2017 |

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9 | **EUGENE SCALIA,[1] IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF LABOR; U.S. DEPARTMENT OF LABOR; STEVEN MNUCHIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF THE TREASURY; U.S. DEPARTMENT OF THE TREASURY; DOES 1-100,**<br>                               Defendants,<br>and,<br>**THE LITTLE SISTERS OF THE POOR, JEANNE JUGAN RESIDENCE; MARCH FOR LIFE EDUCATION AND DEFENSE FUND,**<br>                       Defendant-Intervenors. |

---

[1] Secretary Scalia replaces former Secretary Acosta as a defendant, in his official capacity, by operation of Federal Rule of Civil Procedure 25(d).

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................ 1
ARGUMENT .................................................................................................................................. 1
    I.    The Exemption Rules Are Arbitrary and Capricious ........................................... 1
    II.   The Exemption Rules Violate Section 1554 ........................................................ 9
    III.  The Exemption Rules Violate Section 1557 ...................................................... 10
CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*
   273 F.3d 1229 (9th Cir. 2001) .................................................................................................. 2

*Bostock v. Clayton Cnty.*
   140 S. Ct. 1731 (2020) ............................................................................................................ 10

*California v. Azar*
   --- F.3d ---, 2020 WL 6733641 (N.D. Cal. Nov. 17, 2020) ...................................................... 6

*California v. Azar*
   941 F.3d 410 (9th Cir. 2019) .................................................................................................... 2

*California v. Azar*
   950 F.3d 1067 (9th Cir. 2020) .................................................................................................. 9

*California v. Health & Human Servs.*
   351 F. Supp. 3d 1267 (N.D. Cal. 2019) .................................................................................... 6

*City & Cnty. of San Francisco v. U.S. Citizenship & Immigration Servs.*
   --- F.3d ---, 2020 WL 7052286 (9th Cir. Dec. 2, 2020) ................................................... 5, 6, 7

*City of Portland v. EPA*
   507 F.3d 706 (D.C. Cir. 2007) .................................................................................................. 7

*Del. Dep't of Nat. Res. & Envtl. Control v. EPA*
   785 F.3d 1 (D.C. Cir. 2015) ...................................................................................................... 1

*Dep't of Commerce v. New York*
   139 S. Ct. 2551 (2019) .......................................................................................................... 1, 2

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*
   140 S. Ct. 1891 (2020) .......................................................................................................... 4, 5

*Erickson v. Bartell Drug Co.*
   141 F. Supp. 2d 1266 (W.D. Wash. 2001) ............................................................................. 10

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*
   140 S. Ct. 2367 (2020) ................................................................................................. 2, 5, 6, 7

*Michigan v. EPA*
   576 U.S. 743 (2015) .................................................................................................................. 1

**TABLE OF AUTHORITIES**
(continued)

Page

*Nat'l Fuel Gas Supply Corp. v. FERC*
  468 F.3d 831 (D.C. Cir. 2006) ............................................................................................. 2, 8

*Nat'l Urban League v. Ross*
  977 F.3d 770 (9th Cir. 2020) .................................................................................................. 7

*Oregon v. Ashcroft*
  368 F.3d 1118 (9th Cir. 2004) ................................................................................................ 6

*Priests for Life v. U.S. Dep't of Health & Human Servs.*
  808 F.3d 1 (D.C. Cir. 2015) .................................................................................................... 6

*Regan v. Taxation with Representation of Washington*
  461 U.S. 540 (1983) ................................................................................................................ 9

*Sorenson Commc'ns Inc. v. FCC*
  755 F.3d 702 (D.C. Cir. 2014) ................................................................................................ 8

*State v. Bureau of Land Mgmt.*
  286 F. Supp. 3d 1054 (N.D. Cal. 2018) .................................................................................. 1

*Zubik v. Burwell*
  136 S. Ct. 1557 (2016) ............................................................................................................ 5

**STATUTES**

United States Code
  Title 26 § 4980D ..................................................................................................................... 3
  Title 29 § 1132(a) .................................................................................................................... 3
  Title 42 § 300gg-22 ................................................................................................................. 3
  Title 42 § 2000bb-1(a) ............................................................................................................ 2

**OTHER AUTHORITIES**

77 Fed. Reg. 8,725 (Feb. 15, 2012) ............................................................................................. 7

83 Fed. Reg. 57,536 (Nov. 15, 2018) ............................................................................... 3, 4, 5, 6

83 Fed. Reg. 57,592 (Nov. 15, 2018) .......................................................................................... 8

Code of Federal Regulations
  Title 45 part 150 ...................................................................................................................... 3

*Birth Control Methods*, Office of Women's Health, HHS,
  https://www.womenshealth.gov/a-z-topics/birth-control-methods ......................................... 7

# TABLE OF AUTHORITIES
### (continued)

**Page**

Respondents' Brief, *Zubik v. Burwell*
   2016 WL 537623 (Feb. 10, 2016) .................................................................................... 5

"Create," Webster's New International Dictionary (3d ed. 1986) ................................................ 9

"Impede," Webster's New International Dictionary (3d ed. 1986) ............................................... 9

**INTRODUCTION**

The Supreme Court did not decide whether the Religious and Moral Exemption Rules are arbitrary and capricious. Nor did it conclude that the accommodation was a substantial burden. Although the Supreme Court did hold that the Health Resources and Service Administration (HRSA) had the *authority* to promulgate the Exemption Rules, this holding does not dictate the answers to the outstanding questions presented to this Court, as Defendants propose. And no aspect of the Supreme Court's opinion suggests that Defendants could either ignore the APA's mandate that agencies provide reasoned decisionmaking to support their rulemaking or enact Rules contrary to Sections 1554 and 1557. Because the Exemptions Rules violate the APA in that they are arbitrary and capricious and contrary to law, this Court should grant the States' motion for summary judgment and vacate the Rules.

**ARGUMENT**

**I.   THE EXEMPTION RULES ARE ARBITRARY AND CAPRICIOUS**

*1.   Defendants adopted overbroad exemptions that are not tailored to the scope of the problem defendants sought to address.* Defendants seek to avoid the States' argument that their Exemption Rules are not tailored to address the scope of the identified problem by simply misconstruing it as "line-drawing." Defs. Br. at 1, 3-4. That is not so. Supreme Court precedent requires that an agency provide "reasoned decisionmaking." *Michigan v. EPA*, 576 U.S. 743, 750 (2015). As part of that process, where Defendants identify a problem, and the "solution" sweeps much more broadly than their stated goal without justification, Defendants fail the test of "reasoned decisionmaking." *Id.*; *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019); *Del. Dep't of Nat. Res. & Envtl. Control v. EPA,* 785 F.3d 1, 17-18 (D.C. Cir. 2015) (setting aside a regulation because it was not tailored to address the identified problems); *State v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1066-67 (N.D. Cal. 2018) (agency action "not properly tailored" and thus arbitrary and capricious where the agency asserted that the prior rule harmed small operators and, as a "solution," the agency promulgated a "blanket suspension as to all operators, regardless of size"). Here, Defendants promulgated the Exemption Rules to solve purported conflicts between the contraceptive mandate, the Religious Freedom Restoration Act

(RFRA), and "conscience" objections. However, the Rules are not tailored to remedy such conflicts. Both Rules are much broader than the problem they purport to solve, permitting nearly any employer to opt out of providing contraceptive coverage without notice to the employee and covered female dependents. *See, e.g.*, States Supp. Br. at 5-6 (Rules permit companies to opt-out even though no such company with an objection identified), 5 (Rules permit employers without an objection to the accommodation to exempt themselves); *see infra* at 7-9 (discussing Moral Rule). This "significant mismatch" renders both Rules arbitrary and capricious. *Dep't of Commerce*, 139 S. Ct. at 2575; *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2399 (2020) (Kagan, J., concurring) (explaining Defendants "should have exempted only employers who had religious objections to the accommodation—not those who viewed it as a religiously acceptable device for complying with the mandate").

Defendants also continue to assert that the Exemption Rules were required because the accommodation imposes a substantial burden. Defs. Br. at 17 (arguing that accommodation created "substantial burden"). As a matter of law, nine courts of appeal, including the Ninth Circuit, have concluded to the contrary. *California v. Azar*, 941 F.3d 410, 429-30 (9th Cir. 2019); *id.* at 429 n.4 (collecting circuit cases). And the Supreme Court explicitly did not reach this issue. *Little Sisters*, 140 S. Ct. at 2382 ("In light of our holding that the ACA provided a basis for both exemptions, we need not reach" Defendants' argument that "RFRA independently compelled the Departments' solution or that it at least authorized it"). In any event, the Religious Exemption Rule is not limited to instances in which compliance with the accommodation imposes a substantial burden—a predicate for any RFRA violation, 42 U.S.C. § 2000bb-1(a)—thereby undermining Defendants' rationale for promulgating the Rule. Moreover, Defendants have entered numerous stipulated judgments—*before* issuance of the final Exemption Rules—with objecting employers in pending litigation, thereby undermining the asserted "need" for such a broad Exemption Rule. *See* Dkt. Nos. 197-1 (listing the injunctions). Where there is "no evidence of a real problem" to support agency action, that action is arbitrary and capricious. *Nat'l Fuel Gas Supply Corp. v. FERC*, 468 F.3d 831, 841 (D.C. Cir. 2006) (vacating FERC order where agency had "provided no evidence of a real problem"); *Ariz. Cattle Growers' Ass'n v. U.S.*

*Fish & Wildlife*, 273 F.3d 1229, 1244 (9th Cir. 2001) (agency action arbitrary and capricious where the basis of the action is "speculation . . . not supported by the record").

Defendants also provide the false assurance that women can challenge an employer's use of an exemption. Defs.' Br. at 10; 83 Fed. Reg. 57,536, 57,558 (Nov. 15, 2018) (women can "raise appropriate challenges" to an employer's use of an exemption). However, the Exemption Rules do not provide *any process* for women to raise a "challenge." The Rules vaguely state that there are "various mechanisms in the [Public Health Services] Act, the [Internal Revenue] Code, and ERISA." 83 Fed. Reg. at 57,558. Recognizing the flawed, imprecise, and indefinite nature of this statement, Defendants now attempt to supplement their rulemaking in this Court, citing to 26 U.S.C. § 4980D; 29 U.S.C. § 1132(a); 42 U.S.C. § 300gg-22; 45 C.F.R. part 150—provisions that were not referenced in the Exemption Rules. Defs. Br. at 10. But none of these cited provisions actually contain a process that outlines where and how a woman would go about challenging her employer's invocation of the exemption, and, moreover, Defendants cannot supplement the basis for their rulemaking in this Court.[2] That Defendants attempt now to soften their position by relying on these new authorities is mere window dressing for their defective Rules.[3]

**2. *Defendants ignored the serious reliance interests at stake.*** Defendants claim that they did "evaluate" the reliance interests of persons receiving contraceptive coverage under the Women's Health Amendment and merely concluded that, notwithstanding these concerns, "the best way to balance the various policy interests . . . is to provide the expanded exemptions." Defs. Br. at 12 (quoting 83 Fed. Reg. at 57,556). They claim that they have thus fulfilled their

---

[2] 26 U.S.C. § 4980D provides the authority of the IRS to penalize employers; it does not provide a process or any authority for women to challenge the exemption; 29 U.S.C. § 1132(a) provides a private right of action in certain circumstances, including recovering benefits under "the terms of [a] plan" and for violations of that particular "subchapter"—not to challenge an employer's use of Defendants' exemption; 42 U.S.C. § 300gg-22 concerns the State and HHS Secretary's enforcement tools—not tools provided directly to women who are denied benefits which they are otherwise entitled by law; 45 C.F.R. part 150 defines CMS's enforcement tools, and does not include any provision that clearly permits women to seek remedial action against an employer that improperly invokes the exemption.

[3] This argument is further undermined by the fact that the Rules do not independently require employers give any particular notice to their employees regarding their reliance on the exemption. 83 Fed. Reg. at 57,558 (these Rules "do not impose any new notice requirements"); *id.* at 57,574 (entities can "avoid sending any supplementary notices").

obligations under the APA and satisfied *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) (*Regents*). Defendants are incorrect for several reasons.

First, Defendants in fact did not consider the reliance interests; instead, they downplayed those interests in contravention of the overwhelming evidence before them. For instance, HHS estimated that 30 million women gained access to contraceptive coverage due to the Women's Health Amendment and up to 126,400 women stand to lose contraceptive coverage due to the Religious Exemption Rule. Ex. 17 (D9 571363); 83 Fed. Reg. at 57,551.[4] Defendants ignored their own figures and the associated reliance interests of those impacted women. They instead claimed that only limited categories of women actually relied on the Women's Health Amendment. 83 Fed. Reg. at 57,547. Specifically, Defendants argued that only women "most at-risk for unintended pregnancy, that is, women who are aged 18 to 24 years, unmarried, who have a low income, who are not high school graduates, and who are members of racial or ethnic minorities" benefit from the contraceptive coverage mandate. *Id.* As the States have explained, Congress did not limit the Women's Health Amendment to only this limited, narrow category of women. States Mot. at 45. And Defendants' position "runs counter to the ample record evidence" that was before the agencies. *Id.* (collecting record citations).[5]

Second, Defendants asserted that the loss of contraceptive coverage was not a "burden" because Defendants were not obligated to create the mandate in the first place. States Supp. Br. at 12 n. 9 (citing 83 Fed. Reg. at 57,549). Defendants cannot sidestep their legal obligations with such reasoning. *Regents* explains that the withdrawal of a benefit conferred by discretionary agency action implicates the reliance interests of those who stand to lose that benefit. *See*

---

[4] *See also* Ex. 57 (D10 00207404), Ex. 49 (D10 00207145-46), Ex. 30 (D10 00195139-41) (noting that women of color made up the majority of those who gained contraceptive coverage and thus will be the population most affected by efforts to curtail those gains), Ex. 76 (D11 00396709-711), Ex. 47 (D10 00207116-17), Ex. 68 (D10 00209104-06), Ex. 29 (D10 00195127), Ex. 37 (D10 00206955-56), Ex. 55 (D10 00207238), Ex. 54 (D10 00207234).

[5] Similarly, Defendants argued that it was inconsequential that women would lose coverage because these women "constitute less than .1% of all women in the United States." 83 Fed. Reg. 57,550; *see also id.* at 57,551 n. 26, 57,578. To begin, this figure is grossly misleading as it is measured based on the total population of women in the United States. Regardless, that there are women who will be unaffected by the Exemption Rules is not relevant. Defendants are obligated under the APA to "assess . . . and weigh" the reliance interests of those who will be affected. *Regents*, 140 S. Ct. at 1913.

*Regents*, 140 S. Ct. at 1913-14 (addressing reliance interests engendered by the Deferred Action for Childhood Arrivals program).  Because such interests have clearly developed from the contraceptive coverage mandate, Defendants had to justify their rulemaking by a more "reasoned explanation"—not pretend that those interests simply did not exist.  *Id.*

Third, Defendants further sought to justify the Exemption Rules by suggesting that the contraceptive mandate has actually not yielded any benefits—thereby attempting to excuse the broad nature of the Rules and the fact that women would lose coverage.  Defs. Br. at 13 (citing 83 Fed. Reg. at 57,552-53, 57,555).  The evidence overwhelmingly contradicts these statements and commenters explained that the "studies" cited in the Rules are incomplete and inaccurate.  States Mot. at 41-43 (collecting record evidence); Resp. Br., *Zubik v. Burwell*, 2016 WL 537623, at *27 (Feb. 10, 2016) ("extensive medical evidence demonstat[es] that contraceptives are an essential component of women's health care," confirming that the government has a compelling interest in providing insurance that is "necessary to protect the health of female employees"); *City & Cnty. of San Francisco v. U.S. Citizenship & Immigration Servs.*, --- F.3d ---, 2020 WL 7052286, *11-13 (9th Cir. Dec. 2, 2020) (vacating rule when an agency fails to "reasonably reflect upon" and "grapple with" evidence regarding health impacts and costs).

Fourth, *Regents* requires that, in addition to giving careful consideration to those reliance interests, the agencies must "consider the alternatives that are within the ambit of the existing policy."  140 S. Ct. at 1913.  This is particularly true where the Supreme Court mandated that Defendants "arrive at an approach . . . *ensuring* that women covered by petitioners' health plans 'receive full and equal health coverage, including contraceptive coverage.'" *Zubik v. Burwell*, 136 S. Ct. 1557, 1560 (2016) (per curiam) (emphasis added).  Defendants accuse the States of not identifying any alternative.  Defs. Br. at 6.  However, the States explained that a viable alternative would be to limit exemptions to employers with religious objections to the accommodation.  States Supp. Br. at 4-5 (citing *Little Sisters*, 140 S. Ct. at 2398 (Kagan, J., concurring)).[6]

---

[6] Several other alternatives have been proposed throughout this rulemaking process—all unaddressed in Defendants' Rules.  For instance, then Judge Kavanaugh suggested that objecting employers could "submi[t] a simple notice to the Secretary of [HHS] in writing that it is a

*3.    Defendants failed to provide a meaningful explanation for their policy reversal.* As this Court already concluded, the basis for Defendants' changed policy was largely a new interpretation and application of RFRA. *California v. Health & Human Servs.*, 351 F. Supp. 3d 1267, 1296 (N.D. Cal. 2019) ("the Final Rules on this point rest, at bottom, on new legal assertions by the agencies"). This basis for rulemaking is a legal conclusion over which this Court has authority to decide and for which Defendants are not entitled to deference. *Oregon v. Ashcroft*, 368 F.3d 1118, 1129 (9th Cir. 2004) (agency decision "which rest on an erroneous legal foundation" "must, of course, [be] set aside"); *California v. Azar*, --- F.3d ---, 2020 WL 6733641, at *5-*8 (N.D. Cal. Nov. 17, 2020) (vacating HHS regulation where it was based on an erroneous interpretation of the Medicaid statute). And, despite Defendants' suggestion to the contrary, the Supreme Court did not reach this issue. *See supra* at 2. While the Court concluded that it was appropriate for Defendants to *consider* RFRA, it did not hold that the Religious Exemption Rule was *required* by RFRA. *Id.* As the States have explained, *see* States Mot. at 21-34, the Religious Rule is neither required nor permitted by RFRA.

Moreover, Defendants reversed course in several respects and Defendants' explanations for those reversals "'runs counter to the evidence before the agency.'" *San Francisco*, 2020 WL 7052286 at *11. Defendants claimed that there was "more uncertainty" regarding the health benefits of contraceptives; however, the evidence before Defendants did not support that conclusion. States Mot. at 39-41 (citing 83 Fed. Reg. at 57,552-55 and record evidence). Defendants further failed to account for the costs, despite the evidence before the agencies. *See* States Mot. at 43. Defendants also crafted an entirely new Moral Exemption Rule which as explained *infra* at 7-9 is not supported either by law or the evidence. These policy reversals that run counter to the evidence render the Exemption Rules arbitrary and capricious.

---

nonprofit organization that holds itself out as religious and has religious objections to providing coverage for contraceptive services. . . . [From there], the Government can independently determine the identity of the organizations' insurers and thereby ensure that . . . [they] provide contraceptive coverage." *Priests for Life v. U.S. Dep't of Health & Human Servs.*, 808 F.3d 1, 23-24 (D.C. Cir. 2015) (Kavanaugh, J., dissenting). Notably, the recent oral argument in *Little Sisters* supports this suggestion. Tr. at Oral Arg. 29 (Counsel for Little Sisters repeatedly confirmed that the organization had no "objection to simply objecting," or to the government independently arranging for insurers to provide coverage directly to their employees), *id.* (the Little Sisters would have no objection to "just . . . an opt-out form, an objection form").

***4. Defendants failed to meaningfully respond to comments.*** Defendants suggest that the Supreme Court's *Little Sisters* decision forecloses this particular APA claim. Defs. Br. at 14. Defendants are mistaken because the Court did not reach this issue. It merely noted as a descriptive matter that Defendants responded to comments between the interim and final rules. 140 S. Ct. at 2378. While an agency need not respond to every comment received during the rulemaking process, it is obligated to address every "significant" comment, *City of Portland v. EPA*, 507 F.3d 706, 714-15 (D.C. Cir. 2007), and the States have identified several that Defendants wholly failed to consider, *see, e.g.,* States Mot. at 46-48 (Defendants failed to respond to comments from medical associations describing the medical consensus about contraceptives' efficacy), *id*. at 48-50 (Defendants failed to respond to comments outlining the negative financial and health impacts of unintended pregnancy), *id*. at 50-51 (Defendants failed to respond to comments concerning the Exemption Rules' impact on patients experiencing domestic violence); *id*. at 43 (defendants failed to respond to cost concerns). *See also* States Opp'n at 50. As the Ninth Circuit recently held, agencies must provide a "satisfactory explanation" for its action, particularly when such an action is contradicted by statements made by its own officials and prior rulemaking. *See Nat'l Urban League v. Ross*, 977 F.3d 770, 777-78 (9th Cir. 2020); *San Francisco*, 2020 WL 7052286 at *11 ("A bald declaration of an agency's policy preferences does not discharge its duty to engage in 'reasoned decisionmaking'" and "explain the evidence which is available," including "credible data explained in the comments").[7]

***5. The Moral Exemption Rule is arbitrary and capricious.*** While the Supreme Court held that the agencies possess the *authority* to create the Moral Exemption Rule, it left open the distinct question of whether the Rule is arbitrary and capricious. *Cf*. Defs. Br. at 15.

Defendants assert that the Moral Exemption Rule was necessary to address "[l]itigation by those with moral objections," and that it was justified by "federal and state statutes" that

---

[7] Since 2012, HRSA guidelines require coverage of all FDA-approved contraceptive methods. 77 Fed. Reg. 8,725 (Feb. 15, 2012). HHS continues to inform women that birth control is generally safe, depending on the type of birth control used and a woman's individual health, and directs women to talk to their doctor about the right method. Ex. 23 (D9 668365-66); *see also Birth Control Methods*, Office of Women's Health, HHS, https://www.womenshealth.gov/a-z-topics/birth-control-methods.

7

States' Reply Brief in Support of Supplemental Brief (4:17-cv-05783-HSG)

purportedly "reflect[] the 'tradition of protecting moral convictions in certain health contexts.'" Defs. Br. at 15 (citing 83 Fed. Reg. 57,592, 57,602-03 (Nov. 15, 2018)). This assertion has several flaws. First, like the Religious Rule, the Moral Rule is a solution in search of a problem. There were only *three* litigating employers and it was those three employers that purportedly justified the entirety of the Moral Exemption Rule. 83 Fed. Reg. at 57,626 & n.74. Significantly, Defendants acknowledged that they were "not aware of" any institution of higher education that had asserted a moral objection to provision of contraceptive coverage. *Id*. Nor were they aware of any for-profit entities that had done so. *Id*. at 57,626-27. But despite "the rareness of instances in which . . . employers assert nonreligious objections to contraceptive coverage based on sincerely held moral convictions," *id*. at 57,628, Defendants chose to adopt sweeping exemptions—effectively risking the contraceptive coverage and health of women nationwide—based on the supposition that additional objecting employers "might come into existence," *id*. at 57626. In other words, to address objections raised by three non-profit organizations—one of which had already secured a permanent injunction and so would "not be affected by the . . . final rule," *id*.—Defendants created exemptions that cover *any* nonprofit organization, *any* for-profit entity that has no publicly traded ownership interests, *any* institution of higher education, and *any* health insurance issuer offering group or individual insurance coverage. *Id*. at 57,614-24.[8] Such a Rule is arbitrary and capricious. *See Sorenson Commc'ns Inc. v. FCC*, 755 F.3d 702, 708 (D.C. Cir. 2014) (regulation arbitrary and capricious where it is designed to deter fraud but there was "no evidence of fraud to deter"); *Nat'l Fuel Gas Supply*, 468 F.3d at 841 (vacating agency action where rulemaking based on "*theoretical* potential for abuse"). And, like the Religious Rule, the Moral Rule allows any entity with an objection to the contraceptive mandate to opt out, even those without a moral-based objection to the accommodation.

Second, unlike RFRA (which is only applicable to the Religious Exemption Rule), Defendants do not point to a specific congressional enactment that is even arguably in tension

---

[8] Since January 2017, Defendants have stipulated to numerous injunctions barring themselves from enforcing the contraceptive-coverage requirement against several employers, including "open-ended" injunctions that allow additional employers to join. *See* Dkt. Nos. 197 at 10 n. 4 (listing the stipulated injunctions); 197-1; Dkt. No. 234 at 30.

with the contraceptive coverage mandate.

## II. THE EXEMPTION RULES VIOLATE SECTION 1554

The Religious and Moral Exemption Rules plainly violate Section 1554 and Defendants' arguments to the contrary are unavailing.

*1.* Defendants recycle their argument that the Rules do not "create" barriers or "impede" timely access because the creation of exemptions is not an "affirmative act." Defs. Br. at 16-17. But neither the term "create" nor "impede" requires an affirmative act. "Create" means "to produce or bring about by a course of action or behavior" or "to cause." Webster's New International Dictionary (3d ed. 1986). Similarly, "impede" means "to interfere with or slow the progress of." *Id.* Here, Defendants' actions have directly produced deficiencies in coverage and interfered with the provision of contraceptive coverage to women. *See also* States Opp'n at 40-41 (further addressing this argument); States Sur-Reply at 7-8 (same).

*2.* This Court should not adopt Defendants' expansive and erroneous reading of *California v. Azar*, 950 F.3d 1067 (9th Cir. 2020), *petitions for cert. filed.* Defs. Br. at 16, 17. As the States explained in their supplemental brief at 18-19, *California* involved restrictions on a federally funded program. 950 F.3d at 1092 (holding that a regulation which "merely reflect[s] Congress's choice not to subsidize certain activities" is not a "barrier" under Section 1554). Here, rather than ensuring government funds are not spent on certain activities, these Rules "improperly impose regulatory burdens on . . . patients," because they require women to pay out-of-pocket for an essential, basic healthcare service, potentially locate and secure a separate qualified medical provider, and potentially switch to a less expensive, less effective contraceptive coverage method given the cost. *Id.* at 1094. Defendants' reliance on *Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 544 (1983), Defs. Br. at 17, is likewise misplaced because that case similarly involved the use of federal funds. Specifically, the case concerned whether an organization qualified for a charitable organization tax exemption if that organization engaged in substantial lobbying activities. *Id.* In contrast, this case does not concern the use of federal funds; Defendants' Exemption Rules allow regulated, private entities to impose burdens on female patients/beneficiaries.

9

**3.**     Defendants argue that even if the Court determines that the Rules create barriers, they are not "unreasonable" barriers "in light of the substantial burden on religious exercise that the contraceptive-coverage requirement creates." Defs. Br. at 17; Little Sisters Br. at 18-19. As discussed *supra* at 2 and 6, the accommodation does not constitute a "substantial burden" on religious exercise. *See also* States Mot. at 26-32, States Opp'n at 15-38, States Sur-Reply at 2-6. Moreover, as a factual matter, the Rules impose "unreasonable" barriers to care, particularly given the Rules' expansive scope and the alternatives that the Defendants failed to consider.

### III.     THE EXEMPTION RULES VIOLATE SECTION 1557

The Religious and Moral Exemption Rules violate Section 1557 because they license employers to discriminate on the basis of sex, by permitting them to exclude women from full and equal participation in their employer-sponsored health plan and deny women full and equal healthcare benefits. Defendants argue that the Rules do not discriminate based on sex because any distinction in coverage is premised on the existence of an employer's religious or moral objection. Defs. Br. at 18. But the Exemption Rules result in adverse healthcare treatment for *only* women, as only women will lose coverage. *See also* States Opp'n at 42-43; *Erickson v. Bartell Drug Co.*, 141 F. Supp. 2d 1266, 1269 (W.D. Wash. 2001) ("In light of the fact that prescription contraceptives are used only by women, [defendant's] choice to exclude that particular benefit from its generally applicable benefit plan is discriminatory."). In this way, the Rules inflict the very exclusion, denial, and discrimination that Section 1557 prohibits; that is discrimination on the basis of sex. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739, 1741 (2020).

Defendants argue that any sex based discrimination flows from the statute because the statute pertains to women's healthcare. Defs. Br. at 18. But the Women's Health Amendment was enacted to ensure that women receive equal health coverage and to remove barriers to use of preventive services. The Rules inject coverage inequality in direct contradiction to the statute.

### CONCLUSION

The Court should grant the States' motion for summary judgment, and deny Defendants' and Intervenors' motions to dismiss and motions for summary judgment.

///

Dated: December 4, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
KATHLEEN BOERGERS
Supervising Deputy Attorney General
KETAKEE R. KANE
Deputy Attorney General

*/s/ Karli Eisenberg*
KARLI EISENBERG
Supervising Deputy Attorney General
*Attorneys for Plaintiff the State of California*

WILLIAM TONG
Attorney General of Connecticut
MAURA MURPHY OSBORNE
Assistant Attorney General
*Attorneys for Plaintiff the State of Connecticut*

KATHLEEN JENNINGS
Attorney General of Delaware
CHRISTIAN DOUGLAS WRIGHT
Director of Impact Litigation
JESSICA M. WILLEY
Deputy Attorney General
*Attorneys for Plaintiff the State of Delaware*

KARL A. RACINE
Attorney General of the District of Columbia
KATHLEEN KONOPKA
Deputy Attorney General, Public Advocacy Division
ALACOQUE HINGA NEVITT
Assistant Attorney General
*Attorneys for Plaintiff the District of Columbia*

CLARE E. CONNORS
Attorney General of Hawaii
ERIN N. LAU
Deputy Attorney General
*Attorneys for Plaintiff the State of Hawaii*

KWAME RAOUL
Attorney General of Illinois
HARPREET K. KHERA
Deputy Bureau Chief, Special Litigation Bureau
ELIZABETH MORRIS
Assistant Attorney General, Special Litigation Bureau
*Attorneys for Plaintiff the State of Illinois*

BRIAN E. FROSH
Attorney General of Maryland
CAROLYN A. QUATTROCKI
Deputy Attorney General
STEVEN M. SULLIVAN
Solicitor General
KIMBERLY S. CAMMARATA
Director, Health Education and Advocacy
*Attorneys for Plaintiff the State of Maryland*

KEITH ELLISON
Attorney General of Minnesota
JACOB CAMPION
Assistant Attorney General
*Attorney for Plaintiff the State of Minnesota, by and through its Department of Human Services*

LETITIA JAMES
Attorney General of New York
STEVEN C. WU
Deputy Solicitor General
ESTER MURDUKHAYEVA
Assistant Solicitor General
*Attorneys for Plaintiff the State of New York*

JOSHUA H. STEIN
Attorney General of North Carolina
SRIPRIYA NARASIMHAN
Deputy General Counsel
*Attorneys for Plaintiff the State of North Carolina*

ELLEN F. ROSENBLUM
Attorney General of Oregon
J. NICOLE DEFEVER
Senior Assistant Attorney General
*Attorneys for Plaintiff-Intervenor the State of Oregon*

PETER F. NERONHA
Attorney General of Rhode Island
MICHAEL W. FIELD
Assistant Attorney General
*Attorneys for Plaintiff the State of Rhode Island*

T.J. DONOVAN
Attorney General of Vermont
ELEANOR SPOTTSWOOD
Assistant Attorney General
*Attorneys for Plaintiff the State of Vermont*

|   |   |
|---|---|
| 1 |   |
| 2 | MARK R. HERRING<br>Attorney General of Virginia<br>SAMUEL T. TOWELL |
| 3 | Deputy Attorney General<br>*Attorneys for Plaintiff the Commonwealth of* |
| 4 | *Virginia* |
| 5 | ROBERT F. FERGUSON<br>Attorney General of Washington |
| 6 | JEFFREY T. SPRUNG<br>Assistant Attorney General |
| 7 | *Attorneys for Plaintiff the State of Washington* |

SA2017109209
34619090.docx

13