Mark Rienzi *pro hac vice*
Eric C. Rassbach – No. 288041
Lori Windham *pro hac vice*
Diana Verm Thomson *pro hac vice*
Adèle Auxier Keim *pro hac vice*
Daniel L. Chen – No. 312576
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
Telephone: (202) 955-0095
Facsimile: (202) 955-0090
mrienzi@becketlaw.org

Anthony K. Zand
The Busch Firm
2532 Dupont Drive
Irvine, CA 92612
Telephone: (949) 774-1888
azand@buschfirm.com

*Counsel for Proposed Defendant-Intervenor Little Sisters of the Poor, St. Mary's Home*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>                                    Plaintiffs,<br><br>     v.<br><br>XAVIER BECERRA, Secretary of Health and Human Services, *et al.*,<br><br>                                    Defendants,<br><br> and,<br><br>THE LITTLE SISTERS OF THE POOR, JEANNE JUGAN RESIDENCE, *et al.*,<br><br>                                    Defendant-Intervenors. | Case No. 4:17-cv-05783-HSG<br><br>**INTERVENOR'S REPLY IN SUPPORT OF MOTION TO INTERVENE**<br><br>Date Filed: September 23, 2022<br>Hearing Date: January 19, 2023, 2:00pm<br>Judge: Hon. Haywood S. Gilliam, Jr. |

Proposed Defendant-Intervenor's Reply In Support of Motion to Intervene (4:17-cv-05783-HSG)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

    I.   The Little Sisters Chicago satisfy all requirements for permissive intervention ............................................................................................................... 2

        A.  The motion is timely ...................................................................................... 3

            1. The States are not prejudiced by intervention ........................................... 3

            2. The stage of the proceeding favors intervention ........................................ 4

            3. The length and reason for delay support intervention ............................... 6

        B. The Little Sisters Chicago's defenses present the same questions of law at issue in this case ............................................................. 8

    II.  The Little Sisters Chicago satisfy all requirements for intervention as of right .................................................................................................................... 10

CONCLUSION ......................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Small Bus. League v. U.S. Dep't of Def.*,
   No. 18-01979-WHA, 2019 WL 2579200 (N.D. Cal. June 24, 2019) ...................... 4, 5

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992) ........................................................................................ 2

*Cedar Park Assembly of God of Kirkland v. Kreidler*,
   860 Fed. App'x 542 (9th Cir. 2021) ............................................................................ 9

*CEP Emery Tech Invs. LLC v. JPMorgan Chase Bank, N.A.*,
   No. 09-04409, 2010 WL 1460263 (N.D. Cal. Apr. 12, 2010) ..................................... 4

*Droplets, Inc. v. Yahoo! Inc.*,
   No. 12-CV-03733-JST, 2019 WL 9443778 (N.D. Cal. Nov. 19, 2019) ....................... 5

*Hollingsworth v. Perry*,
   570 U.S. 693 ................................................................................................................ 8

*John Doe No. 1 v. Glickman*,
   256 F.3d 371 (5th Cir. 2001) ....................................................................................... 3

*Kalbers v. U.S. Dep't of Just.*,
   22 F.4th 816 (9th Cir. 2021) ............................................................................... 3, 4, 5

*League of United Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ................................................................................. 5, 6

*Pennsylvania v. Trump*,
   888 F.3d 52 (3d Cir. 2018) .......................................................................................... 8

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*,
   968 F.3d 738 (9th Cir. 2020) ....................................................................................... 9

*Smith v. L.A. Unified Sch. Dist.*,
   830 F.3d 843 (9th Cir. 2016) ............................................................................... 3, 6, 7

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) ................................................................................... 3, 5

*United States v. State of Oregon*,
   745 F.2d 550 (9th Cir. 1984) ....................................................................................... 7

iii

*United States v. Washington*,
    86 F.3d 1499 (9th Cir. 1996) ................................................................................................ 6

**Other Authorities**

82 Fed. Reg. 47,792 (Oct. 13, 2017) ............................................................................................ 8

83 Fed. Reg. 57,536 (Nov. 15, 2018) ............................................................................................ 8

**INTRODUCTION**

After five years of litigation, the Jeanne Jugan Residence of the Little Sisters of the Poor in San Pedro, California expects to soon sell the San Pedro Home and cease operations. But with twelve other homes within the Plaintiff States, the Little Sisters' interests remain very much at issue in this case. The Little Sisters Chicago therefore make a modest request: to join this litigation alongside (or in place of) the San Pedro Home to ensure that the Little Sisters can maintain a defense of a religious exemption from the contraceptive mandate.

Case law and binding precedent are on the Little Sisters' side. Their motion is timely because the States are not prejudiced by intervention, the stage of proceedings favors intervention, and the length and reason for delay support the Little Sisters Chicago. Moreover, the Little Sisters Chicago's defenses present the same questions of law at issue in this case. And if that were not enough, the Little Sisters Chicago also independently satisfy all requirements for intervention as of right.

The States' objections are much ado about nothing. As to timeliness, the States' argument reduces to "Heads, I win; tails, you lose." The States argue that this motion to intervene is at once both "premature" and "extremely untimely." But in fact the motion is simply a timely effort to maintain continuity in a case that—at Defendants' request and with Plaintiffs' acquiescence—has lingered for years without resolution, and which still has pending motions to dismiss and motions for summary judgment. The States' claims of prejudice are even further afield. Binding precedent holds that merely adding parties does not constitute cognizable prejudice. Even if that were not the case, given the 14 state attorneys general's offices who signed the opposition to this motion, adding one

1

1  more party with the same attorneys and litigation positions as current intervenors will
2  cause no additional prejudice or burden to anyone.

3  The Little Sisters Chicago's defenses also present the same questions of law at issue
4  here. The Final Rule provides a broad religious liberty exemption that would protect the
5  Little Sisters Chicago in a wide variety of situations, regardless of the type of health care
6  plan or identity of the health insurance issuer it chooses. By contrast, the Colorado
7  injunction is much narrower, only protecting the Little Sisters Chicago so long as they
8  remain participants in the Christian Brothers health plan at issue in that case.
9  Invalidation of the religious exemption rule would therefore constrict the Little Sisters
10 Chicago's rights and eliminate choices to which they are lawfully entitled under current
11 federal law. Indeed, the Little Sisters Chicago's claims are even more pressing now that
12 the federal government has changed course and no longer purports to defend the prior
13 administration's regulations, which means the Little Sisters Chicago are also eligible for
14 intervention as of right.

15 This Court should grant the Little Sisters Chicago's motion to intervene.

## ARGUMENT

**I. The Little Sisters Chicago satisfy all requirements for permissive intervention.**

Permissive intervention under Federal Rule of Civil Procedure 24(b) "requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). The States do not contest that the first element is satisfied. Their opposition to the remaining two is meritless.

**A. The motion is timely.**

"[T]imeliness is not a tool of retribution to punish the tardy would-be intervener, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 823 (9th Cir. 2021) (quoting *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001)). The timeliness inquiry considers "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). Prejudice to the parties is "the most important consideration in deciding whether a motion for intervention is untimely." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016).

**1. The States are not prejudiced by intervention.**

The States claim they are prejudiced "because they all will have to contend with a third defendant-intervenor." Opp. at 8. This objection falls flat when voiced by 14 States represented by 37 different attorneys. And it runs headlong into binding precedent, which holds that "including another party in the case," which "might make resolution more 'difficult,'" is "not" "relevant" under this factor. *Smith*, 830 F.3d at 857. "[E]very motion to intervene will complicate or delay a case to some degree—three parties are more than two. That is not a sufficient reason to deny intervention." *Kalbers*, 22 F.4th at 825 (citing cases). "The only prejudice that is relevant is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." *Id.* (cleaned up).

This is precisely why the Little Sisters Chicago have come forward at this time—to prevent any possible prejudice to the parties or delay in this Court from the expected

3

transfer of management of the San Pedro Home within the next year. There is no prejudice because, if granted intervention, the Little Sisters Chicago will fully adopt the positions and existing briefing and filings of the San Pedro Home. Mot. at 1, 6, 10. As explained in their motion, the Little Sisters Chicago are "merely seeking to step into the shoes of the San Pedro Home before it is sold." *Id*. at 10. Therefore, there will be "no need to reopen [or] re-litigate any prior proceedings," *CEP Emery Tech Invs. LLC v. JPMorgan Chase Bank, N.A.*, No. 09-04409, 2010 WL 1460263, at *3 (N.D. Cal. Apr. 12, 2010), and the Little Sisters Chicago will comply with all current briefing schedules, *Kalbers*, 22 F.4th at 826 ("Applying the proper rule, we have identified no prejudice stemming from the timing of [the] motion. In fact, there need not have been *any* delay from . . . intervention, as [the proposed intervenor] offered to comply with the existing summary judgment briefing schedule."); *Am. Small Bus. League v. U.S. Dep't of Def.*, No. 18-01979-WHA, 2019 WL 2579200, at *3 (N.D. Cal. June 24, 2019) (finding no prejudice because proposed intervenor agreed to comply with the existing briefing schedule and not "substantially alter[] the course of the litigation"). "This lack of prejudice weighs heavily in favor of timeliness." *Kalbers*, 22 F.4th at 826.

**2. The stage of the proceeding favors intervention.**

The States also claim that the Little Sisters Chicago's motion is "extremely untimely" because "this litigation has been active for over four years." Opp. at 7. But the stage of proceedings supports intervention. The States agreed to keep this case stayed for two years, ECF Nos. 411, 442, 467-71, and motions to dismiss and motions for summary judgment have remained pending for years. ECF Nos. 311, 366, 368, 370, 385, 388, 389, 431, 433, 435, 437, 438, 440. In any event, the States offer nothing more than "the mere

4

lapse of time," and have no response to Ninth Circuit precedent holding that this "is not necessarily a bar to intervention." *Alisal*, 370 F.3d at 921. As the Ninth Circuit recognized just last year, "a survey of our prior cases reveals [that] we have allowed intervention after much longer delays and, on occasion, all the way into the remedial phase of litigation." *Kalbers*, 22 F.4th at 826. This is particularly true where, as here, a case has been stayed for years. *Droplets, Inc. v. Yahoo! Inc.*, No. 12-CV-03733-JST, 2019 WL 9443778, at *5 (N.D. Cal. Nov. 19, 2019) (granting motion for permissive intervention even though the action was filed more than eight years prior because, among other things, the "case was stayed for over five years"). After repeatedly acquiescing to an indefinite stay, the States should not be heard to argue that this case has now been pending for too long.

The States rely heavily on *League of United Latin American Citizens v. Wilson*, but the proposed intervenor in that case filed its motion to intervene after the district court had already decided motions for summary judgment and the case was heading to trial. 131 F.3d 1297, 1303 (9th Cir. 1997). As the Court described it, "the litigation was, by all accounts, beginning to wind itself down." *Id.* at 1304. That simply isn't this case, where motions to dismiss and motions for summary judgment remain pending.[1] On top of that, at the last joint status conference on May 17, 2022, this Court noted that if and when the stay is lifted, this Court would likely permit additional briefing given the length of

---

[1] In any event, whether a court has issued an order on summary judgment is not determinative of timeliness. Multiple courts in this district have granted permissive intervention even after deciding motions for summary judgment. *See, e.g.*, *Droplets*, 2019 WL 9443778, at *1; *Am. Small Bus. League*, 2019 WL 2579200, at *3. Additionally, the Ninth Circuit has granted permissive intervention "all the way into the remedial phase of litigation." *Kalbers*, 22 F.4th at 826.

time that has progressed since the supplemental briefs were filed. The upshot of all of this is that this litigation is not merely "wind[ing] itself down," and the intervention of the Little Sisters Chicago will not result in any delay. *Id.* at 1304.

### 3. The length and reason for delay support intervention.

The final timeliness factor—the length and reason for the delay—also favors the Little Sisters Chicago. "Delay is measured from the date the proposed intervenor should have been aware that its interests would no longer be protected adequately by the parties[.]" *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996).

The relevant date for determining delay is the sale date of the San Pedro Home, which has not even taken place yet. The Little Sisters Chicago's motion to intervene will thus prevent *any* delay in this case. This factor supports granting intervention, especially because "[w]here—as here—both the first and second timeliness factors weigh in favor of intervention, [the Ninth Circuit] ha[s] found motions to be timely even in the face of *longer* delays than are present here." *Smith*, 830 F.3d at 859, 861 (granting intervention when "Appellants moved to intervene approximately one year after the change in circumstances prompting their motion").

The States offer two rejoinders—one factual, one legal—but neither is persuasive. As a factual matter, the States claim that the sale of the San Pedro Home is "speculative" because no one has "filed a notice of proposed sale, let alone obtained regulatory consent." Opp. at 8-9. But the sale is not speculative. As explained in Mother Julie's second declaration, the letter proffered by the States concerns an earlier sale that was canceled. Second Declaration of Mother Provincial Julie Marie Horseman, ECF No. 484-1. The San Pedro Home still intends to move forward with a sale after handing over management of

6

1 the Home to a potential buyer, and that process is moving forward with deliberate speed. *Id.* ¶¶ 10-12. In furtherance of the process, the San Pedro Home has closed its skilled nursing unit and transferred residents to its assisted living unit, and it expects the management company to provide employees for the assisted living unit. *Id.* ¶¶ 7-8. The Little Sisters continue to expect that the final sale (which is subject to State approval) will still happen within the next year. *Id.* ¶ 11. By that time, the San Pedro Home will likely have few or no employees. *Id.* ¶ 12. Accordingly, as a factual matter, the sale of the San Pedro Home is not "speculative," but rather, "close[] to finalization." Opp. at 9. As such, the Little Sisters Chicago should be permitted to intervene.

Turning to the States' legal argument, the States assert that the "possibility" of a sale is too "speculative" to constitute a change in circumstances. Opp. at 8-9. The States assert that the Little Sisters Chicago must wait until "any sale is either finalized or, at the very least, closer to finalization." *Id.* at 9. In effect, the States ask this Court to penalize the Little Sisters for moving quickly to avoid any possible delay or prejudice.

The States' argument fails as a matter of law. In *United States v. State of Oregon*, the Ninth Circuit found a change in circumstances because two Indian tribes had given "notice of their *intent* to withdraw from the [settlement] or to renegotiate it," which created the "*possibility* of new and expanded negotiations." 745 F.2d 550, 552 (9th Cir. 1984) (emphasis added). "If the 'possibility' of negotiations constituted a change in circumstances in *State of Oregon*," it's hard to see why the "possibility" of the San Pedro Home's sale does not also qualify. *See Smith*, 830 F.3d at 856. The motion for intervention is timely.

7

**B. The Little Sisters Chicago's defenses present the same questions of law at issue in this case.**

The Little Sisters Chicago raise the same question that is at the heart of this case: whether the Final Rule is lawful. As the Third Circuit held when deciding that the Little Sisters were entitled to intervene in a parallel lawsuit, "[t]he Little Sisters . . . litigated for the protection conferred by the religious exemption . . . for five years, and the [Fourth] IFR describes the Little Sisters as one impetus for change." *Pennsylvania v. Trump*, 888 F.3d 52, 58 (3d Cir. 2018) (citing 82 Fed. Reg. 47,792, 47,798 (Oct. 13, 2017)). The Final Rule formalized the Fourth IFR, thereby providing broad and permanent federal regulatory protection for the Little Sisters to offer healthcare to their employees in a manner consistent with their sincere religious beliefs. That protection is designed to apply to all types of health plans and a wide variety of health insurance issuers and would allow religious objectors to participate in the health plan market on equal terms with all others, secure in the knowledge that their religious beliefs would be respected. 83 Fed. Reg. 57,536, 57,542 (Nov. 15, 2018).

According to the States, however, the Final Rule granting the Little Sisters and others that protection is unlawful. Although their legal theories have changed over time, their goal of eliminating the Final Rule's religious exemption has not. And Little Sisters quite obviously have a "direct stake" in that issue. *Hollingsworth v. Perry*, 570 U.S. 693, 705. After all, if affirmed by this Court, the States' view that the Final Rule violates both the APA and the ACA would eliminate precisely the broad protection the federal government was attempting to provide to the Little Sisters and other religious objectors.

1. The States assert (at 10) that the Little Sisters lack a common issue because of an injunction issued by a district court in Colorado. That argument is deeply flawed. Although the Colorado district court recognized that enforcing the contraceptive mandate against the Little Sisters homes in that case "violated and would violate" RFRA, it enjoined its enforcement against the Little Sisters *only* to the extent they remain in their current plan; if they leave that plan, the government is "free to enforce" the contraceptive mandate. Order at 2-3, *Little Sisters of the Poor Home for the Aged, Denver v. Sebelius*, No. 1:13-cv-02611 (D. Colo. May 29, 2018) (ECF No. 82). The Colorado injunction thus is not coextensive with the Final Rule, which categorically exempts the Little Sisters from the contraceptive mandate regardless of their plan type or plan issuer. In other words, the Final Rule protects—and the Little Sisters seek to vindicate—the right of religious objectors to obtain conscience-compliant health care plans notwithstanding government mandates to the contrary.

The Little Sisters' concern for protection that applies to them regardless of their health insurance issuer is fully understandable given the States' attempts to force issuers to stop offering conscience-compliant plans altogether. For example, Plaintiff States California and Washington have both used their regulatory authority to forbid certain health insurance issuers from offering plans that do not cover abortion, and the Ninth Circuit has twice held that churches that lost conscience-compliant plans as a result of these measures have standing to sue. *See Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 750–51 (9th Cir. 2020); *Cedar Park Assembly of God of Kirkland v. Kreidler*, 860 Fed. App'x 542, 543 (9th Cir. 2021). In short, the vindication that the Little Sisters seek—a reaffirmation of their broad federal right to

9

obtain conscience-compliant health care plans for their employees—is both broader than the protection they already enjoy and made critically necessary by actions of the plaintiff States, in this case and elsewhere.[2]

**II. The Little Sisters Chicago satisfy all requirements for intervention as of right.**

The States' arguments regarding intervention as of right are also meritless. They claim that the Little Sisters Chicago lack a "protectable interest" in the litigation "given that Little Sisters San Pedro are already involved," and that the San Pedro Home "adequately represent[s] [the] Little Sisters Chicago's interests." Opp. at 11. But as the Little Sisters Chicago made clear in their motion, the San Pedro Home will be closing in the near future, and they "are pursuing intervention in this case to ensure that a religious organization can maintain a defense of the Rule when the case resumes." Mot. at 9.[3]

The States also point out that this Court denied the San Pedro Home's motion to intervene as of right in December 2017. ECF 115 at 6-14. But since that time, much has changed. The federal defendants have demonstrated that they intend to cease defending the Final Rule by, among other things, filing a notice of intent to initiate a rulemaking

---

[2] The States also assert that the Little Sisters Chicago cannot "step into the shoes of" Little Sisters San Pedro, because their primary arguments have "largely been withdrawn from this action," and the "only disputed issues" are "whether the [Final Rule] violate[s] the APA's arbitrary and capricious prong" and "whether the [Final Rule] violate[s] the ACA's discrimination provisions." Opp. 10-11 This is puzzling, as the States cite (Opp. at 10) the San Pedro Home's supplemental brief, which spent 11 out of 20 pages addressing these precise questions. ECF No. 437 at iii, 9-20 (section headings stating that "Final Rule and its application of RFRA is not arbitrary and capricious" and that the "Final Rule does not violate the ACA").

[3] Insofar as the States argue that this Court should deny intervention to the Little Sisters Chicago because the San Pedro Home has not withdrawn from this case, Opp. at 12, the San Pedro Home believes that this move is unnecessary. But if the Court disagrees, the San Pedro Home is amenable to withdrawing as an intervenor-defendant once the Little Sisters Chicago's motion to intervene is granted. ECF No. 484-1 ¶ 13.

to amend the Final Rule, ECF No. 465, and successfully persuading this Court to stay this case so that they do not have to defend the Final Rule while promulgating a new one, ECF Nos. 467-71; *see also* Mot. at 14-15. The analysis regarding adequacy of representation in 2017 no longer applies to the circumstances that the Sisters face in 2022. Thus, intervention as of right is justified.

## CONCLUSION

For the foregoing reasons, the motion to intervene should be granted.

Dated: September 23, 2022              Respectfully submitted,

/s/ Mark Rienzi
Mark Rienzi *pro hac vice*
Eric C. Rassbach – No. 288041
Lori Windham *pro hac vice*
Diana Verm Thomson *pro hac vice*
Adèle Auxier Keim *pro hac vice*
Daniel L. Chen – No. 312576
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
Telephone: (202) 955-0095
Facsimile: (202) 955-0090

*Counsel for Proposed Defendant-Intervenor*