# EXHIBIT B




1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006
202-955-0095 / @BecketLaw
www.becketlaw.org

April 3, 2023

Via Federal eRulemaking Portal

Centers for Medicare & Medicaid Services
Department of Health and Human Services
Attention: CMS—9903—P
P.O. Box 8016
Baltimore, MD 21244-8016

Re: Coverage of Certain Preventive Services Under the Affordable Care Act, CMS-9903-P.

To Whom It May Concern:

The Becket Fund for Religious Liberty submits this comment regarding the notice of proposed rulemaking of the Departments of Treasury, Labor, and Health and Human Services, (the Departments) published at 88 Fed. Reg. 7236 (Feb. 2, 2023).

Becket is a nonprofit, nonpartisan law firm that protects the free expression of all religious faiths. Becket has represented agnostics, Buddhists, Christians, Hindus, Jains, Jews, Muslims, Santeros, Sikhs, and Zoroastrians, among others, in lawsuits across the country and around the world. Since the initial regulations regarding coverage of certain preventive services (the contraceptive mandate) were promulgated by the Departments under the Affordable Care Act, Becket has represented clients who have sincere religious objections to including in their health plans certain items and services that would make them complicit in sin. *See, e.g.*, *Zubik v. Burwell*, 578 U.S. 403 (2016); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). Becket currently represents two homes of the Little Sisters of the Poor in ongoing litigation. The Little Sisters are defending the religious exemption granted to them in the 2018 regulations in litigation brought by several states challenging the exemption. *See Little Sisters of the Poor v. Pennsylvania*, 140 S. Ct. 2367 (2020); *California v. Health and Human Services*, No. 4:17-cv-05783-HSG (N.D. Cal.) (amended complaint filed Nov. 1, 2017).

The contraceptive mandate litigation has been a failure for the federal government. Religious parties have always obtained judicial protection, including several times at the United States Supreme Court. Over more than a hundred cases involving thousands of religious entities, the government has not succeeded in forcing any of them to comply with the mandate. In addition to the wasted time of its own lawyers for over a decade, the federal government has been forced to pay millions of dollars in attorney's fees. The nation has endured more than a decade of needless conflict, with many religious entities suffering through years of litigation, and the federal government has gained nothing.

The Departments seek comment on "challenges or concerns" regarding an "alternative approach" that would "continue to apply" the "contraceptive coverage requirement" "directly to the health insurance issuer," thus "[r]equiring the health insurance issuer to independently provide coverage for contraceptive services" on fully-insured plans. 88 Fed. Reg. at 7248.



1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006

This alternative approach would likely exacerbate, rather than end, the long-running litigation the Departments claim to want to resolve. That is because any such approach is likely to depend on insurance companies using the employer's plan information—employee names and addresses, beneficiary information, etc.—to provide contraceptive coverage. Even if the Departments can find a way to make such an approach "feasible," it is likely that many of the same parties who objected to the so-called "accommodation" would object to such use of their health plans and information. After all, the mandate as a whole relies on religious objectors contracting with their insurer or third-party administrator (TPA) to provide contraceptive coverage through their own plan infrastructure. Failure to contract for such a plan, either outright, or via the accommodation, results in large fines under 26 U.S.C. § 4980D ($100/day per person) and 26 U.S.C. § 4980H(c)(1) ($2000 per employee, per year)—the same fines that constituted a substantial burden in *Hobby Lobby*. 573 U.S. at 691 ("If these consequences do not amount to a substantial burden, it is hard to see what would.").

The initial "accommodation" did not lighten this burden on religious employers. Instead, it still made them complicit because in fact, the "accommodation" did not allow for the provision of "separate coverage," but rather used the infrastructure of employer plans. The "accommodation" required that religious objectors execute documents to obligate their insurers to provide contraceptives to their employees through their plan infrastructure. 45 C.F.R. § 147.131(d). For many employers with insured plans, this use of the plan meant that they were not simply opting out of the mandate. They were providing plans that used what the Departments called their "coverage administration infrastructure" to achieve the mandate's coverage goal. 80 Fed. Reg. 41,318, 41,328 (July 14, 2015). That is why the Solicitor General eventually admitted to the Supreme Court that contraceptive coverage under the accommodation was, in fact, "part of the same plan" as the religious employer's coverage.[1]

In order to avoid the same problem as the "accommodation," the alternative approach would have to, among other things, ensure that plan issuers would not use the plan infrastructure that objecting employers contract for when they pay for employee insurance. It would likely raise significant religious liberty problems, for example, if the provision of contraception used religious objector's employee rolls, including contact information for employees and dependent children, to provide objectionable items to their employees and dependents.

The Departments spent many years litigating more than 100 lawsuits against thousands of entities—and did not succeed in forcing any of them to comply with the prior "accommodation." It is difficult to see how or why the Departments would want to engage in a similar losing effort to advance this alternative approach.

For this and other reasons, we believe that in the event of litigation, the alternative approach would be vulnerable in court, as the "accommodation" has been. Since the Supreme Court's *Zubik* order, several cases involving religious employers who object to the mandate have been litigated to completion and resulted in injunctions against the Departments under the

---

[1] Brief for the Respondents at 38, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (No. 14-1418) (quotations omitted).



1919 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006

Religious Freedom Restoration Act.[2] This is to say nothing of potential Free Exercise Clause claims and other potential remedies. *See, e.g.*, *Fulton v. Philadelphia*, 141 S. Ct. at 1877 (2021) (explaining that a law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way"). The "alternative approach" is therefore likely to spur litigation that will result in continued losses for the federal government, and be harmful to society, with no discernible benefits.

Sincerely,

/s/ Mark Rienzi
Mark Rienzi
The Becket Fund for Religious Liberty

[2] *See, e.g.*, *Wheaton Coll. v. Azar*, No. 1:13-cv-8910 (N.D. Ill. Feb. 22, 2018), Dkt. 119 at 3 ("enforcement of the contraceptive mandate against Wheaton would violate Wheaton's rights under" RFRA); *Little Sisters of the Poor v. Azar*, No. 1:13-cv-02611 (D. Colo. May 29, 2018), Dkt. 82 at 1-2 ("enforcement of the mandate against Plaintiffs, either through the accommodation or other regulatory means . . . violated and would violate the Religious Freedom Restoration Act"); *Reaching Souls Int'l, Inc. v. Azar*, No. 13-cv-01092 (W.D. Okla. Mar. 15, 2018), Dkt. 95 at 3-4 ("enforcement of the contraceptive mandate against Plaintiffs . . . violated and would violate RFRA").